**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **MARSHALL MCCLAIN, individually and on behalf of a class of all persons and entities similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FIRSTSOURCE SOLUTIONS USA, LLC and MANATEE MEMORIAL HOSPITAL, LIMITED PARTNERSHIP,**<br><br>**Defendants.** | **Case No. 3:25-cv-00150-DJH** |

<u>**DEFENDANT FIRSTSOURCE SOLUTIONS USA, LLC'S**</u>
<u>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**</u>

Defendant Firstsource Solutions USA, LLC ("Firstsource") hereby respectfully moves to dismiss the putative class action complaint (*see* Dkt. 1, "Complaint") filed by Plaintiff Marshall McClain ("Plaintiff") in the above-captioned matter, in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. In support thereof, Firstsource provides the following grounds:

## I.    <u>INTRODUCTION</u>

In his Complaint, Plaintiff alleges, in a conclusory fashion, that the "Defendant"—a term employed to improperly lump together and conflate both Firstsource and Defendant Manatee Memorial Hospital, LP ("MMH") as one throughout—violated the "artificial or prerecorded voice" message provision of the federal Telephone Consumer Protection Act ("TCPA") and its related implementing regulations. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). His claim rests squarely on two purportedly "prerecorded" voicemails (given that he does not plead whether he answered any calls) that were allegedly "sent" to his cell phone without his consent. However, Plaintiff fails to allege sufficient non-conclusory facts, pled in accordance with federal pleading standards, supporting an inference that Firstsource (or MMH for that matter) bears any legal liability for those alleged calls, let alone that they even violated the TCPA in the first instance. It is also axiomatic that Plaintiff cannot simply regurgitate the legal elements of his TCPA claim without factual support, as he did here, and hope to avoid dismissal on the pleadings in any federal court.

That federal district courts across the country have uniformly required plaintiffs to plead more than just barebones conclusions to overcome a dispositive motion at the pleadings stage in TCPA cases is for good reason. The TCPA has become one of the most heavily litigated statutes in the United States since its enactment in 1991, with dozens of new complaints filed weekly, largely styled as putative class actions like this case. Given the relief it affords, this is unsurprising: $500 in statutory damages per violative call, which can be trebled to $1,500 for "willful" or "knowing"

violations. *See* 47 U.S.C. § 227(b)(3). Thus, while initially designed to protect consumers from unscrupulous telemarketers, the TCPA has spawned a cottage industry of litigation; and it can be quite lucrative for profit-seeking plaintiffs and their counsel alike. While attorneys' fees are not available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from otherwise innocent defendants through costly class action litigation. *Saunders v. NCO Fin. Sys.*, Inc. 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012).[1]

Against this backdrop, federal district courts have tacitly recognized that, at the pleadings stage in TCPA cases and particularly in putative class actions, they must balance the important goal of protecting consumers from unwanted marketing calls against the equally important goal of protecting defendants from abusive litigation. Put differently, TCPA plaintiffs—like ***all other*** federal plaintiffs—do not get a free pass to discovery and must plead adequate facts supporting the essential elements of their claim. Consequently, TCPA complaints like the one at bar, built on a weak foundation of barren conclusions lacking in requisite factual support, are routinely dismissed by federal district courts at the pleadings stage for not meeting federal pleading standards. Plaintiff's similarly-defective Complaint should suffer the same fate for at least the following reasons:

**First**, the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff fails to state a claim under the TCPA. As a threshold matter, it is well-settled that, to successfully plead any TCPA claim and avoid dismissal, all plaintiffs must first plead actual facts supporting a plausible theory of

---

[1] *See also Babare v. Sigue Corp.*, 2020 WL 8617424 at *2 (W.D. Wash. Sep. 30, 2020) ("It is well-recognized that discovery in [TCPA] class actions is expensive and asymmetric, with defendants bearing most of the burdens."); *Bank v. City of Menasha,* 627 F.3d 261, 266 (7th Cir. 2010) (noting plaintiffs in general sometimes can "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit"); *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015) (noting the TCPA "has strayed far from its original purpose" and has "become the poster child for lawsuit abuse.").

liability under the TCPA (either direct or vicarious liability) against <u>each</u> defendant for <u>each</u> allegedly violative phone call. This established rule requires TCPA plaintiffs to plead sufficient non-conclusory facts supporting an inference that each defendant: (i) itself (and no one else) "physically" placed each of the subject calls directly to the plaintiff, as is required for direct TCPA liability; or (ii) was in a common law agency relationship with the person or entity that did physically place the calls—the touchstone of which in a TCPA case is having "control" over the "manner and means" of the call campaign conducted by the caller—as is required for vicarious TCPA liability.[2]

In this case, Plaintiff takes a classic "either/or" pleading approach that has been rejected by federal district courts across the country when evaluating the facial sufficiency of allegations in TCPA complaints under Rule 12(b)(6), baldly concluding that the subject calls were "placed" or "sent" <u>either</u> (i) by "Defendant" or "Defendants" (meaning <u>both</u> Firstsource and MMH), (ii) "on behalf of" MMH, <u>and/or</u> (iii) by "a third party acting on their behalf." Dkt. 1, ¶¶ 16, 17, 23, 34, 44, 51. Such conclusory allegations not only fail to meet basic federal pleadings standards but also fail to state a plausible direct or vicarious liability theory against Firstsource or MMH under the vast weight of applicable federal authority on the TCPA cited herein. *See, e.g., Dobronski v. Russo*, 2024 WL 4363118, at \*5 (dismissing, holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" to him was insufficient to plead any theory of TCPA liability).

Additionally, Firstsource is at best alleged to be what the FCC and courts refer to as "platform provider" that was "hired" by MMH to place calls to numbers "provided" to Firstsource by MMH on its "behalf." Dkt. 1, ¶¶ 16-18. Even if these conclusory allegations are taken as true, however,

---

[2] *See, e.g., Lucas v. Telemarketer Calling from (407) 476-5680*, 2019 WL 3021233, at \*5-6 (6th Cir. May 29, 2019); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at \*2 (M.D. Tenn. May 14, 2021); *Dobronski v. Russo*, 2024 WL 4363118, at \*5 (E.D. Mich. Sept. 30, 2024); *Brownlee v. Allstate Ins. Co.*, 2021 WL 4306160, at \*1 (N.D. Ill. Sept. 22, 2021); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at \*2-3 (N.D. Tex. June 13, 2023); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at \*6 (W.D. Wash. Mar. 27, 2023).

courts and the FCC have recognized alleged platform providers are not subject to direct liability under the TCPA as a matter of law. *See, e.g., Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (citations omitted).[3] Moreover, just using legal buzzwords suggestive of agency in this fashion is not enough to plausibly allege vicarious TCPA liability as to *either* Defendant. *See Cunningham v. Health Plan Intermediaries,* 2021 WL 1946645, at *4 (holding TCPA plaintiffs "must allege some factual predicate that gives rise to an inference of an agency relationship"). Therefore, because Plaintiff failed to allege a theory of TCPA liability, his Complaint must be dismissed under Rule 12(b)(6) on these bases <u>alone</u>. *See, e.g., Dobronski v. Russo*, *supra*; *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA [and equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other [essential] elements" of the claims asserted.).

**<u>Second</u>**, Plaintiff's TCPA claim should also be dismissed under Rule 12(b)(6) because he fails to plead sufficient non-conclusory facts supporting an inference that the subject calls involved use of an "artificial or prerecorded voice" (as opposed to a live person speaking), which is a critical element for his lone claim. While courts do not expect a plaintiff to know the exact technical specifications of a call at the pleadings stage, they have consistently held that TCPA plaintiffs must plead sufficient actual facts (not conclusions) supporting an inference that such technology was actually used on a call, or face dismissal. *See, e.g., Manopla v. Sansone Jr's 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020) (dismissing where the plaintiff "merely proffer[ed] the content

---

[3] That Firstsource's or MMH's names were allegedly mentioned in the subject messages is, without more, not dispositive here. *See, e.g., Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing TCPA case on direct liability grounds, even though the plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"). For example, a purported "prerecorded" voicemail could be transmitted by a third party, not by the defendant itself.

of the message and [conclusorily] allege[d] that Defendant utilized a pre-recorded message" with no contextual factual support). In this regard, Plaintiff's Complaint is chocked full of conclusory statements and regurgitations of applicable case law, all in an attempt to suggest that the subject voicemails were "prerecorded." However, myriad federal district courts have dismissed similarly-deficient TCPA claims for failure to meet federal pleading standards under Rule 12(b)(6). *See, e.g., Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing where the plaintiff alleged receipt of a "prerecorded" voicemail but pled no other factual details suggesting it was truly prerecorded); *Hicks v. Alarm.com Inc*., 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (finding conclusory allegations about a supposed "generic" voicemail message insufficient to support an inference that it was prerecorded, without more). This Court should reach the same conclusion in this case, and dismiss Plaintiff's Complaint for this additional reason.

## II.    **RELEVANT ALLEGATIONS**

In pertinent part, Plaintiff alleges—or, rather, merely concludes—that he "received multiple pre-recorded calls from the Defendants on at least March 26 and April 4, 2024" on his cell phone. Dkt. 1, ¶¶ 19, 21, 23. Plaintiff further alleges that "Defendant" (*i.e.,* Firstsource or MMH) "sends pre-recorded message calls to cell phones on behalf of its hospital clients." Id., ¶ 16. Yet, Plaintiff provides little if any specific contextual detail about these alleged calls.

For example, Plaintiff claims that the messages stated, in part, "Hello, this is Firstsource calling on behalf of Manatee Memorial Hospital calling with an important message for Jose…We're calling to determine if you qualify for financial assistance programs…" *Id*. ¶ 24. He avers that "[t]he two calls were clearly pre-recorded messages because (a) there was a pause after the phone connected to voicemail (b) the script was identical on both calls, generic and not personalized (c) the robot had a generic, monotone voice." *Id*. ¶ 25. He also baldly concludes that MMH "hired Firstsource to make

those [allegedly] pre-recorded calls." *Id*. ¶ 17. However, Plaintiff noticeably does <u>not</u> allege if he answered the calls and interacted with the callers, the phone number used by the callers, whether he called the number used back and reached Firstsource or MMH directly, whether Firstsource or MMH own the number(s) used, what (if any) name appeared on his caller ID, or the full content of these messages. Worse, Plaintiff lumps together "Defendants" as one entity throughout his pleading, confusingly fluctuates between using the term "Defendant" and the term "Defendants," does not properly differentiate between Firstsource's or MMH's actions, and even suggests there was a "third party acting on their behalf" with respect to these messages. *Id*. ¶¶ 4, 9, 16, 22, 23, 34, 36, 37, 39, 44, 47, 51, 52, 53, 54. Nevertheless, based on these flimsy and contradictory allegations, Plaintiff concludes that "[t]he Defendant violated the TCPA [in this case] by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the [putative] Class using a pre-recorded messages without their prior express written consent." *Id*. ¶ 51.

As discussed below, these allegations are insufficient to survive dismissal in federal court.

## III.    <u>APPLICABLE LEGAL STANDARDS</u>

Rule 12(b)(6) mandates dismissal of a complaint for failure to state a claim for relief. To avoid dismissal under this Rule, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). As such, while the Court must

6

generally accept well-pled factual allegations as true under this Rule, it need <u>not</u> do so for legal conclusions couched as fact, unwarranted or unreasonable inferences, or unsupported speculation. *See Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Eidson v. Tenn. Dep't of Child. Servs.,* 510 F.3d 631, 634 (6th Cir. 2007); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011).

## IV.    <u>ARGUMENT</u>

Plaintiff's one-count Complaint seeks relief under Section 227(b) of the TCPA. *See* Dkt. 1, ¶¶ 12-13, 51-52. That provision provides, in pertinent part, that no person shall "make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) (related implementing regulations). As demonstrated below, however, Plaintiff fails to state such a claim or to plead sufficient facts supporting one, in accordance with federal pleading standards.

### A.    <u>Plaintiff Fails to Sufficiently Allege a Theory of Liability Under the TCPA.</u>

As a threshold matter, the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff fails to plausibly allege a theory of liability under the TCPA. There are two potential theories of liability under the TCPA: (i) direct liability; or (ii) vicarious liability. *See, e.g.*, *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)). This rule means the defendant "must either (1) directly make the call [at issue], or (2) have an agency relationship with the person who made the call [at issue]." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Courts have

7

widely recognized that failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim at the pleadings stage, regardless of whether there are facts supporting other key elements of the claim(s). *See, e.g., Nelums*, 2023 WL 5607594, at \*9; *see also Tuso v Lennar Corp.,* 2024 WL 1239474, at \*4 (S.D. Fla. Mar. 22, 2024) (dismissing on these bases, ruling similarly); *Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020) (discussing the differences between direct and vicarious TCPA liability and the standards for pleading same, and dismissing on these bases). As demonstrated below, Plaintiff failed to adequately allege either theory.

### i.   Plaintiff Fails to Adequately Allege a Direct TCPA Liability Theory.

Again, for Firstsource to be held directly liable under the TCPA and for Plaintiff to avoid dismissal under Rule 12(b)(6), he must allege, with sufficient factual support, that Firstsource "made ***each call*** that he seeks to hold it liable for." *Brownlee,* 2021 WL 4306160, at \*1 (emphasis added). *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at \*2 (E.D. Va. Apr. 15, 2019) (dismissing and holding "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at \*2 (dismissing, ruling similarly).

In this regard, it is well accepted that this rule requires alleging adequate non-conclusory facts supporting an inference that the defendant itself, not a third party, "***physically***" placed (or made or initiated, etc.) each of the calls at issue to the plaintiff. *See, e.g., Lucas,* 2019 WL 3021233, at \*5-6; *Cunningham Health Plan Intermediaries*, 2021 WL 1946645, at \*2; *Sheski*, 2020 WL 2474421, at \*2-4. *See also Metzler,* 2023 WL 1779631, at \*6 (TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a

third party made the call"); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) ("TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" under Rule 12(b)(6)).[4]

Consistent with federal pleading standards, therefore, lumping the "Defendants" together and not differentiating between them and their alleged wrongful actions, as Plaintiff did here, will not suffice to plausibly allege a direct TCPA liability theory. *See, e.g., Dobronski v. Russo*, 2024 WL 4363118, at *5; *see also Ewing v. GoNow Travel Club, LLC*, 2019 WL 3253058, at *3 (S.D. Cal. July 19, 2019) ("broadly alleging 'Defendants' called" the plaintiff in violation of Section 227(b) of the TCPA " is "insufficient" because "a plaintiff must differentiate which allegations are against which defendant and not lump defendants together without distinguishing the alleged wrongs amongst defendants"); *Bank v. Philips Elecs. N. Am. Corp.*, 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (allegations calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct liability).

Similarly, "[m]erely alleging that [a defendant or the defendant's agent] 'made' or 'initiated' [a] call" without factual support "is not sufficient to allege a [direct] TCPA [liability] claim" standing alone. *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Murray*, 2015 WL 4204398, at *2 (dismissing, even though plaintiff was allegedly "informed that the call was from Choice Energy," where there were "no factual allegations in the complaint that Choice Energy had any active role or involvement in [physically] placing the [subject] calls");

---

[4] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, federal district courts evaluating and dismissing conclusory direct TCPA liability (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to literally "physically" place a phone call. *See also Hicks*, 2020 WL 9261758, at *4-5; *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3-5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018); *Wallack v. Mercantile Adjustments Bureau, Inc.*, 2014 WL 1515852, at *3 (E.D. Mich. Apr. 18, 2014).

*Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part by,* 2024 WL 2794108 (May 31, 2024) (dismissing, even though one caller allegedly said they were calling "from" the defendant and provided its website to plaintiff); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [the defendant] Nano or Nano's agent," without sufficient factual support demonstrating that the defendant itself physically placed each call at issue directly to the plaintiff); *Meeks*, 2018 WL 1524067, at *3–5 (finding no direct liability, even though at-issue text identified defendant by name and contained a link to its website); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing on this basis where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"). These well-reasoned authorities (among many others, some of which are cited below) show that the content of the alleged violative communications—even if the communications mention the defendant's name, sell its products, or purportedly originated "from" the defendant in some fashion —is not dispositive on this issue standing alone, and more factual detail is required for pleading direct TCPA liability.[5]

In short, "direct TCPA liability" means exactly what it sounds like—that the defendant itself must have physically placed (or, made, initiated, delivered, etc.) each call at issue ***directly*** to the plaintiff, for such liability to arise. *See In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd.

---

[5] It makes perfect sense why federal courts evaluate the adequacy of TCPA complaints under Rule 12(b)(6) in this fashion, and often dismiss them for failing to allege a theory of liability. To survive a motion to dismiss in any federal case, all complaints must provide sufficient facts establishing "how, when, and where" a legal violation occurred. *Johnson v. Progressive Advanced Ins. Co*., 587 F. Supp. 3d 277, 280 (W.D. Pa. 2022). This of course includes "who" committed the violation—a prong especially important in TCPA cases where the damages can be very significant (and possibly financially ruinous) for any defendant, and where the facial plausibility of any TCPA claim turns largely on whether there are sufficient facts pled identifying the actual caller—*i.e.*, who physically initiated the subject calls. *See, e.g.*, *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (holding that "[b]ecause [caller] identity is a necessary element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims").

7961, 7980 (Jul. 10, 2015) (there must be a "direct connection between a person or entity and the making of a call" for direct liability to attach). As such, an alleged *indirect* connection—such as a third party vendor making calls on behalf of a company—will not suffice. *See, e.g., Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing, noting "a defendant 'generally does not [physically] initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf"); *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) ("[M]erely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability.).

Furthermore, federal courts have correctly recognized that TCPA plaintiffs must adequately plead a TCPA liability theory in all cases without the benefit of discovery to avoid a complete dismissal under Rule 12(b)(6). *See, e.g., Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"); *Hyatt v. J.B. Hunt Transp. Servs., Inc.*, 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015) (ruling similarly). This position is consistent with applicable binding Sixth Circuit and other authority on Rule 12(b)(6) motions generally. *See Kolley v. Adult Protective Servs.,* 725 F.3d 581, 587 (6th Cir. 2013) ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment.").[6]

Applying the firmly-rooted applicable federal authority set forth above to Plaintiff's conclusory allegations here promptly dooms his Complaint to dismissal on direct liability grounds.

---

[6] *See also Twombly*, 550 U.S. at 559 (2007) (emphasizing the importance of the requirement of plausibility at the motion to dismiss stage, in part because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" summary judgment or trial).

Indeed, as noted above, Plaintiff conflates the "Defendants" throughout his entire pleading, fluctuates between using the singular term "Defendant" and the plural "Defendants," and suggests that countless unidentified third parties were involved in "sending" these messages. *See, e.g.,* Dkt. 1, ¶¶ 4, 9, 16, 22, 23, 34, 36, 37, 39, 44, 47, 51, 52, 53, 54. In other words, what Plaintiff is <u>really</u> alleging here, at bottom, is that <u>either</u> Firstsource itself physically placed the subject phone calls, <u>and/or</u> that MMH itself did, <u>and/or</u> that a third party or parties did. However, such conclusory and equivocating allegations are "woefully insufficient to state a claim of ***any*** sort." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013). Such is especially true when it comes to pleading TCPA claims, as the many on-point authorities cited herein all show.[7] Indeed, as one such court aptly noted when dismissing a TCPA case on this basis under Rule 12(b)(6), "simply asserting a purported fact [like Plaintiff did here] does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC,* 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024). On the whole, however, Plaintiff's directly "[c]ontradictory allegations" above not only fail to state a plausible direct TCPA liability claim, but they also "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal at the pleadings stage. *Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). This Court should reach the same conclusions here.

Moreover, Plaintiff's Complaint is more notable for what facts it <u>omits</u>, rather than what few if any facts it contains, on this front. For example, Plaintiff noticeably does <u>not</u> allege, *inter alia*: (i)

---

[7] *See also Abante Rooter*, 2018 WL 288055, at *4 (allegations plaintiff received a call from someone purportedly calling on behalf of the defendant and who identified defendant by name deemed insufficient for direct TCPA liability, without more); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *1-3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis, even though one plaintiff allegedly spoke to someone "who [expressly] identified herself as working for" the defendant); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (allegations calls were "from Defendant, its employees and/or agents" were insufficient for directly liability, without more).

what phone numbers were used to call him; (ii) that Firstsource owns or uses any of those numbers; (iii) that he called any of those numbers back and reached Firstsource directly; or (iv) that Firstsource's name appeared on his caller ID for any call. The same omissions occur with respect to MMH. Such unpled facts ***might*** have supported a plausible direct TCPA liability theory here, as other courts have found. *See, e.g., Murray*, 2015 WL 4204398, at *2 (dismissing where there were "no factual allegations in the complaint that Choice Energy had any active role or involvement in [physically] placing the [subject] calls" even though the plaintiff was allegedly informed the call was "from" the defendant); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *6 (dismissing on this basis where complaint lacked such details about the alleged communications); *Smith v. Direct Bldg. Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (same); *Bank v. Vivint Solar, Inc*., 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (dismissing where complaint was "silent as to the caller ID displayed during the Prerecorded Call"). "As a party to these calls, Plaintiff 'should be able to provide greater detail.'" *Matthews v. Senior Life Ins. Co.,* 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)). That Plaintiff did not plead such detail here, which should surely be within his knowledge if they exist, is telling and fatal.

Additionally, even if the Court accepts these defective allegations as true for present purposes (and it should not), the Complaint still fails to plead a direct liability claim as to Firstsource. As noted above, direct TCPA liability does not apply to third party "platform providers" who merely facilitate outbound calls for others. *See, e.g., Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 ("Generally, '[u]sers of [telecommunications] services, not the carriers providing the services, [are] held liable' under the TCPA.") (quoting *Kauffmann v. CallFire, Inc.,* 141 F. Supp. 3d 1044, 1047

(S.D. Cal. 2015) (cleaned up)). This Court should rule similarly as to Firstsource in this case.[8]

In 2015, the FCC addressed the issue of when entities like Firstsource who allegedly facilitate calls for others are considered the "makers" or "initiators" of calls for direct TCPA liability purposes. *See In re Rules & Regs. Implementing the TCPA,* 30 FCC Rcd. 7961, 7980 ¶ 30 (2015) (hereafter "2015 FCC Order"), *rev'd in part by ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). The FCC concluded courts should "look to the totality of the facts and circumstances surrounding the placing of a particular call to determine: 1) who took the steps necessary to physically place the call; and 2) whether another person or entity was so involved in placing the call as to be deemed to have initiated it, considering the goals and purposes of the TCPA." 2015 FCC Order, 30 FCC Rcd. at 7980 ¶ 30. In determining whether a certain platform provider was subject to TCPA liability, the FCC found significant that it was the <u>user</u> of the platform/application who "initiated" communication, because generally it is the user who is determining, *inter alia,* whether to send it, to whom, when, and the contents. *Id.* at 7984 ¶ 37.[9] Many courts have adopted this analytical framework when determining if a platform provider can be liable under the TCPA when reviewing complaints for a Rule 12(b)(6) motion, and have dismissed such claims on this basis. *See, e.g., Rogers, supra*; *Meeks,* 2018 WL 1524067, at *3-5; *Sheski,* 2020 WL 2474421, at *3-4; *Frank,* 2019 WL 4855378, at *2.

*Rogers* is highly instructive on this point, as the facts are closely analogous to those here. In

---

[8] Firstsource does not concede the Complaint is adequately pled as to *either* Defendant. It is not.

[9] As one court summarized when dismissing on direct TCPA liability grounds, "[s]ome of the factors used to evaluate an entity's involvement in placing [a] call" or sending text that the FCC has identified and various courts have considered "include: [1] the extent to which the provider/host controls the messaging; [2] the extent to which the provider/host controls the timing or sending of the message; [3] the extent to which the provider/host controls the recipient list; [4] the extent to which the provider/host 'willfully enables fraudulent spoofing of telephone numbers'; [5] the extent to which the provider/host assists customers in blocking Caller ID; [6] whether the provider/host knowingly allows its customers to use the platform in a way that violates the TCPA; [and] [7] whether the service or platform is purely reactive in nature, sending messages as proscribed and arranged by the customer." *Frank*, 2019 WL 4855378, at *2 (quoting 30 FCC Rcd. at 7980-84).

*Rogers,* the plaintiff alleged, albeit in conclusory fashion, that one defendant (Boomsourcing, the alleged platform provider) "'physically dialed' pre-recorded calls" to certain plaintiffs "on behalf of" the other defendant (Assurance IQ) to sell its insurance products. 2023 WL 2646468, at *3, 5. Applying the 2015 FCC Order and some of the authorities cited above, the *Rogers* court found that the platform provider was not subject to direct TCPA liability, even though the subject calls allegedly originated from its platform, because the "[p]laintiffs ha[d] not pleaded that Boomsourcing was aware that Assurance IQ was using its platform to send pre-recorded calls in violation of the TCPA." *Id.* at *5. The court also dismissed <u>both</u> defendants on direct and vicarious liability grounds, as the plaintiffs did not plead sufficient non-conclusory facts supporting such theories. *See id.* at *5-7.

*Meeks* is further instructive on this issue. In that case, the plaintiff alleged that he voluntarily provided his cell phone number to a hostess at a restaurant so that he could be notified when his table was ready, and he subsequently received texts from that restaurant, which included hyperlinks to the platform provider's (Yelp) website. *See* 2018 WL 1524067, at *1-2. Dismissing the claim against Yelp with prejudice, the *Meeks* court evaluated whether the plaintiff had sufficiently alleged facts that would establish that the platform provider initiated the texts allegedly sent to the plaintiff for direct TCPA liability. *Id.* at *4. Applying the 2015 FCC Order, the *Meeks* court found that, while the plaintiff alleged that the at-issue texts may have technically originated from Yelp's platform, "he d[id] not allege that Yelp decided whether, when, or to whom to send the messages." *Id.* at *5. Thus, the court ruled the provider was not subject to direct or vicarious TCPA liability. *Id.* at *5-6.

As applied here, even if this Court takes Plaintiff's wholly conclusory allegations as true (again, it should not), he at best alleges that Firstsource is merely a passive platform provider utilized by MMH to facilitate calls, which is insufficient for direct TCPA liability as to Firstsource. *See, e.g.,* Dkt. 1, ¶ 17 (concluding that MMH "hired Firstsource to make [the alleged] pre-recorded calls"); ¶

18 ("Manatee Memorial Hospital provided the telephone numbers to Firstsource for them to call."). In other words, according to Plaintiff's own pleading, the alleged calls in this case were <u>not</u> "proscribed and arranged" by Firstsource but were "purely reactive in nature." *Frank*, 2019 WL 4855378, at *2 (quoting 30 FCC Rcd. at 7980-84). Such allegations, like those in *Rogers*, *Meeks*, and the other platform provider cases discussed above,[10] show that Firstsource cannot be held liable on a theory of direct liability as a matter of law, which further warrants its dismissal from this case.

Lastly, in response to this Motion, Plaintiff may cite to *Harrison v. Humana, Inc*., 2024 WL 4828737 (W.D. Ky. Nov. 19, 2024) (Stivers, C.J.) or *Jewell v. Magnolia Bank, Inc*., 2024 WL 203972 (W.D. Ky. Jan. 17, 2024) (Jennings, J.), where the courts allowed TCPA claims to proceed to discovery. Both decisions are distinguishable and require a different result (*i.e.*, a dismissal) here. For example, neither case involved a defendant that was alleged to be a platform provider for another defendant, and the courts did not focus on who "physically" placed the subject calls when considering the sufficiency of the direct TCPA liability allegations there (as many other courts do).[11] Further, the plaintiff in each case alleged that the persons to whom they spoke, and who identified themselves as representatives of the defendant, actually attempted to sell the defendant's services or products on these calls; and, the plaintiff in *Jewel* even alleged he was provided a callback number

---

[10] *See also Frank*, 2019 WL 4855378, at *2-3 (applying the 2015 FCC Order, dismissing, and holding that, because there were no facts suggesting the platform provider "exercised any discernible involvement in deciding whether, when, or to whom the text message is sent, or what the text message said," plaintiff did not successfully allege the provider was "the maker or initiator of the text message" within the meaning of the TCPA to state a plausible direct liability claim); *Sheski,* 2020 WL 2474421, at *3-4 (ruling similarly); *Kauffman*, 141 F. Supp. 3d at 1050 (same).

[11] For example, the subject calls in both cases were allegedly transferred *to* the defendant. But by definition, that is not physically placing a call directly to the plaintiff. Rather, that is the defendant who is ***receiving*** a call from the caller, which is not direct TCPA liability as a matter of law, as myriad courts have recognized. *See, e.g., Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2 (dismissing on direct liability grounds where plaintiff eventually spoke to defendant's employee after an initial prerecorded message identifying a third party, holding such "facts failed to show whether [d]efendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer") (internal punctuation omitted). *See also Brown*, 2024 WL 3367536, at *3; *Bank*, 2024 WL 1332635, at *4; *Barnes,* 2023 WL 2592371, at *3 (all ruling similarly).

by one of these representatives and that he then subsequently received calls from the call back number given as being the alleged caller's direct line. *Jewel*, 2024 WL 203972, at \*3; *Harrison*, 2024 WL 4838737, at \*3. Plaintiff here does not make any such allegations, instead relying on conclusory allegations and speculation, which does not pass muster under Rule 12(b)(6).

In sum, Plaintiff's equiovcating and conclusory allegations do not meet federal pleadings standards, nor do they sufficiently allege a plausible direct TCPA liability theory applying the weight of applicable federal authority on this point. Thus, his Complaint should be dismissed on this basis.

### ii.    Plaintiff Fails to Adequately Allege a Vicarious TCPA Liability Theory.

If Plaintiff was attempting to plead vicarious TCPA liability, against Firstsource or MMH, he fares no better. Indeed, vicarious liability in any context cannot be casually pled, and courts uniformly require all plaintiffs to meet a certain pleading threshold before dragging an otherwise innocent party into court over the conduct of another. Such is especially true in TCPA cases.

Generally, vicarious liability requires pleading the existence of a special "consensual relationship" between a principal and an agent. Restat. (3d) Agency § 1.01, cmt. c. As defined by the Sixth Circuit in a TCPA case, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Keating v. Peterson's Nelnet, LLC,* 615 F. App'x 365, 372 (6th Cir. 2015) (quoting Restat. § 1.01). This requires pleading "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at \*3 (S.D. Cal. Nov. 29, 2017). And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss [in a TCPA or any case], sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks*, 2018 WL 1524067, at \*5 (quoting *Kristensen v. Credit*

17

*Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)).

Moreover, in the TCPA context in particular, federal courts have widely recognized that vicarious liability cannot attach without the "essential ingredient" of control. *Jones v. Royal Admin. Svcs., Inc.,* 887 F.3d 443, 450 (9th Cir. 2018). However, just having general control over a third party agent is insufficient in this context; indeed, *anyone* who hires another person may have *some* level of general control over that person. Instead, what matters for vicarious liability in a TCPA case is whether there are sufficient non-conclusory facts pled supporting an inference that the defendant had control over the "manner and means" of that third party's call campaign specifically—*i.e.,* literally who to call, when to call, how to call, the content of the call, etc. *See, e.g., In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520 (N.D. W.Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("[T]o prove actual agency [for vicarious TCPA liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted."). *See also Daybreak,* 2023 WL 3985245, at *3; *Doyle v. Matrix Warranty Sols., Inc.,* 2023 WL 4188313, at *4 (D.N.J. June 26, 2023); *Rogers*, 2023 WL 2646468, at *6; *Meeks*, 2018 WL 1524067, at *6 (all ruling similarly and dismissing on this basis under Rule 12(b)(6)).

At bottom, these authorities show that any vicarious TCPA liability theory cannot be based on conclusory statements and withstand scrutiny under Rule 12(b)(6). Rather, consistent with federal pleading standards, TCPA plaintiffs must allege *some* facts regarding the relationship between the alleged principal and agent—and therefore sufficiently plead the essential element of "control" over the "manner and means" of the calls as noted above—"and cannot simply allege general control in a vacuum." *Nelums, LLC*, 2023 WL 5607594, at *8. (citing *Jones*, 887 F.3d at 450). *See also Cunningham v. Health Plan Intermediaries,* 2021 WL 1946645, at *4 (dismissing, holding a plaintiff

"must allege some factual predicate that gives rise to an inference of an agency relationship"); *Dobronski v. Tobias & Assocs., Inc*., 2024 WL 1174553, at *3 (E.D. Mich. Mar. 18, 2024) (citing *Cunningham* and dismissing TCPA claims where plaintiff did not plead facts supporting agency); *Chambers v. Nationwide Mut. Ins. Co.,* 2020 WL 2475354, at *4 (N.D. Ohio May 13, 2020) (same).

Yet, such "control" may <u>not</u> be inferred simply because one party allegedly "hired" another, without more. *See, e.g., Naiman v. TranzVia LLC*, 2017 WL 5992123, at *1, 9 (N.D. Cal. Dec. 4, 2017) (dismissing TCPA claim on this basis, despite the defendant having allegedly "hired" the third party caller). Nor can such control be inferred based solely on the content of the allegedly violative communications, either. *See, e.g.*, *Meeks*, 2018 WL 1524067, at *6 (dismissing on vicarious liability grounds despite hyperlink to defendant's app within the subject text messages). The same is true even if the defendant could possibly profit from the alleged communications. *See, e.g., Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 578 (W.D. Pa. 2017) (rejecting plaintiff's "broad sweeping extension of [TCPA] liability, whether direct or vicarious, to parties merely because they 'stand to benefit' from the call"). Plaintiff failed to plead any facts demonstrative of "control" here.

Indeed, other than using a few legal buzzwords perhaps suggestive of agency or the involvement of third parties as discussed above—*e.g.,* that MMH "hired" Firstsource, there was "a third party acting on their behalf," or "Defendant [*sic*] violated the TCPA by sending or causing to be sent calls"——Plaintiff pleads zero facts in his threadbare Complaint supporting any common law agency theory. Nor are there any facts pled indicating that either of the Defendants had specific "control" over the "manner and means" of the call campaign being conducted, which is the touchstone of vicarious TCPA liability, and another fatal omission by Plaintiff. As such, Plaintiff's Complaint—to the extent it purports to plead a vicarious liability theory in this case—should also be dismissed on vicarious TCPA liability grounds. *See, e.g., Cunningham v. Health Plan Intermediaries,*

19

2021 WL 1946645, at *4; *Dobronski v. Tobias & Assocs., Inc*., 2024 WL 1174553, at *3.

###    B.    Plaintiff Fails to Adequately Plead Use of an "Artificial or Prerecorded Voice."

Plaintiff's Complaint further fails because it omits facts supporting another essential element

of any claim under Section 227(b) of the TCPA—that any "voice" he heard was "prerecorded."

To survive dismissal, Plaintiff's "[C]omplaint must [also] include some factual allegations

beyond 'the call had a prerecorded [or artificial] voice.'" *Smith v. Pro Custom Solar LLC*, 2021 WL

141336, at *3 (D.N.J. Jan. 15, 2021). Accordingly, a plaintiff bringing such a claim cannot simply

parrot the statutory text or applicable case law; rather, they must plead sufficient facts supporting a

plausible inference that any "voice" was actually "artificial" or "prerecorded," as opposed to a live

person speaking. *See, e.g., Manopla*, 2020 WL 1975834, at *2 (dismissing § 227(b) claim where

plaintiff failed to allege facts "regarding the tenor, nature, or circumstances of the alleged calls" and

"merely proffer[ed] the content of the message and conclusory allege[d] that Defendant utilized a

pre-recorded message"); *Curry v. Synchrony Bank, N.A*., 2015 WL 7015311, at *2-3 (S.D. Miss.

Nov. 12, 2015) (dismissing where the plaintiff had "'not provided sufficient contextual details to

determine whether she spoke to a human or merely heard a recording upon picking up the phone'")

(quoting *Aikens v. Synchrony Fin.,* 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015)); *Allison v.

Wells Fargo Bank, N.A.,* 2022 WL 10756885, at *3 (S.D. Cal. Oct. 18, 2022) (rejecting argument

that "the use of a 'prerecorded voice' is [a] self-defining" term).[12] In sum, these well-reasoned

---

[12] *See also Aaronson,* 2019 WL 8953349, at *4; *Caruso v. Cavalry Portfolio Svcs.,* 2019 WL
4747679, at *4 (S.D. Cal. Sept. 30, 2019); *Winters v. Quicken Loans Inc.,* 2020 WL 5292002, at *4
(D. Ariz. Sept. 4, 2020); *Rahimian v. Adriano*, 2022 WL 798371, at *2 (D. Nev. Mar. 16, 2022);
*Demarattes v. Enhanced Recovery Co., LLC,* 2022 WL 4121217, at *7 (E.D.N.Y. Sept. 9, 2022);
*Laccinole v. Gulf Coast Collection Bureau, Inc.,* 2023 WL 157719, at *3 (D.R.I. Jan. 11, 2023);
*Metzler*, 2023 WL 1779631, at *1, 6; *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5; *Moffet
v. Everglades Coll., Inc.,* 2024 WL 1657195, at *3 (M.D. Fla. Mar. 4, 2024); *Andersen v. Nexa
Mortg., LLC,* 2024 WL 3762098, at *4 (C.D. Cal. Aug. 12, 2024); *Davis v. Rockloans Marketplace,
LLC,* 2024 WL 4896587, at *2 (S.D. Cal. Nov. 26, 2024); *Frato v. Cap. Mgmt. Servs. L.P.,* 2025 WL
73286, at *3 (D.N.J. Jan. 8, 2025) (all dismissing similar TCPA claims lacking in supporting facts).

authorities, among many others, show that a complaint seeking relief under Section 227(b) of the TCPA must contain some actual plausible facts and provide sufficient contextual details from which it can be inferred that such "voice" technology was actually used on a call to avoid a dismissal.

Such contextual details are critically important in cases where (as here) the plaintiff allegedly received a voicemail and did not answer the call. Indeed, a voicemail, by definition, "is an electronic communication system in which *spoken messages are recorded or digitized and stored for later playback* by the intended recipient." *See* https://www.merriam-webster.com/dictionary/voicemail (last visited Apr. 26, 2025) (emphasis added). However, a voicemail message left by a live person in real time does not violate the TCPA. *See, e.g., Andersen*, 2024 WL 3762098, at *4 ("To survive a motion to dismiss [for a Section 227(b) claim], a plaintiff must include factual allegations indicating that a prerecorded voice, as opposed to that of a real, live person, was used.").

As applied here, Plaintiff's Complaint is replete with conclusory statements and regurgitations of applicable case law, trying to suggest that the "voice" on the messages was "artificial or prerecorded"—though oddly he never specifies *which* technology he claims was used here, despite the terms "artificial" and "prerecorded" not being synonymous under the TCPA and involving vastly different technologies.[13] *See, e.g.,* Dkt. 1, ¶¶ 10, 12, 14-17, 23-25, 34, 44, 51, 54. Yet, even if the Court takes his wholly conclusory allegations on this front as true for present purposes (and it should not), they do not help him avoid a dismissal on this basis for several reasons:

---

[13] *See* 47 U.S.C. §227(b)(1)(A)(iii) (restricting calls made using an "artificial <u>or</u> prerecorded voice"). An "artificial" voice is exactly what it sounds like—the voice of a person that does not exist (*e.g.,* artificial intelligence or a "soundboard")—that is used to interact with the called party. *See also Soundboard Ass'n v. FTC,* 888 F.3d 1261, 1263 (D.C. Cir. 2018) (discussing some common forms of artificial voice technology). In contrast, a "prerecorded" voice is far less advanced and is typically a live person making an audio recording (there is no interaction). A voice could perhaps be *both* in some instances—an artificial voice used to make an audio recording—but that would be very unusual and is not what Plaintiff alleges here. That his Complaint does not differentiate between the two forms of technology is further indicative of his flawed "either/or" pleading tactic.

**First**, Plaintiff concludes that the messages were prerecorded because "there was a pause after the phone connected to voicemail." Dkt. 1, ¶ 25. However, a non-descript "pause" at the beginning of a message does not support an inference that any voice Plaintiff heard on his voicemail was truly "prerecorded." Rather, a pause is completely consistent with a human being making a live call, as courts have found. *See, e.g., Laccinole,* 2023 WL 157719, at *3 (dismissing Section 227(b) claim under Rule 12(b)(6), holding the plaintiff's "general allegations that [the defendant] used a prerecorded message, that he detected a pause before the caller spoke when he answered the phone, and heard clicks over the line are not enough to make out a TCPA claim even taking the allegations in [plaintiff's] favor at this stage of the case"); *Moffet,* 2024 WL 1657195, at *3 (same, ruling the alleged presence of a "long pause" on a call "does not necessarily describe the allegedly prerecorded voice but rather the lack of a voice at all"). In short, all that suggests is the speaker took a breath.

**Second**, Plaintiff concludes "the script was identical on both calls, generic and not personalized." Dkt. 1, ¶ 25. At the same time, however, Plaintiff concludes the messages were for someone named "Jose" (*id*. ¶ 24), which belies an inference that they were prerecorded. Indeed, it defies logic and common sense, and it would be unreasonable to infer, that any company would prerecord the specific names of hundreds (or even thousands or hundreds of thousands) of individuals—apparently patients of a hospital, no less—so that it could later indiscriminately send out prerecorded voicemails *en masse*. In any event, it is axiomatic that this Court "'need not indulge in unreasonable inferences'" under Rule 12(b)(6). *Girgis v. Countrywide Home Loans, Inc*., 733 F. Supp. 2d 835, 843 (N.D. Ohio 2010) (quoting *HMS Property Mgmt. Group Inc. v. Miller*, 69 F.3d 537 (Table), 1995 WL 641308 at *3 (6th Cir. Oct. 31, 1995)). *See also Bradley v. Jefferson Cnty. Pub. Sch.,* 598 F. Supp. 3d 552, 557 (W.D. Ky. 2022), *aff'd*, 88 F.4th 1190 (6th Cir. 2023) (reviewing a complaint under Rule 12(b)(6) is a "'context-specific task that requires the reviewing court to draw

on its judicial experience and common sense'") (quoting *Iqbal*, 556 U.S. at 679). It should not here.

**Third**, Plaintiff's conclusory statements that the messages were supposedly "generic" or that the speaker had a "monotone voice" also are of no moment, as that too could simply be the result of live persons reading from a script and leaving routine voicemails. *See also Metzler*, 2023 WL 1779631, at *1, 6 (dismissing similar TCPA claim where "[t]he voicemail itself [as alleged] provide[d] no indication that it was prerecorded as opposed to having been left by a caller reading from a script"); *Hicks*, 2020 WL 9261758, at *5 (rejecting similar allegations about a supposedly "generic" voicemail). Any person reading a script and leaving a routine voicemail message might sound generic or monotone, which is really the whole point of using a script—uniformity.

**Fourth**, Plaintiff's Complaint is again more notable for what facts it omits on this point, rather than what few if any facts it includes. For example, Plaintiff does not give the full content of either message (*see* Dkt. 1, ¶ 24) or allege that anyone else receive the exact same message. As such, there is no factual basis on which this Court could infer whether they were ***exactly*** identical in content, or merely just one live person or perhaps two different live people reading from the same script. Further, while Plaintiff refers to the caller as "[t]he robot," he does not allege that the caller *sounded* robotic or unnatural in tone. Plaintiff also does not clearly indicate whether he even answered either or both calls, such that he would have interacted with the caller and had the opportunity to tell whether this was truly a "robot" speaking—for example, that the speaker was non-responsive to questions. As the authorities cited above show, such contextual factual details matter in TCPA prerecorded call cases, and their omission from the Complaint in this case further warrants dismissal. *See also Rogers,* 2023 WL 2646468, at *4 (dismissing Section 227(b) claim on this basis, holding that "[e]ven at this pre-discovery stage, Plaintiffs should be able to allege facts establishing that the calls were in-fact pre-recorded" and that such "information is known to Plaintiffs without

any discovery"); *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983) ("It is not ... proper to assume that [the plaintiff] can prove facts that he has not alleged[.]").

All told, Plaintiff has pleaded no facts on which this Court could infer that either alleged voicemail "was prerecorded as opposed to having been left by a caller reading from a script." *Metzler*, 2023 WL 1779631, at *1, 6. Thus, his TCPA claim is fatally deficient, and should be dismissed on this additional basis, because "[w]ithout further specifics, Plaintiff's allegation is conclusory" and does not meet federal pleading standards. *Rahimian,* 2022 WL 798371, at *3.

## V.    <u>CONCLUSION</u>

For all of the reasons above, the Court should dismiss Plaintiff's Complaint.

Dated: April 29, 2025

Respectfully submitted,

/s/ Casey L. Hinkle
Casey L. Hinkle
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Fl.
Louisville, KY 40202
Tel:    (502) 416-1630
Email:  chinkle@kaplanjohnsonlaw.com

*Counsel for Defendant Firstsource Solutions USA, LLC*

24

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 29, 2025, the foregoing was filed via the Court's electronic filing system, which will automatically send notice of such filing to all counsel of record.

/s/ Casey L. Hinkle
*Counsel for Defendant Firstsource Solutions USA, LLC*