# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

| | |
|---|---|
| **MARSHALL MCCLAIN, individually and on behalf of a class of all persons and entities similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FIRSTSOURCE SOLUTIONS USA, LLC and MANATEE MEMORIAL HOSPITAL, LIMITED PARTNERSHIP,**<br><br>**Defendants.** | **Case No. 3:25-cv-00150-DJH** |

## DEFENDANT FIRSTSOURCE SOLUTIONS USA, LLC'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Firstsource Solutions USA, LLC ("Firstsource") respectfully moves to dismiss the First Amended Class Action Complaint (*see* Dkt. 22, "FAC") filed by Plaintiff Marshall McClain ("Plaintiff") in this matter, <u>with prejudice</u>, pursuant to Fed. R. Civ. P. 12(b)(6) and/or 12(b)(1).

## I.   <u>INTRODUCTION</u>

Like its fatally-flawed predecessor (*see* Dkt. 1), Plaintiff's FAC alleges, in conclusory fashion, that Firstsource and Manatee Memorial Hospital, LP ("MMH") violated the "artificial or prerecorded voice" message provisions of the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1). Plaintiff's lone TCPA claim remains based on two supposedly "prerecorded voice messages" (*i.e.*, voicemails) that he still concludes, without sufficient requisite factual support, (i) were "sent" <u>either</u> by Firstsource, MMH, <u>and/or</u> by an unidentified third party, all "on behalf" of MMH, to his cell phone, and (ii) stemmed from calls he did not answer (or, at least, he still does not plead if he did). As is apparent, however, Plaintiff's FAC still does not adequately allege facts pled in accordance with federal pleading standards, as opposed to conclusions, supporting an inference Firstsource (or MMH for that matter) bears any legal liability for those alleged calls or that they even violated the TCPA in the first instance. As discussed herein, such deficient allegations cannot survive dismissal in any federal case. This is doubly true under the weight of applicable federal authority on the standards for pleading TCPA claims, discussed below.

Though the TCPA is undoubtedly an important remedial statute designed to protect consumers from unscrupulous telemarketers, federal district courts across the country have uniformly recognized that TCPA plaintiffs do not have a lower hurdle to clear to make it beyond the pleading stage in federal court than any other federal plaintiff, and cannot simply offer conclusory allegations and get a free pass to discovery under the Federal Rules of Civil Procedure. This is for good reason. As the Court is aware, the TCPA has become one of the most heavily litigated statutes

in the U.S. since its enactment in 1991, with dozens of new complaints filed weekly, largely styled as putative class actions like this case. Given the favorable relief it affords, this is unsurprising: $500 in statutory damages per call, which can be trebled to $1,500 for "willful" or "knowing" violations. *See* 47 U.S.C. § 227(b)(3). And while attorneys' fees are not available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from otherwise innocent defendants through expensive class action litigation. *Saunders v. NCO Fin. Sys.*, Inc. 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012).[1] As such cases can be obviously financially lucrative for profit-seeking plaintiffs and their counsel, the TCPA "has strayed far from its original purpose," unwittingly spawned a cottage industry of class action litigation, and has "become the poster child for lawsuit abuse" in this country. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8073 (2015). Firstsource respectfully submits that this case, as evidenced in part by Plaintiff's still-defective FAC,[2] is indicative of this unfortunate side effect of the TCPA.

Against this backdrop, federal district courts nationwide have tacitly recognized that, at the pleadings stage in TCPA cases and particularly in putative class actions such as this one, they must balance the important goal of protecting consumers from unwanted phone calls against the equally important goal of protecting defendants from abusive litigation. Consequently, TCPA complaints lacking in adequate factual support, like the one at bar, are often dismissed by federal courts at the pleadings stage under Rule 12(b)(6). In this case, Plaintiff's similarly-defective FAC should suffer

---

[1] *See also Babare v. Sigue Corp.*, 2020 WL 8617424 at *2 (W.D. Wash. Sep. 30, 2020) ("It is well-recognized that discovery in [TCPA] class actions is expensive and asymmetric, with defendants bearing most of the burdens."); *Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010) (noting plaintiffs in general sometimes can "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit").

[2] For example, PACER shows Plaintiff has filed, through varying legal counsel, multiple similar TCPA class action lawsuits in courts across the country, ***all within just the last six months***.

the same fate, and be dismissed in its entirety and with prejudice, for at least the following reasons:

**First**, it is well-settled that, to successfully plead any TCPA claim and avoid dismissal under Rule 12(b)(6), all plaintiffs must first plead facts supporting a plausible theory of liability under the TCPA (either direct or vicarious liability) against <u>each</u> defendant for <u>each</u> allegedly violative phone call. This established rule requires all TCPA plaintiffs to plead sufficient non-conclusory facts supporting an inference that each defendant: (i) itself (and no one else) "physically" placed each of the subject calls directly to the plaintiff, as is required for direct TCPA liability; or (ii) was in a common law agency relationship with the person or entity that did physically place those calls—the touchstone of which in a TCPA case is having "control" over the "manner and means" of the call campaign conducted by the alleged caller—as is required for vicarious TCPA liability. *See, e.g., Sheski v. Shopify (USA) Inc.,* 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (discussing the key differences between direct and vicarious TCPA liability and the accepted legal standards for adequately pleading same, and dismissing on these bases); *Lucas v. Telemarketer Calling from (407) 476-5680,* 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019) (same, affirming dismissal).[3]

As applied here, Plaintiff continues to take the same classically flawed "either/or" pleading approach for his FAC as he did for his original complaint, even after amending, which has been rejected time and time again by federal district courts across the country as insufficient to plead a TCPA liability theory. Indeed, rather than plead actual facts, Plaintiff still just regurgitates the statutory text and applicable case law, interjects legal buzzwords (*e.g.,* "physically"), and ultimately

---

[3] *See also Wallack v. Mercantile Adjustments Bureau, Inc*., 2014 WL 1515852, at *3 (E.D. Mich. Apr. 18, 2014); *Cunningham v. Health Plan Intermediaries Holdings, LLC,* 2021 WL 1946645, at *2 (M.D. Tenn. May 14, 2021); *Dobronski v. Russo,* 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021); *Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *2-3 (N.D. Tex. June 13, 2023); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *1-6 (S.D.N.Y. Feb. 6, 2023); *Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at *1-6 (W.D. Wash. Mar. 27, 2023) (all dismissing on these grounds).

baldly concludes that the subject calls were physically "placed" or "sent" <u>either</u> by Firstsource, MMH, <u>and/or</u> by unidentified third parties, all "on behalf" of MMH. *See, e.g.,* Dkt. 22, ¶¶ 16-18, 23, 29, 38-41, 50, 67, 68. Such ill-pled allegations not only fail to meet the bedrock pleading standards of *Iqbal/Twombly* and their progeny and cannot survive dismissal in any federal case, but they also fail to state a plausible direct or vicarious TCPA liability theory against either Defendant under the vast weight of applicable federal authority cited above and herein on these key threshold dispositive issues. *See, e.g., Rogers v. Assurance IQ, LLC* 2023 WL 2646468, at *1-6 (dismissing closely analogous case with similar allegations on both bases as to all defendants); *Dobronski*, 2024 WL 4363118, at *5 (dismissing on these grounds, holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead any theory of TCPA liability); *Cunningham,* 2021 WL 1946645, at *2-4 (ruling similarly); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on direct TCPA liability grounds, even though the plaintiff was allegedly "informed that the call was from Choice Energy").

Plaintiff's wholly conclusory allegations about the purported relationship between Firstsource and MMH—*e.g.,* that Firstsource was supposedly "hired" by or "contracted with" MMH to place calls or to "caus[e]" calls "to be sent" by third parties to phone numbers "provided" to Firstsource by MMH, all on MMH's "behalf" and at its "direction" (Dkt. 22, ¶¶ 7, 9, 10, 16-18, 23, 67)—directly contradict other conclusory allegations in his FAC on these points and need not be taken as true, are not entitled to any presumption of truth at the pleadings stage under *Iqbal/Twombly* in any event, and do not help him avoid a complete dismissal on these grounds, either. *See, e.g., Rogers v. Assurance IQ, LLC* 2023 WL 2646468, at *1-6 (dismissing substantially similar TCPA complaint by some of the same counsel representing Plaintiff, as to both defendants, where the

complaint concluded that one of the defendants "physically" placed calls at the direction of the other, but otherwise lacked plausible facts supporting a TCPA liability theory as to either defendant).

In sum, because Plaintiff has not plausibly alleged a direct or vicarious liability theory as to *either* Defendant, his FAC should be dismissed on these grounds. *See e.g., Rogers* and *Dobronski*, *supra*; *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA []—that Defendants were directly or vicariously liable for the [subject communications]—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.).

**Second,** Plaintiff seeks treble damages under the TCPA (*see* Dkt. 22, ¶ 70), without pleading any facts suggesting that any violation here was "willful" or "knowing." Such allegations are likewise insufficient to withstand scrutiny under Rule 12(b)(6) and should be dismissed, as well.

**Third**, the FAC is also subject to dismissal under Rule 12(b)(1) on Article III standing grounds. Here, the FAC critically omits any facts remotely suggesting Plaintiff is at an *imminent* risk of a *future* injury by either of the Defendants, as required to have standing under Article III of the U.S. Constitution to seek injunctive relief in *any* federal case, and instead only makes generalized requests for such relief without factual support. *See* Dkt. 22, ¶¶ 54, 71. Thus, Plaintiff lacks standing, the Court lacks federal subject matter jurisdiction to award him injunctive relief, and consequently the Court must also dismiss his unsupported requests for injunctive relief under Rule 12(b)(1).

## II.    APPLICABLE LEGAL STANDARDS

Rule 12(b)(6) mandates dismissal of a complaint for failure to state a claim for relief. To avoid dismissal under this Rule, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). As such, while the Court must generally accept well-pled factual allegations as true under this Rule, it need <u>not</u> do so for legal conclusions couched as fact, unwarranted or unreasonable inferences, or unsupported speculation. *See Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Eidson v. Tenn. Dep't of Child. Servs.,* 510 F.3d 631, 634 (6th Cir. 2007); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *New Albany Tractor, Inc. v. Louisville Tractor, Inc*., 650 F.3d 1046, 1050 (6th Cir. 2011).

Moreover, it is axiomatic that this Court need not accept the many internally inconsistent and contradictory allegations in Plaintiff's FAC as true, nor attempt to reconcile them, when ruling on this Motion under Rule 12(b)(6) either. *See, e.g., Sec'y of Labor v. Macy's, Inc.,* 2021 WL 5359769, at *5 (S.D. Ohio Nov. 17, 2021) ("There is also an exception to the general principle that the Court accepts all factual allegations as true for internally inconsistent allegations, which need not (and indeed cannot) be accepted as true for purposes of a motion to dismiss.") (citation omitted); *Int'l IP Holdings, LLC v. Vitamin Energy, Inc.,* 2023 WL 6466560, at *8 (E.D. Mich. Oct. 4, 2023) (ruling similarly); *Williams v. CitiMortgage, Inc.,* 498 F.App'x 532, 536 (6th Cir. 2012) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself….").

Additionally, a plaintiff's lack of Article III standing to bring a claim is considered under Rule 12(b)(1), as the Court lacks federal subject matter jurisdiction to hear the claim. *See, e.g., Lyshe*

*v. Levy,* 854 F.3d 855, 857 (6th Cir. 2017) (citations omitted); *Ames v. LaRose,* 2023 WL 2184600, at *2 (S.D. Ohio Feb. 23, 2023) (citing *Tenn. Gen. Assembly v. U.S. Dep't of State*, 931 F.3d 499, 507 (6th Cir. 2019)). In this regard, beyond the three familiar traditional standing elements (*see, e.g., Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016)), to have Article III standing to seek injunctive relief in any federal case, all plaintiffs must plead they are at ***imminent*** risk of a ***future*** injury. *See, e.g., Shelby Advocs. for Valid Elections v. Hargett,* 947 F.3d 977, 981 (6th Cir. 2020) (citation omitted)); *see also Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (to have Article III standing to seek injunctive relief, "the threatened injury is 'certainly impending,' or [that] there is a 'substantial risk' that the harm will occur."); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (standing for injunctive relief requires "a risk of future harm" that is "sufficiently imminent and substantial"); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 108-09 (1998) (a "generalized interest in deterrence" is insufficient to demonstrate Article III standing for injunctive relief); *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009) (threat of future harm "must be actual and imminent, not conjectural or hypothetical"). Where a plaintiff does not plead sufficient non-conclusory facts showing their Article III standing to seek injunctive relief, the Court lacks federal subject matter jurisdiction to award such relief and may dismiss such requests under Rule 12(b)(1). *See, e.g., Miller v. Time Warner Cable Inc.,* 2016 WL 7471302, at *2–4 (C.D. Cal. Dec. 27, 2016).

## III.    <u>ARGUMENT</u>

Plaintiff's FAC seeks relief under Section 227(b) of the TCPA. *See* Dkt. 22, ¶¶ 12-13, 67-69. That provision provides, in pertinent part, that no person shall "make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47

U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. §§ 64.1200(a)(1)-(2) (the TCPA's related implementing regulations). As demonstrated below, however, Plaintiff fails to state such a claim for several reasons.

**A.    The Entire FAC Should Be Dismissed under Rule 12(b)(6) Because Plaintiff Fails to Sufficiently Allege a Theory of Liability Under the TCPA.**

Again, there are two potential theories of liability under the TCPA: (i) direct liability; or (ii) vicarious liability. *See, e.g.*, *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F.App'x 678, 679 (9th Cir. 2014)). *Accord Lucas*, *Dobronski*, *Wallack*, and *Cunningham*, *supra*. This established rule means the defendant "must either (1) directly make the call [at issue], or (2) have [a common law] agency relationship with the person who made the call [at issue]." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Courts have widely recognized that failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim at the pleadings stage, regardless of whether there are facts supporting other key elements of the claim. *See, e.g., Lucas*, 2019 WL 3021233, at *5-6; *Nelums*, 2023 WL 5607594, at *9; *Dobronski*, 2024 WL 4363118, at *5 *Rogers*, 2023 WL 2646468, at *1-6. As shown below, Plaintiff failed to properly allege either theory against either Defendant here for many reasons.

**i.    Plaintiff Fails to Adequately Allege a Direct TCPA Liability Theory.**

For either Defendant to be held directly liability under the TCPA in this case, Plaintiff must adequately allege, with sufficient factual support, that they "made ***each call*** that he seeks to hold it liable for" or face dismissal under Rule 12(b)(6). *Brownlee,* 2021 WL 4306160, at *1 (emphasis added). Moreover, it is firmly established, in this Circuit and nationally, that this rule requires alleging adequate non-conclusory facts, in accord with *Iqbal*/*Twombly*, supporting an inference that the defendant itself and not a third party "physically" placed each phone call at issue directly to the plaintiff. *See, e.g., Lucas,* 2019 WL 3021233, at *5-6; *Dobronski*, 2024 WL 4363118, at *5

8

*Cunningham*, 2021 WL 1946645, at *2; *Sheski*, 2020 WL 2474421, at *2-4 (citing *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). *See also Metzler,* 2023 WL 1779631, at *6 (TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call").

Conversely, direct TCPA liability "generally does ***not*** include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 F.C.C. Rcd. at 6583 (emphasis added); *see also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("[A] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers,' even if the third party had acted on its behalf.") (citation omitted). In other words, to successfully state a viable direct TCPA liability theory under applicable federal law, a plaintiff must plausibly allege, with sufficient supporting facts, that the defendant <u>itself</u> literally picked up the phone and <u>physically</u> placed (or sent, "made" or "initiated," etc.) <u>each</u> alleged violative call to them <u>directly</u>. An alleged indirect connection—such as a third party making calls on behalf of a company—will not suffice. In short, there must be a "direct connection between a person or entity and the making of a call" for direct TCPA liability to attach. *In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. at 7980. *See also Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (dismissing and holding that "merely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product" for direct TCPA liability) (citations omitted).[4]

---

[4] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, federal district courts in and beyond the Sixth Circuit that have evaluated and ultimately dismissed conclusory direct TCPA liability (including those cited above and below, among many others) have uniformly held that "make" or "initiate" in this context means to <u>literally</u> "physically" place a phone call. *See also Hicks v. Alarm.com Inc*., 2020 WL 9261758, at *4-5 (E.D. Va. Aug. 6, 2020); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3-5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018).

Consistent with the bedrock federal pleading standards set forth in *Iqbal* and *Twombly* and their progeny, however, federal district courts have also widely recognized that barren conclusions lacking in specific factual support will not suffice to state a plausible direct TCPA liability theory under Rule 12(b)(6). Indeed, as one such court aptly noted, "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call"—similar to what Plaintiff did here at best—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019) (holding "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the telephone calls at issue"); *Cunningham*, 2023 WL 3985245, at *2-3 (dismissing, ruling similarly); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (dismissing: "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" under Rule 12(b)(6)).

Accordingly, myriad courts in and beyond this Circuit have reached the same conclusions and have dismissed such facially deficient TCPA claims at the pleadings stage on this basis. *See, e.g., Murray*, 2015 WL 4204398, at *2 (dismissing, even though plaintiff was allegedly "informed that the call was from Choice Energy," where there were "no factual allegations in the complaint that Choice Energy had any active role or involvement in [physically] placing the [subject] calls"); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (dismissing similar complaint on this basis where, as here, "[p]laintiffs have not pleaded any *facts* supporting their inference that [the defendant itself] physically dialed the calls to four of the individual plaintiffs" (emphasis in original));

*Dobronski*, 2024 WL 4363118, at *5 (dismissing on these grounds, holding a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" is insufficient to plead any theory of TCPA liability); *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part by,* 2024 WL 2794108 (May 31, 2024) (recommending and approving dismissal on this basis, even though one caller allegedly said they were calling "from" the defendant and provided its website to plaintiff, and the plaintiff alleged in his amended complaint the defendant "was directly involved" in the subject calls); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [the defendant] Nano or Nano's agent"); *Meeks*, 2018 WL 1524067, at *3–5 (finding no direct liability, even though at-issue text identified defendant by name and contained a link to its website); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing on this basis where the plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"); *Abante Rooter*, 2018 WL 288055, at *4 (allegations plaintiff received a call from someone purportedly calling on behalf of the defendant and who identified defendant by name insufficient for direct TCPA liability, without more); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *1-3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis, even though one plaintiff allegedly spoke to someone "who [expressly] identified herself as working for" the defendant); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (allegations calls were "from Defendant, its employees and/or agents" were insufficient for directly liability, without more).

These well-reasoned authorities (among many others) show that merely parroting the statutory text or case law and concluding that a defendant "physically" placed or was "directly involved" in sending the alleged calls, or that taking an "either/or" approach and concluding that the

defendant and/or an agent placed them, is not enough to avoid a dismissal on this basis. More than that, they show the content of the alleged violative communications—even if the communications mention the defendant's name, sell its products, or originated "from" the defendant in some fashion—is not dispositive on this issue, standing alone. Rather, more factual enhancement is necessary to avoid dismissal. *See Matthews v. Senior Life Ins. Co.,* 2025 WL 1181789, at *3 (E.D. Va. Apr. 22, 2025) (dismissing on this basis: "As a party to these calls, Plaintiff 'should be able to provide greater detail.'") (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)).

This accepted analytical approach to evaluating the facial sufficiency of direct TCPA liability claims under Rule 12(b)(6) is in tacit recognition that, today, companies often hire third parties to handle their outbound communications. *See, e.g., Bennett,* 2022 WL 865837, at *3 and *Wick,* 2017 WL 2964855, at *3. For example, a ringless "prerecorded" voicemail message—*i.e.*, a voicemail message electronically transmitted to a phone without the phone ringing, which is what Plaintiff seemingly alleges he received here, since he does not allege he answered or that his cell phone even rang—could be physically "sent" by a third party vendor. Such a communication would naturally identify the defendant by name and would have originated "from" the defendant in a very technical sense, but it would not have been *physically* sent by the defendant *itself* to the plaintiff directly, which again is what matters for direct TCPA liability to attach, as the many authorities cited above all show. Both logically and as matter of law, a third party hired to send a message, and a defendant having indirect involvement in that process, is simply not "direct" TCPA liability. Rather, that scenario implicates a different liability theory (vicarious liability) with different pleading requirements—requirements Plaintiff does not meet here in any event, as discussed below (*see* pp. 18-23, *infra*).

Furthermore, federal district courts have widely recognized that TCPA plaintiffs must adequately plead a liability theory in all cases **without the benefit of discovery** to avoid a complete

dismissal under Rule 12(b)(6). *See, e.g., Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"); *Hyatt v. J.B. Hunt Transp. Servs., Inc.*, 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015) (ruling similarly). Of course, this is consistent with applicable binding Sixth Circuit and other authority on Rule 12(b)(6) motions generally. *See Kolley v. Adult Protective Servs.,* 725 F.3d 581, 587 (6th Cir. 2013) ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment."); *Twombly*, 550 U.S. at 559 (emphasizing the importance of the requirement of plausibility at the motion to dismiss stage, in part because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" summary judgment or trial).

Applying these firmly-rooted legal principles to Plaintiff's conclusory allegations here promptly dooms his entire FAC to dismissal on direct TCPA liability grounds. In this regard, Plaintiff relies heavily (if not exclusively) on the content of the alleged messages, in that they purportedly identified Firstsource by name and included a link to its website, for his conclusion that "Firstsource … is directly liable." Dkt. 22, ¶ 29. However, the weight of applicable federal authority above shows that the alleged content of a call is not dispositive of direct liability, standing alone. *See, e.g., Meeks*, 2018 WL 1524067, at *3–5 (finding no direct liability, even though at-issue text identified defendant by name and had a link to its website). Simply put, a message electronically sent to a phone stating "this is Amazon" (for example) did not mean Amazon itself actually, physically sent it directly.

Moreover, despite amending his original complaint, where he frequently used the singular term "Defendant" and/or improperly lumped the "Defendants" and their alleged conduct together

(*see* Dkt. 14 at 9, 11), Plaintiff's FAC is now chock full of many more contradictory allegations such that it is even <u>less</u> clear than before which theory of liability he is asserting against which Defendant.

For example, while Plaintiff now parrots case law and concludes that Firstsource "took the steps necessary to physically place the call and thus physically placed the call" in one paragraph, he then immediately proceeds to contradict this conclusion in the ***very next paragraph***, where he asserts Firstsource was just "involved in placing the call"—meaning that an ***unidentified third party***, and not Firstsource itself, physically placed the subject call(s).[5] Dkt. 22, ¶¶ 38-39. Other similarly inconsistent, equivocating, and contradictory allegations appear elsewhere in his FAC. *See, e.g., id.* ¶ 32 ("***No facts indicate that some third party, other than Defendant Firstsource,*** placed the calls at issue"); ¶ 67 ("Firstsource violated the TCPA by sending or ***causing to be sent*** calls [*i.e.,* by a ***third party***] to the cellular telephones" of Plaintiff and the putative class."); ¶ 68 ("***Manatee is directly and/or vicariously*** liable for the calls … Firstsource placed"); ¶ 71 (seeking "injunctive relief prohibiting ***Defendant*** from using a pre-recorded voice in the future….") (all emphases added).

At bottom, all this just underscores the point Firstsource made in its initial motion to dismiss (*see* Dkt. 14 at 12) and why Plaintiff's still-faulty FAC should be dismissed with prejudice—what Plaintiff is really alleging here is that <u>either</u> Firstsource itself physically placed the subject calls, <u>and/or</u> MMH itself did, <u>and/or</u> a third party or parties did. However, this Court need not (and should not) accept such obviously inconsistent and contradictory allegations as true when ruling on this Motion. *See, e.g., Macy's, Inc.*, 2021 WL 5359769, at *5; *Int'l IP Holdings, LLC;* 2023 WL 6466560, at *8; *Williams,* 498 F.App'x at 536. Moreover, courts have recognized that such conclusory and equivocating allegations like Plaintiff's are "woefully insufficient to state a claim of ***any*** sort" in any

---

[5] Plaintiff now oddly fluctuates between using the singular term "call" and the plural "calls" here, though he alleges receipt of two calls. *Id.*, ¶ 23. This inconsistency is indicative of the many defects in his FAC overall, since Plaintiff does not even seem to know how many calls he received.

federal court. *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013). Such is especially true when it comes to pleading TCPA liability theories, as the many on-point authorities cited herein show. Indeed, as one such court aptly noted when dismissing a TCPA case on this basis under Rule 12(b)(6), "simply asserting a purported fact [like Plaintiff continues to do here] does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024).

Additionally, even if this Court ignores the weight of federal authority above and accepts these defective allegations as true (and it should not), the FAC still fails to plausibly allege a direct TCPA liability theory. For example, other than one reference to <u>MMH</u> being "directly and/or vicariously liable" for the calls at issue (Dkt. 22, ¶ 68), there are no facts pled indicating that MMH itself physically placed any calls to him that would support a direct TCPA liability theory against MMH. That Plaintiff even added this contradictory allegation to his FAC is just further illustrative of his faulty "either/or" pleading approach, and highlights that he does not actually know who physically placed the subject calls. Moreover, this new allegation undermines his direct liability allegations against <u>Firstsource</u>, since two companies cannot possibly physically place the same call. On the whole, however, Plaintiff's inconsistent and directly "[c]ontradictory allegations" above not only fail to state a plausible direct TCPA liability theory, but also "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal at the pleadings stage. *Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015).[6]

---

[6] It is also axiomatic courts "'need not indulge in [such] unreasonable inferences'" when ruling on Rule 12(b)(6) motion. *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 843 (N.D. Ohio 2010) (quoting *HMS Property Mgmt. Group Inc. v. Miller*, 69 F.3d 537 (Table), 1995 WL 641308 at *3 (6th Cir. Oct. 31, 1995)). *See also Bradley v. Jefferson Cnty. Pub. Sch.,* 598 F. Supp. 3d 552, 557 (W.D. Ky. 2022), *aff'd,* 88 F.4th 1190 (6th Cir. 2023) (reviewing a complaint under 12(b)(6) is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense'") (quoting *Iqbal*, 556 U.S. at 679). This Court should not indulge here, and dismiss.

Plaintiff's conclusions about Firstsource's and MMH's supposed relationship only further muddy the proverbial waters on this point. As noted above, the FAC now avers, in conclusory fashion, that Firstsource was supposedly "hired" by or "contracted with" MMH to place calls, or to "caus[e]" calls "to be sent" by third parties, to numbers "provided" to Firstsource by MMH, all on MMH's "behalf" or at its "direction." Dkt. 22, ¶¶ 7, 9, 10, 16-18, 23, 67. Assuming *arguendo* any of this was true (which is not conceded), or even if the Court accepts these "facts" as true for present purposes (and it should not), they do not help Plaintiff avoid a dismissal, and instead only serve to further highlight the many fatal pleading flaws in the FAC as to Plaintiff's liability theories.

For one thing, these allegations are completely inconsistent with and directly contradict the other allegations in the FAC discussed above as to who Plaintiff contends physically placed the two subject calls in this case—*i.e.,* that it was either Firstsource, and/or MMH, and/or an unidentified third party or parties working for Firstsource. Put another way, how could MMH be "directly" liable for placing calls if it "hired" Firstsource to place them? Or how could Firstsource "physically" place them if it "caused" others to place them? All of these things simply <u>cannot</u> be true, and these allegations move the needle farther way from being "probable" and thus do not pass muster under federal pleading standards. *See Twombly*, 550 U.S. at 570 (under Rule 12(b)(6), a plaintiff must allege facts nudging their claims across the line from merely "conceivable" to "plausible").

For another thing, Plaintiff bases these allegations solely on the content of the alleged messages, to the extent they stated they were sent "on behalf" of MMH, and because Firstsource's terms and conditions on its website references "your healthcare provider" generally but not MMH specifically. Dkt. 22, ¶ 40. Beyond being entirely conclusory and thus facially-defective under *Iqbal/Twombly*, it bears repeating here again that the alleged content of a call is not dispositive of direct TCPA liability standing alone. *See* discussion at pp. 10-12, *supra* (collecting cases).

16

Furthermore, even assuming *arguendo* that there were some "contract" between Firstsource and MMH requiring Firstsource to place or to cause third parties to place calls, as Plaintiff baldly concludes (*see* Dkt. 22, ¶¶ 7 & 9), such a "fact" does not support a direct TCPA liability theory, either. *See, e.g., Rogers v. Assurance IQ, LLC,* 2023 WL 2646468, at \*5 ("Even if it had been properly pleaded, the Court is not satisfied the existence of such a contract term alone would suffice to establish direct liability."). This Court should reach the same conclusions in the present case.

Moreover, while Plaintiff's FAC now adds a statement to the contrary (*see* Dkt. 22, ¶¶ 33, 36), the foregoing allegations about the supposed relationship between Firstsource and MMH still suggest that Firstsource is, at best, a "platform provider" who facilitated the calls for MMH and could not be liable under the TCPA, which undermines his direct TCPA liability allegations.[7] But even if taken as true, these facially-defective allegations only further show why his FAC should be dismissed as to <u>both</u> Defendants for failure to allege a plausible TCPA liability theory.

The *Rogers* case cited several times above is highly instructive on this point, as the facts are closely analogous to those at bar and that case was filed by some of the same counsel representing Plaintiff here. In *Rogers,* the plaintiff alleged, in a similar conclusory fashion, that one defendant (Boomsourcing) "'physically dialed' pre-recorded calls" to certain plaintiffs "on behalf of" the other (Assurance IQ) to sell its insurance products. 2023 WL 2646468, at \*3, 5. The court found

---

[7] Courts and the FCC have held that alleged "platform providers" who facilitate outbound calls for others—which is what Plaintiff still seemingly alleges Firstsource was here, notwithstanding his contradictory conclusion—cannot be held liable under the TCPA. *See, e.g., Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at \*5 ("Generally, '[u]sers of [telecommunications] services, not the carriers providing the services, [are] held liable' under the TCPA.") (quoting *Kauffmann v. CallFire, Inc.,* 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015) and applying, *inter alia, In re Rules & Regs. Implementing the TCPA,* 30 FCC Rcd. 7961, 7980-7985 (2015) ("2015 FCC Order"), *rev'd in part by* 885 F.3d 687 (D.C. Cir. 2018) (cleaned up)); *Frank,* 2019 WL 4855378, at \*2 (discussing the factors the FCC has determined are relevant to determining platform provider liability under the TCPA, applying the 2015 FCC Order, and dismissing on direct liability grounds where the alleged calls were not "proscribed and arranged" by the defendant but were "purely reactive in nature."); *Meeks,* 2018 WL 1524067, at \*3-5 (ruling similarly); *Sheski,* 2020 WL 2474421, at \*3-4 (same).

Boomsourcing was not subject to TCPA liability under FCC guidelines, even though the calls allegedly originated from its platform, because (like in this case) the "[p]laintiffs ha[d] not pleaded that Boomsourcing was aware that Assurance IQ was using its platform to send pre-recorded calls in violation of the TCPA." *Id*. at *5. Further, the court also dismissed <u>both defendants</u> on direct and vicarious liability grounds, as the plaintiffs did not plead sufficient plausible facts supporting such theories against them. *Id.* at *5-7. This Court should reach the same conclusions and dismiss the entire FAC, as Plaintiff cannot keep his story straight any more than the plaintiffs in *Rogers* could.

The bottom line here is that it is manifestly ***impossible***—and certainly not probable and thus insufficient to avoid dismissal under Rule 12(b)(6)—that MMH and Firstsource are both directly and vicariously liable for the same two calls possibly physically made unidentified by third parties. Such is the sum total of what Plaintiff's many conclusory, inconsistent, and contradictory allegations in his FAC offers this Court. Plaintiff is just hedging his bets, not pleading actual facts. That is not what the Federal Rules permit. Therefore, Plaintiff's FAC should be dismissed on direct liability grounds.

### ii. Plaintiff Fails to Adequately Allege a Vicarious TCPA Liability Theory.

If Plaintiff was attempting to plead vicarious TCPA liability against Firstsource or MMH—though again, from his inconsistent allegations he added to his FAC, it is still unclear which liability theories he is asserting against which Defendant—he fares no better and should be flatly rejected.

Federal courts apply common law agency principles to determine vicarious liability in TCPA cases. *See Keating v. Peterson's Nelnet, LLC,* 615 F.App'x 365, 372 (6th Cir. 2015). Generally, vicarious liability requires pleading the existence of a "consensual relationship" between a principal and an agent. Restat. (3d) Agency § 1.01, cmt. c. As defined by the Sixth Circuit in a TCPA case, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the

principal's control, and the agent manifests assent or otherwise consents so to act." *Keating,* 615 F. App'x at 372 (quoting Restat. § 1.01). However, pleading agency in any context requires pleading "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks*, 2018 WL 1524067, at *5 (quoting *Kristensen v. Credit Payment Servs*., 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)) (TCPA case). Consistent with federal pleadings standards, therefore, the mere "existence of *some* connections between the defendant and the maker of the call will not suffice" to avoid dismissal under Rule 12(b)(6) on this basis. *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *3 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (emphasis original).

Moreover, in the TCPA context in particular, federal courts have widely recognized that vicarious liability cannot attach without the "essential ingredient" of control. *Jones v. Royal Admin. Svcs., Inc.,* 887 F.3d 443, 450 (9th Cir. 2018). However, just having control over a third party agent generally is insufficient in this context, which is in tacit recognition that anyone who hires another person may have *some* level of general control over that person. Instead, what matters for vicarious liability in a TCPA case is whether there are sufficient non-conclusory facts pled supporting an inference that the defendant had control over the "manner and means" of that third party's call campaign specifically—*i.e.,* literally who to call, when to call, how to call, the content of the call, etc. *See, e.g., In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520 (N.D. W.Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("[T]o prove actual agency [for vicarious TCPA liability], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and

19

means of the solicitation campaign that was conducted."); *Bank,* 2019 WL 1306064, at *4 (dismissing under Rule 12(b)(6) where complaint lacked "any allegations that [defendant] had the power to give 'interim instructions' to [agent], or any non-conclusory suggestion of 'direction' or 'control' by [defendant] of [agent]") (quoting *Jackson v. Caribbean Cruise Line, Inc.,* 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015)). *See also Cunningham,* 2023 WL 3985245, at *3; *Rogers*, 2023 WL 2646468, at *6; *Fabricant v. Elavon, Inc.*, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020); *Meeks*, 2018 WL 1524067, at *6 (all dismissing where no or insufficient facts suggesting agency or relating to the defendant's "control" over the "manner and means" of the call campaign were pled).

Together, these well-reasoned authorities and many others show that any viable vicarious TCPA liability theory cannot be based on mere conclusory statements and speculation, and expect to withstand scrutiny under Rule 12(b)(6). Rather, consistent with *Iqbal/Twombly*, TCPA plaintiffs must allege some facts regarding the relationship between the alleged principal and agent—and thus plead the essential element of "control" over the "manner and means" of the call campaign—"and cannot simply allege general control in a vacuum." *Nelums, LLC*, 2023 WL 5607594, at *8 (citing *Jones*, 887 F.3d at 450). *See also Cunningham,* 2021 WL 1946645, at *4 (dismissing, holding a plaintiff "must allege some factual predicate that gives rise to an inference of an agency relationship"); *Dobronski v. Tobias & Assocs., Inc*., 2024 WL 1174553, at *3 (E.D. Mich. Mar. 18, 2024) (citing *Cunningham* and dismissing where plaintiff did not plead facts supporting agency).

However, like for direct TCPA liability, courts have recognized that such requisite "control" for a vicarious TCPA liability theory cannot be inferred based solely on the content of the allegedly violative communications, standing alone, either. *See, e.g.*, *Hale v. Teledoc Health, Inc*., 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) (dismissing TCPA claim: "[T]he inclusion of Teledoc's services in HII's insurance bundle, alone, is insufficient to permit even a circumstantial inference

that HII called plaintiffs at Teledoc's direction or subject to Teledoc's control."). Control also may not be inferred simply because one party allegedly "hired" another, without more. *See, e.g., Naiman v. TranzVia LLC*, 2017 WL 5992123, at *1, 9 (N.D. Cal. Dec. 4, 2017) (dismissing TCPA claim on this basis, despite the defendant having allegedly "hired" the third party caller). This is true even if the plaintiff concludes that the alleged principal and agent have a contractual relationship, as Plaintiff did here. *See, e.g., Warciak v. Subway Restaurants, Inc.,* 949 F.3d 354, 357 (7th Cir. 2020) ("While an agency relationship can be created by contract, not all contractual relationships form an agency."); *Jackson*, 88 F. Supp. 3d at 138–39 (dismissing TCPA claim on this basis where the pleading contained no "non-conclusory suggestion of 'direction' or 'control' by [the defendant] of [the caller]" and holding that "the existence of a contract between [defendant] and [telemarketer]—even one that imposes certain constraints on [telemarketer]—does not necessarily mean that [defendant] had the power to give 'interim instructions' to [telemarketer], the hallmark of an agency relationship."). The same is also true even if the defendant could possibly profit from the alleged communications by the third party caller. *See, e.g., Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 578 (W.D. Pa. 2017).

Here, while unclear, Plaintiff seems to assert a vicarious liability theory against MMH and/or Firstsource. *See* Dkt. 22, ¶¶ 39-41, 68. However, beyond naked conclusions which are not entitled to any presumption of truth at the pleadings stage, Plaintiff fails to plead facts demonstrative of such specific "control" in his FAC, and therefore has not pled a vicarious TCPA liability theory against either Defendant. In fact, other than employing numerous legal buzzwords possibly suggestive of agency or the involvement of third parties as noted above—*e.g.,* that MMH "hired" or "contracted with" Firstsource, or the calls were made on MMH's "behalf" at its "direction," or Firstsource is responsible for "causing" the messages to be sent by a third party, etc.—Plaintiff still pleads **zero** facts in his FAC suggesting that either Defendant had any "control" over the "manner and means"

21

of the call campaign being conducted, which is the well-accepted touchstone of vicarious TCPA liability, even after he amended. This continuing pleading defect is fatal to his FAC and warrants its dismissal on this basis. *See also Bank v. Consumer Tax Advocate LLC,* 2025 WL 1640500, at *8 (E.D.N.Y. Feb. 5, 2025) (dismissing TCPA claim on vicarious liability grounds where, as here, "there are no facts alleged in the Amended Complaint to support the [plaintiff's] conclusory statement that there were contracts between any of the defendants, nor is there any factual allegation that would allow the Court to determine that the call was initiated by an agent of any of the defendants"),

At best, Plaintiff now concludes that (i) MMH "is vicariously liable for Firstsource's conduct because Firstsource admitted on the call that it was calling 'on behalf of' [MMH], and further that the terms and conditions on its very own website purport to bind the call recipient, Firstsource, and 'your healthcare provider,' that is, Manatee" and (ii) "Firstsource possessed the ability to bind [MMH] in contract, a key principle of agency." Dkt. 22, ¶¶ 40, 41. Setting aside for a moment that these are just more pure legal conclusions couched as facts, and thus should not be taken as true, these allegations do not help Plaintiff avoid a dismissal on this basis. On the one hand, these say nothing about MMH's (or Firstsource's) "control" over any alleged third party caller, let alone suggest it (or anyone else) had control over the "manner and means" of the caller's call campaign.

On the other hand, if Plaintiff was attempting to assert an apparent authority agency theory, he also failed miserably. Such a theory only arises from "'proof of something said or done by the [alleged ***principal***], on which [the plaintiff] reasonably relied' to the plaintiff's detriment." *Linlor,* 2017 WL 5885671, at *3 (quoting *Thomas,* 582 F.App'x at 679) (punctuation omitted, alterations original, emphasis added). *Accord Paintsville Hosp. Co. v. Rose,* 683 S.W.2d 255, 257 (Ky. 1985). Here, Plaintiff pleads no facts in his FAC about any statement or act by MMH upon which he reasonably relied, let alone to his detriment, which further supports dismissal. *See, e.g., Sapan v.*

*Shore Cap. Corp.*, 2024 WL 4002622, at \*6 (C.D. Cal. Aug. 23, 2024) (dismissing TCPA claim on this basis, and others, where the plaintiff did "not allege that any principal made any statement or took any action to indicate that anyone had authority as the principal's agent."); *Fabricant*, 2020 WL 11884505, at \*5 (dismissing TCPA claim, and ruling similarly); *Cunningham*, 2021 WL 1946645, at \*3 (same). In short, as it lacks plausible facts supporting any agency theory against either Defendant in this case, Plaintiff's entire FAC should be dismissed on vicarious TCPA liability grounds, as well.

\* \* \*

All told, it is plainly evident that, like its fatally-defective predecessor, the FAC is merely throwing darts at a proverbial dart board hoping one hits a viable theory of liability, not pleading facts. Plaintiff's conclusory and inconsistent amendments to his pleading only underscore this. As Plaintiff's FAC fails to allege a theory of TCPA liability, it must be dismissed under Rule 12(b)(6).

### B.    Plaintiff's Requests for Treble Damages Should Also Be Dismissed Under Rule 12(b)(6) Because the FAC Lacks Facts Supporting His Requests.

Plaintiff also purports to seek treble damages under the TCPA, to the extent that any violation was "willful" or "knowing," but pleads zero facts beyond his naked conclusions in support. *See* Dkt. 22, ¶¶ 33, 70 and Prayer for Relief. Courts have recognized that such faulty allegations are insufficient and cannot survive dismissal under Rule 12(b)(6), either. *See, e.g., Canary v. Youngevity Int'l, Inc.*, 2019 WL 1275343, at \*9 (N.D. Cal. Mar. 20, 2019) (dismissing claim for alleged willful/knowing TCPA violations because inter alia it "consist[ed] of nothing more than bare-bones legal conclusions"); *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015) ("[T]he bare assertion in [plaintiff's] complaint that the defendants 'willfully' and 'knowingly' violated the [TCPA] was a legal conclusion, not an allegation of fact that we must accept as true.").

C.    **Plaintiff's Factually-Unsupported Requests for Injunctive Relief Should Also Be Dismissed Under Rule 12(b)(1) for Lack of Article III Standing.**

Plaintiff's requests for injunctive relief should also be dismissed under Rule 12(b)(1) for lack of Article III standing. As noted above, a virtual mountain of <u>binding</u> federal precedent mandates that Plaintiff plead facts suggesting that he is at ***imminent*** risk of a ***future*** injury to have standing to seek such relief and avoid dismissal on this basis. *See, e.g., Shelby,* 947 F.3d at 981; *Driehaus*, 573 U.S. at 158; *Steel,* 523 U.S. at 108-09; *Summers,* 555 U.S. at 493; *Transunion*, 594 U.S. at 435.

Here, Plaintiff only makes generalized requests for injunctive relief, and there is nothing suggesting he is at risk of future injury, much less an imminent one. *See* Dkt. 22, ¶¶ 54, 71. Thus, these faulty allegations must also be dismissed under Rule 12(b)(1) for lack of standing. *See, e.g., Miller,* 2016 WL 7471302, at *2–4 (dismissing requests for injunctive relief in a TCPA case).

D.    **Any Dismissal Should Be With Prejudice.**

Lastly, the Court should dismiss the FAC with prejudice because Plaintiff already had a chance to amend and his amendments failed to cure his original complaint's deficiencies. *See, e.g., United States v. Doyle,* 2022 WL 1186182, at *15 (S.D. Ohio Apr. 21, 2022); *Morse v. McWhorter,* 290 F.3d 795, 800 (6th Cir. 2002); *see also Frame v. Cal-W. Reconveyance Corp.,* 2011 WL 3876012, at *3 (D. Ariz. Sept. 2, 2011) (dismissing with prejudice where "despite the benefit and existence of fully-briefed motions to dismiss, [p]laintiff's First Amended Complaint fail[ed] to cure the deficiencies noticed in [d]efendants' prior motions"). Here, despite being represented by counsel and having the benefit of a prior dispositive motion when doing so (*see* Dkt. 14), Plaintiff ultimately did not cure all of the fatal defects in his original pleading identified in Firstsource's previous motion; and in some ways he made those defects far worse by the additional inconsistent and contradictory (and thus inherently implausible) allegations he added, as described above. *See* discussion at pp. 13-18, *supra*. If Plaintiff had any more actual *facts* to allege, as opposed to more implausible

conclusions, he could (and indeed should) have pled them by now. That he did not do so leads to the logical conclusions that such facts must not exist and further chances to amend would be futile. As such, the FAC should be dismissed with prejudice. *See, e.g., Doyle*, *Morse*, and *Frame*, *supra*.

## IV.    **CONCLUSION**

For all of the reasons above, the Court should dismiss Plaintiff's entire FAC with prejudice.

Dated: June 20, 2025                               Respectfully submitted,

                                                   By: /s/Casey L. Hinkle
                                                   Casey L. Hinkle
                                                   **Kaplan Johnson Abate & Bird LLP**
                                                   710 W. Main St., 4th Fl.
                                                   Louisville, KY 40202
                                                   Tel:    (502) 416-1630
                                                   Email:  chinkle@kaplanjohnsonlaw.com

                                                   A. Paul Heeringa (*PHV* application pending)
                                                   **Manatt, Phelps & Phillips LLP**
                                                   151. N. Franklin Street, Suite 2600
                                                   Chicago, IL 60606
                                                   Tel: 312-529-6300
                                                   Email: pheeringa@manatt.com

                                                   *Counsel for Defendant*
                                                   *Firstsource Solutions USA, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2025, the foregoing was filed via the Court's electronic filing system, which will automatically send notice of such filing to all counsel of record.


/s/ Casey L. Hinkle
*Counsel for Defendant*