**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION**

| | | |
|---|---|---|
| MARSHALL MCCLAIN, *on behalf of himself and others similarly situated*, | ) ) ) ) | Civil Action No.: |
| Plaintiff, | ) ) | 3:25-cv-00150 |
| v. | ) ) | |
| FIRSTSOURCE SOLUTIONS USA, LLC and MANATEE MEMORIAL HOSPITAL, LIMITED PARTNERSHIP | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FIRSTSOURCE
SOLUTIONS USA, LLC'S MOTION TO DISMISS
AND DEFENDANT MANATEE  MEMORIAL HOSPITAL'S JOINDER**

**INTRODUCTION**

This Court has already rejected Defendant FirstSource Solutions USA, LLC's strategy of moving to dismiss TCPA cases against it on the credibility-straining basis that it did not place the calls at issue, despite stating on the calls themselves that *"this is FirstSource calling on behalf of Manatee Memorial Hospital"*. This Court should find, just as Chief Judge Stivers did, that the Plaintiff has plainly set forth a claim for direct liability against Defendant FirstSource. This case arises from what the Plaintiff has alleged are non-consensual robocalls made by FirstSource Solutions USA, LLC, a third-party service provider acting on behalf of Manatee Memorial Hospital, LP ("MMH"), to Marshall McClain and other individuals with no known relationship to FirstSource or MMH and who did not provide consent to receive such calls. Of course, contempt for these ubiquitous robocalls is one of the few things we all share: "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020). And calls like these, where FirstSource contacted individuals with no connection to MMH using highly-illegal pre-recorded messages, are particularly pernicious.

Because Mr. McClain adequately alleges that FirstSource directly placed the calls at issue to his cellular telephone, in connection with which it used an artificial or prerecorded voice, and claims that MMH is vicariously liable for FirstSource's conduct, including because that was the *very content of the calls he received*, he states a claim under 47 U.S.C. § 227(b)(1)(A)(iii). Despite Judge Stivers addressing, and rejecting, a practically identical motion filed by FirstSource last month in another TCPA case, FirstSource seeks dismissal here by arguing that Mr. McClain fails to adequately allege that FirstSource or MMH is directly or vicariously liable for the calls at issue, that any violation was willful or knowing, and that he

1

has standing. But in doing so, FirstSource ignores Mr. McClain's well-pleaded allegations and the very content of the calls at issue, which plausibly allege FirstSource's direct liability, MMH's vicarious liability, facts supporting willfulness, and a concrete injury sufficient for Article III standing.

Far from pleading mere legal conclusions, Mr. McClain details how he personally listened to FirstSource's prerecorded voice messages, in which FirstSource identified itself as the caller, directed recipients to its website, and claimed to be calling on behalf of MMH. Because Mr. McClain more than sufficiently pleads his TCPA claim, the Court should deny FirstSource's motion to dismiss in its entirety.

## RELEVANT FACTS

Mr. McClain is, and has been since February 2024, the sole and customary user of and subscriber to his cellular telephone number- (443) XXX-XXXX. *See* Plaintiff's Class Action Complaint, ECF No. 1, at ¶¶ 19, 20.

FirstSource placed calls to (443) XXX-XXXX in March 2024 and April 2024. *Id.*, ¶ 23. FirstSource used an artificial or prerecorded voice in connection with these calls. *Id.*, ¶ 27. Mr. McClain received and listened to the artificial or prerecorded voice messages FirstSource delivered, or caused to be delivered, to his cellular telephone. *Id.*, ¶ 26. The tone and speech pattern of the voice messages are consistent with the use of an artificial or prerecorded voice, and not consistent with live speech. *Id.*, ¶ 27.

The *identical* messages began as follows: "Hello, this is FirstSource calling on behalf of Manatee Memorial Hospital calling with an important message for Jose [different computer voice] Fez Hernandez. We're calling to determine if you qualify for financial assistance programs. This is a complementary service provided free of charge to you by the hospital.

Please go to screen.firstsource.com or call at your earliest convenience at [different computer voice] 866-758-1358 to expedite the prequalification process and better serve you. Please reference number [different computer voice] 112686464 when inquiring about this free service." *Id.*, ¶ 25.

The "screen.firstsource.com" website provided on the second call makes clear that "All services provided by FirstSource Solutions, USA LLC free of charge to patient." The website bears Defendant FirstSource's copyright information, as well as terms and conditions purportedly among, "FirstSource Solutions USA, LLC FirstSource, its affiliates, your healthcare provider, and their successors, assigns, directors, officers, managers, employees, agents, service providers and/or authorized representatives." *Id.*, ¶ 28.

Additionally, Plaintiff pleaded that Defendant Manatee is vicariously liable for FirstSource's conduct because, among other manifestations of agency, FirstSource admitted on the call that it was calling "on behalf of" Defendant Manatee, and further that the terms and conditions on its very own website purport to bind the call recipient, FirstSource, and "your healthcare provider," that is, Manatee. *Id.*, ¶ 40. Furthermore, Plaintiff has pled that FirstSource knew that it was sending out prerecorded calls because it hired a voice actor to record a prerecorded call saying, "this is FirstSource," and then sent out such message from its telephone number that itself has another prerecorded message indicating that the caller has reached FirstSource. *Id.*, ¶ 34.

Of note, Mr. McClain does not, and at the time of the subject calls did not, have an account with FirstSource, nor has he ever had an account with, received services from, or been a patient of MMH. *Id.*, ¶¶ 22. At bottom, Mr. McClain never provided FirstSource or MMH

with consent to place calls to his cellular telephone with an artificial or prerecorded voice. *Id.*,

¶ 45. The calls therefore violated the plain language of the TCPA.

## LEGAL STANDARD

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), it is axiomatic that

"[t]he complaint is viewed in the light most favorable to the plaintiff, the allegations in the

complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff."

*In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975, 990 (E.D.

Mich. 2017) (citing *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001)).

> Stated succinctly:
>
> When considering a Fed. R. Civ. P. 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff. A court must also accept all of a plaintiff's allegations as true. Mere labels and conclusions, or a formulaic recitation of the elements of a cause of action's elements are insufficient. However, this standard is satisfied when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Harrison v. Humana, Inc.*, No. 3:24-cv-00262-GNS, 2024 WL 4828737, at *1 (W.D. Ky. Nov.

19, 2024) (Stivers, J.) (denying motion to dismiss claims under the TCPA) (cleaned up).

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are

similarly well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each

with their corresponding standards: facial and factual challenges. *United States v. Ritchie*, 15

F.3d 592, 598 (6th Cir. 1994). Here, Defendant brings a single subset of a challenge under Rule

12(b)(1), claiming that the Plaintiff's injunctive relief claims ought to be dismissed because there

is allegedly no risk of future harm. Defendant has submitted no extrinsic evidence in order to

support its contention that the injunctive relief claims should be dismissed. In so doing,

Defendant mounts a facial challenge. In such a challenge, this Court must take the material

4

allegations of the petition as true and construed in the light most favorable to the nonmoving party. *Id.* In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: the court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. *Id.*  Moreover, to the extent that the motion does not properly address jurisdiction but instead sounds in the factual merits of the Plaintiff's claims, such motion also ought to be denied and the case proceed. *Id.* n.5.

**ARGUMENT**

## I.    Mr. McClain adequately alleges that FirstSource directly made the calls at issue, and is directly liable, and that MMH is vicariously liable.

"The TCPA is the product of public outrage over abusive telephone marketing practices." *Dickson v. Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023). "By the time it was enacted in 1991, companies had begun to use technology that could automatically dial telephone numbers and deliver prerecorded voice messages to potential consumers en masse-reportedly to more than 18 million Americans each day." *Id.* "Consumers more generally criticized these robocalls as invasions of privacy regardless of the content or the initiator of the message. Congress agreed." *Id.*

> Mr. McClain alleges FirstSource violated 47 U.S.C. § 227(b)(1)(A)(iii), which provides:
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) by using any automatic telephone dialing system or an artificial or prerecorded voice-
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service,

5

or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii).

In short, this provision "prohibits making any call, to any telephone number, using any automatic telephone dialing system or an artificial or prerecorded voice absent an emergency or the recipient's prior express consent." *Dickson*, 69 F.4th at 341.

Mr. McClain adequately alleges that FirstSource made the artificial and prerecorded voice calls placed to his cellular telephone number. First, he alleges direct liability on the part of FirstSource by claiming FirstSource itself placed the calls. ECF No. 1, ¶¶ 23, 29, 30, 33. As the content of the calls itself makes clear, the prerecorded messages all stated that "this is FirstSource," and directed the recipient of the calls to FirstSource's website. Furthermore, when the number 443-842-7655 is called back, a caller is greeted by a robot that says, "Hello, and thank you for calling the FirstSource Eligibility PreQualification Services Line. . . ." FirstSource's messages also directed Mr. McClain to visit "screen.firstsource.com," which is a website operated by FirstSource. *Id.*, ¶¶ 28. Given these detailed allegations of direct liability, Mr. McClain adequately pleads that FirstSource placed the calls to his cell phone.

Despite these clear, factually detailed allegations of direct liability, Defendant incredulously claims that the Plaintiff has failed to adequately allege a case of direct liability against FirstSource. As Chief Judge Stivers remarked just last month in quickly dispatching the Defendant's motion and distinguishing Defendant's unwieldy string citations it deploys with little explication or factual analysis:

> Although Firstsource argues otherwise, *Jewell v. Magnolia Bank, Inc.*, No. 3:23-CV-78-RGJ, 2024 WL 203972 (W.D. Ky. Jan. 17, 2024), applies to this case. In *Jewell*, this Court considered whether a plaintiff had stated violations of the TCPA arising from calls allegedly made by a bank and its agents. *See Jewell*, 2024 WL 203972, at *1. In denying the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court held that the plaintiff had stated TCPA claims based on direct liability and implied actual authority but

6

declined to consider whether those claims were supported based on theories of apparent authority or ratification. *See id.* at *4. This holding was based on the plaintiff's allegations that the defendant had made the unsolicited calls when the caller identified himself as a representative of the defendant and called with the "purpose of promoting property, goods, or services ...." *Id.* at *1, *4 (internal quotations omitted).

In the Complaint, Barry alleges that the calls placed from January to February 2023 began with a prerecorded voice and the speaker self-identified as calling from Firstsource. (Compl. ¶¶ 19, 27). Barry has also alleged that the voice message directed the recipient to Firstsource's website, pointing to the existence of an "apparent relationship," that meets the required threshold at this stage. (Compl. ¶¶ 21-22); *see Hodgin*, 2015 WL 13022289, at *2. Taking these allegations as true, Barry has stated a TCPA claim by alleging that these calls were directly initiated by Firstsource. The cases cited by Firstsource either involve different sets of facts where the caller did not identify themself or do not apply because Barry only alleged more than just the content of the calls by including details such as the time period of when the calls occurred and use of an artificial voice. (*See* Def.'s Mot. Dismiss 5-6, 8-10). The motion to dismiss is denied on these grounds.

*Barry v. Firstsource Sols. USA, LLC*, No. 3:24-CV-00648-GNS, 2025 WL 1762289, at *3 (W.D. Ky. June 25, 2025). Plaintiff's pleading is *more* detailed than the pleading that this Court has already deemed to be sufficient in *Barry*. As explained above, the Plaintiff alleges a call nearly identical to that in *Barry*, in which the speaker likewise self-identified itself as calling from FirstSource, directed the recipient to FirstSource's website, and here, unlike in that case, answers as FirstSource when the number is called back. Far from the cases cited by FirstSource, which all address different sets of facts, the calls here plainly outlined the nature of the parties and their respective involvement: FirstSource identified itself as the caller and stated that they were calling "on behalf of" Defendant Manatee. Those allegations are sufficient at any stage to show that FirstSource is directly liable and that Defendant Manatee is vicariously liable.

FirstSource's attacks on Mr. McClain's direct liability and the cases it cites where plaintiffs have failed to allege direct liability sufficiently bear no relationship to the facts Plaintiff pleads in his complaint. Mr. McClain pleads that FirstSource itself placed the calls and buttresses those allegations with specific facts, such as that the messages stated they are from FirstSource,

7

and the messages directed Mr. McClain to a FirstSource website. Nothing more is required. For example, in *Bradshaw v. CHW Grp., Inc.*, --- F. Supp. 3d ----, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025), another case lost by Defendant's firm here on a similar motion, the Court remarked as to the importance of the plain allegation at the pleadings stage that the caller stated that they were calling from the defendant's company:

> At first glance, these allegations seem like a strong basis for attributing the December 8 call to the Defendant. After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who he is. So too as to the December 8 call. The caller allegedly introduced herself as 'Erica ... from [the Defendant].' Why then would it not be plausible to conclude that he was, in fact, 'Erica ... from [the Defendant]'?

*See also Smith v. American-Amicable Life Ins. Co. of Tex.*, No. 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) ("The Court finds that, if true, Plaintiff's allegation that he was informed during both prerecorded calls that he was speaking with American-Amicable supports a plausible inference that Smith was indeed called by or on behalf of American-Amicable.").

As yet another district court summarized in rejecting an argument manifestly identical to what FirstSource advances here, this time with the *same counsel* as here:

> CHW advances a variety of arguments as to why these counts should be dismissed. Several of these arguments can be quickly rejected, so the Court will address those weaker arguments first.
>
> CHW's weakest argument by far is that the complaint alleges insufficient facts to support a reasonable inference that CHW directly placed the calls at issue or had an agency relationship with some third party who placed these calls on its behalf. This is obviously wrong. Among other things, Mr. Katz's complaint alleges that CHW explicitly 'identified itself by name on several of the calls' to Mr. Katz, see Doc. 23, ¶ 54, and that, for example, one call began with a prerecorded message stating that "[t]his call is being placed on behalf of Choice Home Warranty for telemarketing purposes," id. at ¶ 56, that another call was from a live caller who identified himself as "Richard Kelly from CHW," id. at ¶ 57, and that another prerecorded call had a message stating "[h]ey, this is Jen from CHW," id. at ¶ 58 . . . . The Court does not see what more could possibly be necessary or useful for supporting a reasonable inference at the pleading stage that CHW was, indeed, the entity ultimately responsible for placing these calls to Mr. Katz.

*Katz v. CHW Grp., Inc*., No. 5:22-cv-5198, 2023 WL 6445798, at \*4 (W.D. Ark. Sept. 29, 2023) (denying nearly identical motion to dismiss).

At bottom, because Mr. McClain alleges that FirstSource directly placed the calls at issue, and supports that conclusion with specific factual allegations, he adequately alleges direct liability. *See Taylor v. Suntuity Solar Ltd. Liab. Co*., No: 8:23-cv-00694-MSS-AEP, 2024 WL 964199, at \*6 (M.D. Fla. Mar. 6, 2024) ("Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' . . . . Because the Court takes Plaintiff's allegations as true at this stage in the proceedings, dismissal for failure to state a claim on the grounds Defendant asserts is inappropriate.").

This case is nothing like any of the cases in the ill-pled pages of string citations proffered by the Defendant. For example, in *Brownlee v. Allstate Ins. Co.*, No. 21-CV-1428, 2021 WL 4306160, at \*1 (N.D. Ill. Sept. 22, 2021), the plaintiff attempted to sue Allstate for calls she received selling car insurance in which she did not name the defendant for "for three of the six calls," pled no facts showing that Allstate placed them, and relied merely on the assertion that "fact that each caller tried to sell her car insurance could lead the Court to reasonably infer that defendant was responsible for each call." One could not imagine a more stark contrast than the case at bar. Similarly, in the subsequently-vacated decision in *Lucas v. Telemarketer Calling From (407) 476-5680*, the district court dismissed a claim against a phone company that was merely alleged to have "assist[ed] telemarketers in the making of illegal telemarketing calls and financially rewarding those telemarketers by sharing with them revenue that is derived from local telephone providers' use of the defendants' CNAM services."  No. 18-3633, 2019 WL 3021233, at \*5 (6th Cir. May 29, 2019), vacated in part on reh'g, No. 18-3633, 2019 WL

13545379 (6th Cir. Nov. 1, 2019). Plaintiff advances no such theory here.

Nor is this case anything like *Dobronski v. Anthony J. Russo, Jr., PA*, where, "Dobronski concedes that he does not know the identity of the telemarketers who initiated the Subject Calls," unlike here, where the Plaintiff pleads that Defendant FirstSource placed the calls *because it admitted on the calls that it did so*. No. 2:23-CV-12288, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024). And in *Cunningham v. Health Plan Intermediaries Holdings, LLC*, the plaintiff failed to allege sufficient facts that third-party telemarketers had an insurance company's actual authority to make calls to him, unlike here, where FirstSource admitted that it was the one placing the calls "on behalf of" Defendant Manatee. No. 3:18-CV-00518, 2021 WL 1946645, at *3 (M.D. Tenn. May 14, 2021). As the *Cunningham* court noted, those allegations are sufficient to give rise to a finding of apparent authority as to Manatee, since apparent authority, "exists when (1) the principal manifests that another is the principal's agent, and (2) it is reasonable for a third person dealing with the agent to believe the agent is authorized to act for the principal." *Id.* (citing *Deschamps v. Bridgestone Americas, Inc. Salaried Emps. Ret. Plan*, 840 F.3d 267, 279 (6th Cir. 2016)). It is eminently reasonable for a third person dealing with the calls to understand that Manatee authorized FirstSource to act on its behalf based on the representations on the call. In *Sheski v. Shopify (USA) Inc.*, the plaintiff sued Shopify, an online shopping cart platform that allows sellers to add functionality using apps, for text messages sent by one of the add-on apps, not Shopify. No. 19-CV-06858-HSG, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020).

Most of the other authorities cited by FirstSource involved marketing claims under a different subsection of the TCPA and involving different theories of liability and business models and are therefore inapposite. This is notable because lead generators will sometimes place marketing calls on behalf of many companies and then transfer the calls to a company of

their choosing once a recipient answers and based on the answers that a recipient provides on the call, as opposed to those companies placing calls directly. *See, e.g.*, *Bennett v. Celtic Ins. Co*., No. 20-cv-06172, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("a defendant 'generally does not [physically] initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf"). Here, on the other hand, FirstSource is a company that admits it placed the calls itself (as a marketing company would have in the above case), acting on behalf of Manatee and nobody else. To be clear, the Plaintiff does not conflictingly allege that Manatee placed the calls: FirstSource directly placed the calls, acting at the direction of Manatee, its admitted principal. It is in this regard that this case is manifestly different from *Wick v. Twilio Inc.*, where a plaintiff attempted to sue a call initiator's phone company, and where the court permitted the claim against the call vendor to proceed, even when a third party initiated the calls at issue. No. C16-00914RSL, 2017 WL 2964855, at *4 (W.D. Wash. July 12, 2017).

 *Frank v. Cannabis & Glass, LLC*, No. 2:19-CV-00250-SAB, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019), actually supports the Plaintiff because there, as here, the seller was named in the text messages. There, where the complaint was devoid of any facts indicating that Springbig, a cannabis marketing platform, sent text messages which named Cannabis & Glass, and the case was dismissed as to Springbig, but permitted the case to proceed against Cannabis & Glass. *Id.* Here, both entities, and their relationship, were mentioned on the call. Similarly, in *Woodard v. Health Ins. All.*, for example, Court dismissed a direct liability claim against HIA when the plaintiff alleged "in the same breath" that "a third party," not HIA, called her and lacked any allegations as to the third-party's agency. No. 23 C 2630, 2024 WL 942629, at *2 (N.D. Ill. Mar. 5, 2024). At bottom, and as another Court has recognized, the Plaintiff's allegations here far exceed those the court were conclusory and insufficient in *Aaronson v. CHW*

*Grp., Inc.*, for example, as there, the complaint was "devoid of facts such as how the caller identified itself, the substance of the calls, or any other details from the telephone calls." No. 1:18-CV-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019).

Plaintiff can continue distinguishing each of the almost twenty other cases that the Defendant cites for the faulty proposition that the Plaintiff's Amended Complaint fails to allege direct liability, but doing so would needlessly multiply the proceedings and expend Plaintiff's counsel's and the Court's time in attempting to distinguish what here is a very clear-cut case of direct liability.[1] It is hard to imagine what more the Defendant wants the Plaintiff to plead, particularly as the Plaintiff has pled more than what is necessary for a plain factual finding of direct liability. In essence, the Defendant prefers to spin a narrative of its own by ignoring the facts Plaintiff has pled and then attempting to shoehorn that faulty narrative into other plainly distinguishable cases that it mischaracterizes, as its counsel has done in the past. *See, e.g.*, *Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 2714340, at *3 (W.D. Pa. Mar. 30, 2023) (chiding Defendant's counsel for citing to "nonbinding cases that are readily distinguishable from the facts alleged in Abramson's Complaint"); *Davis v. Reliance First Cap., LLC*, No. 7:22-CV-00018, 2023 WL 1982354, at *4 n.2 (E.D.N.C. Feb. 13, 2023) (noting that Defendant's counsel's "legal authority is from cases in a vastly different procedural posture then the one here"); *Atkinson*, 2023 WL 166168, at *3 ("Defendant cites to various non-binding decisions in search of a contrary result."). Such citations impose considerable and unwarranted costs on the Court, its staff, and Plaintiff. In this regard, Plaintiff will decline Defendant's

---

[1] Indeed, on such a clear pleading record as here, and despite Judge Stivers' opinion, Defendant and its counsel's continued insistence that FirstSource did not place the calls, despite FirstSource admitting the same on those calls, may warrant sanctions for forcing Plaintiff to respond to such credibility-straining contentions and assertions that likely lack any factual support.

invitation to needlessly multiply the proceedings by attempting to plainly distinguish each and every one of the Defendant's remaining selective quotations. Plaintiff clearly pleads a case of direct liability as against FirstSource because he pleads that FirstSource directly placed the calls.

Likewise, Mr. McClain alleges that MMH is vicariously liable for FirstSource's conduct because FirstSource expressly stated it was calling on MMH's behalf and because FirstSource's own website's terms and conditions purport to bind both FirstSource and Manatee as the recipient's healthcare provider. As this Court noted in *Barry*, "While Firstsource argues that Barry has not properly plead her allegations, it would otherwise be impossible for Barry to know of the alleged caller's relationship with Firstsource—if any—without discovery, but pleading the existence of an "apparent relationship" is sufficient." 2025 WL 1762289, at *2. That same "apparent relationship" is present here. These factual allegations plausibly support a theory of vicarious liability (if not direct liability) against MMH, consistent with established case law under any one of the commonly-accepted theories of TCPA vicarious liability, including actual authority, apparent authority, and ratification. *Jewell v. Magnolia Bank, Inc.*, No. 3:23-CV-78-RGJ, 2024 WL 203972 (W.D. Ky. Jan. 17, 2024) (imposing vicarious liability on Magnolia where another company, Rasani, stated that they were calling "on behalf of Magnolia.").

Any further details regarding the nature of the agency relationship between MMH and FirstSource will be the proper subject of discovery and need not be pled at the pleadings stage; facts which may plausibly be read as giving rise to the inference of the existence of an agency relationship are sufficient. *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016) (holding a plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts"). As this Court further explained in *Harrison*, "[e]xplicit pleading of an agency

13

relationship is not required." 2024 WL 4828737, at *3 (citing *Eldridge v. Cabela's Inc.*, No. 3:16-CV-536-DJH, 2017 WL 4364205, at *5 (W.D. Ky. Sept. 29, 2017)). Nonetheless, because the at-issue voice messages state that they are from FirstSource, direct Mr. McClain to a FirstSource website, and claim to be on behalf of MMH, ECF No. 1, ¶¶ 23, 24-25, 28, Mr. McClain's allegations demonstrate vicarious liability both based on apparent authority and actual authority. See *Harrison*, 2024 WL 4828737 ("While Humana is critical of Harrison's allegations, it would otherwise be impossible for his to know of the alleged caller's relationship with Humana-if any-without discovery."); *Jewell*, 2024 WL 203972 (denying motion to dismiss TCPA claims). And, as MMH has not challenged agency, there is ratification, as well.

It is on this point that the Defendant attempts to manufacture a misapprehension of the Plaintiff's pleading in this regard, as his pleading is quite clear in that he is pursuing a direct liability case against FirstSource because it is alleged, and supported through plausible evidence, that FirstSource physically placed the call and that MMH instructed it to do so on MMH's behalf. In other words, that makes Defendant FirstSource, not MMH, the *actual* sender of the text calls at issue and, as such, is FirstSource is *directly* liable for the calling conduct at issue as the *actual sender of the messages*. As such, the Plaintiff has plainly alleged a theory of *direct* liability against FirstSource, and, correspondingly, at the very least, vicarious liability as to MMH. Contrary to Defendant's assertions, the Plaintiff plainly alleges that Defendant FirstSource *directly sent the calls at issue* because the messages were sent from FirstSource's telephone number, listed FirstSource's website, and when called back, go back to FirstSource, and not MMH. On the foregoing facts, Plaintiff does not allege that MMH physically dialled and initiated the calls at issue; that would be incongruous with FirstSource saying that they were the entity calling "on behalf of" MMH. Nothing about that pleading is inconsistent, except in

14

Defendant's colourful own interpretation of the Plaintiff's complaint.

The scope of direct liability is determined by the statutory text. The relevant statute here, 47 U.S.C. § 227(b)(1)(a)(iii), prohibits "mak[ing]" a call with an artificial or prerecorded voice. And anyone who "makes" a call under the TCPA is subject to *direct* TCPA liability without further analysis. *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 960 (8th Cir. 2019) (addressing "initiation" in another subsection of the statute and holding that "to be held directly liable, the defendant must be the one who "initiates" the call."). As such, all a Plaintiff needs to plead at the pleadings stage is that FirstSource took the steps necessary to "make" the call. Indeed, a third party, like MMH, "generally does not 'initiate' calls placed by third-part[ies]," like FirstSource. 2013 FCC Order, *In re DISH Network, LLC*, 28 FCC Rcd. 6583, 6593 (2013). That's the end of the analysis, full stop. *Golan*, 930 F.3d at 960. Because the Plaintiff has alleged that the telephone number is FirstSource's and that FirstSource made the calls it follows that FirstSource is *directly liable* for the text messages it made, and MMH is vicariously liable for directing their placement. FirstSource is therefore the entity directly liable for the TCPA-violative conduct.

To this end, the cases Defendant drops in a footnote in an attempt to confuse the Court into thinking that the Plaintiff is alleging some sort of "platform" liability theory are distinguishable. For example, as an initial matter, in *Rogers v. Assurance IQ, LLC*, the plaintiffs failed to plead that "Boomsourcing was aware that Assurance IQ was using its platform to send pre-recorded calls in violation of the TCPA." *Rogers v. Assurance IQ, LLC*, No. 2:21-CV-00823-TL, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023). Unlike there, where Boomsourcing was not mentioned on the call and the plaintiffs "have not pleaded any *facts* supporting their inference that Boomsourcing physically dialed the calls to four of the individual plaintiffs," *id.*, here, Plaintiff has pled more than sufficient facts supporting the allegation that FirstSource

physically dialed the calls, including that FirstSource identified itself as the one who was calling, the calls directed the recipient to FirstSource's website, and the fact that the numbers, when called back, go back to FirstSource. By contrast, in *Rogers*, the calls were made to sell Assurance IQ's products and recipients were directed to make purchases and interact with Assurance IQ. Plaintiff has pled exactly what *Rogers* did not: FirstSource is the user of the telecommunications service; FirstSource is plainly not a carrier, i.e. a telephone company. *Id.*

As in *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959, 964 (N.D. Cal. 2016), Plaintiff has plausibly alleged that FirstSource *directly* sent the calls at issue. Neither *Frank*, *Meeks*, nor *Sheski* mandate a contrary conclusion: as explained above, in each of those cases, the plaintiffs failed to provide any allegations that the defendants took the steps necessary to make, or made, the calls themselves, unlike here. Tellingly, the Defendant doesn't cite to a single case supporting dismissal at the pleadings stage on a theory of either direct liability under the robust facts pled here, when the Plaintiff isn't even proceeding on a theory of platform liability but rather direct liability as against FirstSource. To the contrary, in *Perrong v. Chase Data Corp.*, another case decided at the motion to dismiss stage, the Court credited similar allegations as to initiation as those here, including the allegation that "Chase Data owned and operated the accounts used to contact [Plaintiff's] phone," in holding that the Plaintiff plausibly pled "that Chase Data was directly involved in the alleged TCPA violations." No. CV 22-2628, 2024 WL 329933, at *2 (E.D. Pa. Jan. 26, 2024). And another Court addressed, and rejected, a nearly identical argument here that a caller who calls "on behalf of" someone else is not directly liable under the TCPA. *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, No. 6:24-CV-00243-MC, 2024 WL 4333373, at *4 (D. Or. Sept. 27, 2024). At bottom, the Plaintiff has alleged that FirstSource directly made the calls at issue. Plaintiff's allegations are sufficient at the pleadings stage.

16

## II.    The Defendants' unlawful conduct demonstrates "knowing" and "willful" violations of the TCPA.

The TCPA provides for treble damages for any entity violating the TCPA "knowingly" or "willfully." The Defendants claim that Mr. McClain's allegations of such damages are "purely conclusory." However, such an argument ignores the specificity of the Plaintiff's allegations, including that it knew that it was acting intentionally. In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) (holding that knowing violation requires only that defendant know of the facts constituting the offense); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."). The Plaintiff has pled facts in his Amended Complaint that give rise to the plausible inference that Defendants knowingly used such illegal artificial or prerecorded voice robocalls to send the calls complained of. Accordingly, the Defendants' motion on this point must fail.

Another Court recently clarified the requisite legal standard for a Defendant to have "knowingly" violated the TCPA. In *Koeller v. Seemplicity Security Inc.*, No. 4:24-CV-00528-SRC, 2024 WL 4751306, at *4 (E.D. Mo. Nov. 12, 2024) (cleaned up), the Court explained, with respect to related Do Not Call Registry claims under the TCPA:

> Under the plain text of section 227(c)(5), two types of violations may entitle a plaintiff to damages amounting to three times the set statutory damages: knowing violations and willful violations. . . . The Court therefore begins by considering the ordinary meaning of the adverbs "knowingly" and "willfully." . . . . "[K]nowingly" ordinarily means "[i]n a knowing manner" or "with knowledge," i.e., "intelligently, consciously, intentionally, etc."
>
> The proper interpretation of section 227(c)(5) therefore turns on how a defendant

knowingly "initiated any telephone solicitation to:...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

When read into section 64.1200(c)(2), "knowingly" and "willfully" modify a transitive verb—"initiated." Ordinarily, a listener assumes that an adverb that modifies a transitive verb "tells the listener how the subject performed the entire action." *Flores-Figueroa v. United States*, 556 U.S. 646, 650 (2009). For example, "if a bank official says, 'Smith knowingly transferred the funds to his brother's account,' " listeners "would normally understand the bank official's statement as telling [them] that Smith knew the account was his brother's." *Id.* That is because "once [knowingly] is understood to modify the object of [the] verb[ ], there is no reason to believe it does not extend to the phrase which limits that object." *Id.* at 657 (Scalia, J., concurring in part and concurring in the judgment).

So too in the context of section 227(c)(5) and section 64.1200(c)(2). There, a listener would ordinarily understand, for example, that knowingly "initiated any telephone solicitation to:...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," 47 C.F.R. § 64.1200(c)(2), means that a person knew that he initiated a telephone solicitation and knew that he was calling a residential telephone subscriber who had registered his or her telephone number on the national do-not-call registry.

Although *Koeller* dealt with "knowingly" with respect to another subsection, its reasoning proves illustrative in this context when interpreting the violations here, for placing calls with an artificial or prerecorded voice. It would be difficult to conceive of a situation where a caller does *not* "know" that they were sending a call with an artificial or prerecorded voice. A listener uttering the phrase, "knowingly made a call using an artificial or prerecorded voice," *cf.* 47 U.S.C. § 227(b)(1)(A), would ordinarily understand that the person knew that he made a call and knew that he was doing so using an artificial or prerecorded voice. To accept Defendants' motion and dismiss the Plaintiff's demand for treble damages at the pleadings stage would necessarily require the Court to make a holding that the Plaintiff has not plausibly alleged that the Defendants *knew* that they were using an "artificial or prerecorded voice" "to make any call" as the statute requires. In other words, the contrary holding, that the Defendants *did not know*

that they was using an "artificial or prerecorded voice" is simply illogical when one considers the Plaintiff's facts as pled. Nothing more is required of the Plaintiff at the pleading stage.

It defies logic and common sense to argue that sophisticated entities like FirstSource would "unknowingly" hire a professional voice actor to create scripted calls stating they are calling on behalf of Manatee Memorial Hospital, load those calls into a dialer, and then mass dial people like the Plaintiff, or that MMH did not approve such script before it was used. *See, e.g., Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS (JCx), 2014 WL 3101426, at *1, 4 (C.D. Cal. July 7, 2014) (holding wrong number automated calls was sufficient to state a claim for treble damages)*; Keifer v. HOSOPO Corp.*, No. 18-cv-1353-CAB, 2018 WL 5295011, at *5 (S.D. Cal. Oct. 25, 2018) (finding an allegation that plaintiff never provided his information to the defendant sufficient to state a claim for treble damages); *Meyer v. Bebe Stores, Inc.*, No. 14-cv-00267-YGR, 2015 WL 431148, at *4 (N.D. Cal. Feb. 2, 2015) (finding allegations that "defendant, using an ADTS [sic], sent text message to plaintiff in knowing and/or willful violation of the TCPA" sufficient to state a claim for treble damages).

Mr. McClain's complaint plainly demonstrates that FirstSource was taking intentional action and acting at Manatee's direction in sending prerecorded calls. FirstSource cannot credibly claim it did not know it was sending prerecorded calls, as doing so would require FirstSource to have hired a voice actor to say, 'This is FirstSource,' that MMH would not have approved the use of its trademark in the script, and then that FirstSource transmitted that message from its own telephone number - a number that itself plays a prerecorded message indicating the caller has reached FirstSource. Such allegations are more than sufficient to put Defendants on notice of the potential for the fact that a fact finder can determine that a violation of the TCPA was done in a "knowing" or "willful" manner.

### III.    Injunctive relief is particularly warranted here, as there is real risk of future harm.

FirstSource also moves pursuant to FED. R. CIV. P. 12(b)(1) to dismiss Mr. McClain's claims for injunctive relief, arguing Mr. McClain lacks Article III standing to obtain injunctive relief, to which MMH has also joined. In this regard, the Plaintiff's only jurisdictional challenge attacks the Plaintiff's standing to seek injunctive relief on the specious basis that the Plaintiff has not adequately pled a risk of future injury. But in this regard, Defendants raise a mere facial challenge, not a factual one, as all the Defendants simply argue Mr. McClain's pleadings have not shown any risk of future injury. Yet Plaintiff's allegations do establish a risk of future injury.

FirstSource has, to put it charitably, a compliance problem. Other than this lawsuit, it is being sued for nearly identical conduct in both this District and other federal courts.[2] *E.g.*, *Mosier v. Firstsource Solutions USA LLC*, No. 3:23-cv-01343 (N.D. Ohio July 11, 2023); *Barry v. Firstsource Solutions USA, LLC*, No. 3:24-cv-00648 (W.D. Ky. Nov. 8, 2024); *Faulk v. Firstsource Solutions USA, LLC*, No. 3:25-cv-00135 (W.D. Ky. Mar. 5, 2025); *Mey v. Firstsource Solutions USA, LLC*, No. 5:25-cv-00113 (N.D. W.Va. May 21, 2025). Despite being named in at least five TCPA lawsuits in the span of two years alleging practically not only the same conduct but also the same calls, FirstSource still has not apparently taken any steps to comply with the TCPA or ceased sending the highly-illegal prerecorded call messages that Plaintiff, and those in the aforementioned cases, complain of. And, as a telephone user, Mr. McClain is at risk of future telemarketing calls from Defendants. Defendants offer no facts or

---

[2] Even on a facial challenge, as here, this Court can take judicial notice of the fact that other publicly-filed lawsuits have been filed against the Defendant, together with the contents of those complaints, as matters of public record. *See OMT Addiction Centers, LLC v. Freedom Healthcare Props. of Texas, LLC*, 770 F. Supp. 3d 1090, 1102 (M.D. Tenn. 2025).

arguments rebutting the risk that they will make similar calls in the future - nor do they even

claim to have ceased making such calls. As the cases above reflect, that would be a lie. Further,

Plaintiff is not required to allege future harm under the TCPA's statutory injunctive relief:

> The Telephone Consumer Protection Act, 47 U.S.C. § 227 (b)(3), creates a private right
> of action and allows a Court to order injunctive relief, monetary relief, and treble
> damages. Plaintiff is not seeking a preliminary injunction, which would require a
> showing of likelihood of success on the merits and irreparable harm. Defendant argues
> that Plaintiffs allegations do not suffice to establish either prong, and are inadequate
> to state a claim for treble damages.
>
> In *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004), the Eleventh
> Circuit differentiated statutory and non-statutory injunctions. It specified that where a
> statute bans certain conduct or establishes certain rights, a court may grant an injunction
> to enforce the statute. Where plaintiff sufficiently alleges a claim for a statutory violation,
> that is all that is required to request injunctive relief in a complaint. To request treble
> damages, the Plaintiff must allege a willful violation. Here, Defendant argues the Plaintiff
> does not sufficiently allege the traditional elements for injunctive relief or for an award of
> treble damages. Because the Plaintiff need not allege the traditional elements
> for injunctive relief, the Court denies the motion on that issue.

*Gutierrez v. Fla. Advert. & Mktg. Corp.*, 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019). The Court

in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023 U.S. Dist. LEXIS

18996, at *14-15 (W.D. Pa. Feb. 6, 2023) denied a similar motion to dismiss:

> Here, along with allegations that AP Gas is aware of the requirements of the TCPA,
> Abramson alleges the elements of a TCPA claim to satisfy a demand for injunctive relief:
> (1) ongoing telemarketing by AP Gas using automated calls to send prerecorded
> messages; (2) Abramson's receipt of at least eleven prerecorded calls from AP Gas
> between August 9 and 18, 2022, without his consent; and (3) injury in the form of
> disturbed solitude and annoyance as well as being temporarily deprived of the use of his
> phone. These allegations adequately place him within the zone of interests protected by
> the TCPA and allege a pattern and practice by AP Gas of violating the TCPA. These
> allegations are accepted as true and permit an inference of future violations that the
> TCPA seeks to enjoin.

This Court should do the same.

IV.     **If this Court finds Mr. McClain's allegations insufficient, it should provide leave to amend.**

Should this Court find any of Mr. McClain's allegations lacking, it should provide leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Plaintiff respectfully submits that the purported and received issues with the Plaintiff's own pleading are all manufactured red herrings of the Defendant's own devising. Nothing in the Complaint is conclusory or contradictory: it plainly alleges sufficient facts that FirstSource made the calls and that MMH is vicariously liable for that conduct. To the extent that something is nevertheless unclear, the Court need only send the order granting leave to amend and the Plaintiff will do so to rectify any deficiency. Finally, Plaintiff respectfully observes that, to the extent that the Court dismisses on 12(b)(1) grounds, such dismissal must be without prejudice. *See Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) (holding a dismissal with prejudice operates as an adjudication on the merits, and that a dismissal for lack of federal question jurisdiction must ordinarily be without prejudice); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2713, p. 239 (3d ed. 1998) (explaining that if a court lacks jurisdiction, it has no power to enter a judgment on the merits and must instead dismiss without prejudice).

**Conclusion**

Mr. McClain more than adequately alleges that FirstSource placed the calls at issue to his cellular telephone with an artificial or prerecorded voice. As a result, he adequately alleges his claim under 47 U.S.C. § 227(b)(1)(A)(iii), and this Court should deny FirstSource's motion to dismiss in its entirety. To the extent that additional questions remain, the Court should resolve those issues, including those of treble damages and the risk of future harm, in discovery, or otherwise grant leave to amend as necessary.

Plaintiff,

By Counsel

Dated: July 23, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
(Subject to *Pro Hac Vice*)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

July 23, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.