**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **MARSHALL MCCLAIN, individually and on behalf of a class of all persons and entities similarly situated,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**FIRSTSOURCE SOLUTIONS USA, LLC and MANATEE MEMORIAL HOSPITAL, LIMITED PARTNERSHIP,**<br><br>     **Defendants.** | **Case No. 3:25-cv-00150-DJH** |

**DEFENDANT FIRSTSOURCE SOLUTIONS USA, LLC'S REPLY IN SUPPORT**
**OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

In all, Plaintiff's Opposition (Dkt. 34) to Firstsource's Motion to Dismiss (Dkt. 29) his First Amended Complaint (Dkt. 22, "FAC") fails to refute the well-supported grounds for dispositive relief presented in the Motion. At bottom, the Opposition invites this Court to rule differently here than the majority of other federal courts have on the same issues, and to subject Firstsource and Manatee Memorial Hospital ("MMH") to costly discovery in this putative nationwide class action, based on his conclusory allegations and implausible contradictions—not actual <u>facts</u>. For all the reasons in the Motion and below, the Court should decline his invitation and dismiss his faulty FAC.

**I.    <u>Plaintiff Fails to Plausibly Allege Facts Supporting a Direct TCPA Liability Theory.</u>**

As detailed in the Motion, federal law is well-settled that, to properly allege a direct TCPA liability theory and avoid dismissal under Rule 12(b)(6) on this basis, Plaintiff must plead sufficient non-conclusory facts supporting a plausible inference that Firstsource itself—not a third party— physically placed each call at issue directly to his cell phone number. *See* Dkt. 29 at 3-4, 8-18 & n.3 (collecting cases). However, taking an equivocating "either/or" pleading approach and baldly concluding that Firstsource and/or MMH and/or third parties placed the subject calls—like Plaintiff <u>repeatedly</u> does in his FAC here—is insufficient to allege a plausible direct TCPA liability theory. *See* Dkt. 29 at 4, 9, 11, 15 & n. 8 (collecting various cases). It is equally well-established that the alleged content of a phone call, standing alone, is not enough to allege direct TCPA liability. *See id.* at 10-12 (citing, *inter alia*, *Frank, Aaronson, Cunningham, Woodard, Murray, Rogers, Dobronski, Belleville, Brown, Meeks, Katz, Abante Rooter, Barnes, Doyle, Matthews*). *See also Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (ruling similarly).

In short, contrary to what his Opposition advocates, Plaintiff's conclusory allegation that "Firstsource directly made the calls at issue" (Dkt. 34 at 16) is simply <u>not</u> sufficient to survive a Rule 12(b)(6) motion on direct TCPA liability grounds, when applying the weight of applicable federal

authority discussed in the Motion and herein to Plaintiff's threadbare and contradictory allegations in the FAC. *See also Belleville v. Fla. Insur. Servs, Inc.*, 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part on other grounds,* 2024 WL 2794108 (May 31, 2024) (recommending and approving dismissal on this basis where the plaintiff alleged "in conclusory fashion that [d]efendant was directly involved in making" the subject calls without sufficient factual support, even though some callers stated they were calling "from" the defendant).

The authorities cited in the Motion and above reflect a logical and proper application of the bedrock federal pleading standards, and are consistent with how myriad federal courts across the country have evaluated the facial sufficiency of TCPA claims at the pleadings stage for decades. Indeed, if all it took to allege a liability theory was for a caller to state the name of a company, there would be no need for plaintiffs to distinguish between direct and vicarious liability theories in a complaint, and no TCPA case would ever be dismissed at the pleadings stage. Such is <u>not</u> the law.

As Plaintiff suggests, one could easily ask at this point how is a TCPA plaintiff supposed to know who physically called them without the benefit of discovery? *See* Dkt. 34 at 13-14, 22 (citing *Harrison* and *Barry*). The answer is that, as a matter of black letter federal law, plaintiffs are <u>not</u> entitled to any discovery at the pleadings stage and must plausibly allege a TCPA liability theory without it. *See* Dkt. 29 at 12-13 (citing *Hurley*, *Hyatt*, *Kolley, Twombly*). *See also Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6-7, 10 (E.D. Va. Nov. 12, 2020) (dismissing on this basis, holding the plaintiff's suggestion he "needs discovery to confirm who called him and how that person is related to" the defendant showed that he was "on an impermissible fishing expedition" and he actually did "not know who called him" and, thus, had not adequately pled direct TCPA liability).

The Opposition gives no compelling reason for this Court to depart from these established pleading standards in this case, and Plaintiff's counterarguments miss their mark for several reasons:

**First**, Plaintiff concludes, albeit without citing to his pleading, that there is nothing "inconsistent" about his allegations pled in support of his liability theories; and he posits that he "has plainly alleged a theory of direct liability against Firstsource, and, correspondingly, at the very least, vicarious liability as to MMH." Dkt. 34 at 13. Yet, his Opposition noticeably does not acknowledge or try to reconcile the <u>many</u> internally inconsistent, directly contradictory, and thus inherently implausible allegations throughout his FAC, which are analyzed at length in the Motion, suggesting that Firstsource and/or MMH and/or countless unidentified third parties physically placed the subject calls and thus could be directly liable. *See* Dkt. 29 at 14-18. Myriad courts have found that such equivocating allegations are insufficient to support any TCPA liability theory. *Id*. (collecting cases).

Why Plaintiff did not reconcile these clearly facially-deficient allegations in his Opposition is because he cannot credibly do so.[1] Perhaps the most egregious example of such allegations is that, while Plaintiff's FAC concludes that only Firstsource is "directly liable" because "no facts indicate that some third party … placed the calls at issue" on the one hand, it also concludes "***Manatee is directly and/or vicariously liable***" for the same calls on the other hand. Dkt. 22, ¶¶ 29, 32, 68 (emphasis added). This, as the Motion shows, is manifestly impossible and does not support a reasonable inference of direct TCPA liability against either Defendant here—indeed, both Firstsource and MMH could not possibly physically place the same calls, which is what must be pled for direct liability to attach. *See* Dkt. 29 at 15. The FAC also concludes "all the indicia of the call indicate that Firstsource took the steps necessary to physically place the call and thus physically placed the call" in one paragraph, then proceeds to conclude in the very next paragraph that "[a]lternatively, Firstsource was so involved in placing the call so as to be deemed to have initiated it…." *Id*. at 14

---

[1] Plaintiff's Opposition tries to clean up these glaring inconsistencies, and posits the FAC is only asserting direct liability against Firstsource and only vicarious liability against MMH. *See* Dkt. 34 at 13-15. As shown below, that is not so; and he cannot amend his deflective pleading through briefing in response to the Motion. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).

(citing Dkt. 22, ¶¶ 38-39). In other words, taking these allegations at face value here, Plaintiff's FAC is alleging that either Firstsource itself actually sent them directly <u>or</u> was merely involved in the process somehow. This, along with his suggestion that he needs discovery to support his liability theories, shows he is on an impermissible fishing expedition. *See Scruggs*, *supra*. Again, however, Plaintiff's Opposition ignores these implausible contradictions. And his argument that MMH is "at very least" vicariously liable (Dkt. 34 at 13) only further demonstrates he is merely throwing darts at a proverbial dart board, hoping to limp his way into discovery to attempt to find a viable theory of liability eventually.[2] Federal pleading standards do not permit this. *See* Dkt. 29 at 12-13.

Similarly, while one paragraph of his FAC states there are "no facts" suggesting a third party placed the calls as noted above, it concludes elsewhere that (i) Firstsource was merely "involved" in placing the calls but did not "initiate" them itself, and (ii) "Firstsource violated the TCPA ***by sending or causing to be sent*** calls to the cellular telephones" of Plaintiff and the putative class. Dkt. 22, ¶¶ 32, 39, 67 (emphasis added). This just further shows that what Plaintiff is really alleging is that Firstsource (or perhaps MMH) physically "sent" the calls <u>and/or</u> "caused" ***someone else***—a third party—to send them. But again, that is insufficient to plead a direct TCPA liability theory under the weight of applicable federal authority on this front. *See* Dkt. 29 at 4, 14, 16 (citing, *inter alia*, *Rogers* and *Dobronski*). *See also Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing on this basis, holding "Plaintiffs' conclusory assertions that Experian ***sent or caused the text message to be sent*** is simply a legal conclusion devoid of further factual enhancement.") (emphasis added). Yet, Plaintiff's Opposition simply ignores all this, and his

---

[2] Indeed, arguing that MMH is "at the very least" vicariously liable suggests that Plaintiff may also seek to prove that MMH is directly liable, to the extent it physically placed some or all of the subject calls. No facts are in the FAC supporting such an argument, only conclusions. *See* Dkt. 22, ¶ 68.

argument that this is just Firstsource's "colourful own interpretation" of the many contradictory allegations in this FAC (Dkt. 34 at 14-15) does not hold water. ***That is what Plaintiff himself pled***.

**Second**, Plaintiff's counterarguments on this front seemingly rest primarily on the alleged content of the calls; and in this regard, Plaintiff proclaims that "[n]othing more is required" to allege a direct TCPA liability theory at the pleadings stage. *See* Dkt. 34 at 6-9. Once again, the many well-reasoned decisions cited in the Motion and herein show he is wrong, and that the alleged content of a call alone is simply <u>not</u> dispositive of this issue. *See also Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018) (dismissing and finding no direct TCPA liability, even though at-issue text message identified defendant by name and contained a link to its website).

As the Motion notes, why courts take this approach to evaluating the facial sufficiency of direct TCPA liability allegations is logical, reasonable, and in tacit recognition that companies often hire third parties to make outbound communications on their behalf. *See, e.g.,* Dkt. 29 at 12 (citing *Wick* and *Bennett*). Such can particularly be true in cases involving purported "prerecorded voice" messages, as Plaintiff alleges here, which can be sent by anyone and not necessarily by the party identified in the message. For example, a prerecorded call stating it is "from Amazon" does not mean Amazon itself physically placed it, and logically such a call would identify Amazon or sell its products if a third party was hired to make it. That call may have originated from Amazon ***indirectly***, but that is not grounds for ***direct*** TCPA liability as a matter of law. *See In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015). In short, a message stating "This is Firstsource" or referring to MMH does not mean either Firstsource or MMH transmitted it for direct liability purp, without more. Even Plaintiff seems to recognize this, considering his directly contradictory allegations in his FAC discussed above and in the Motion suggesting that Firstsource was merely "involved" transmitting the messages, and that it did not actually transmit them itself.

**Third**, Plaintiff's cited authorities on this front do not compel a different result, as each case is readily distinguishable and inapposite. *See* Dkt. 34 at 6-9, 12, 16 (citing *Barry*, *Bradshaw*, *Smith*, *Katz*, *Taylor*, *Davis*, *Atkinson*, *Nunes*, *Perrong*, *Griffin*). For example, *Barry v. Firstsource Sols. USA, LLC* is distinguishable because that case did not involve multiple defendants like in this case,[3] and the complaint at bar did not contain the many internally inconsistent and thus implausible allegations like Plaintiff's FAC, which should not be taken as true when ruling here. *See* Dkt. 22 at 14 (citing *Macy's, Inc.*, *Int'l IP Holdings, LLC,* and *Williams*). On its face, Plaintiff's FAC in this case alleges that Firstsource and MMH are both <u>simultaneously</u> directly and vicariously liable for *calls* possibly made by third parties, which is impossible and certainly not plausible under *Iqbal*/Twombly. Further, the *Barry* court cited little authority for its holding on this issue (two inapposite district court decisions[4]), and permitted the plaintiff to take a classic "either/or" approach to pleading liability, which countless other federal courts in and beyond this Circuit have rejected as being insufficient and improper to allege a TCPA liability theory. *See* 2025 WL 1762289, at *2-3 (W.D. Ky. June 25, 2025). *Cf.* Dkt. 29 at 10-11 (collecting cases reaching a contrary result with similar fact patterns).

Moreover, while the *Barry* court concluded that it would "be impossible for [the plaintiff] to know [or plead] of the alleged caller's relationship with Firstsource … without discovery," it bears repeating here that the weight of applicable federal authority provides that plaintiffs bringing TCPA

---

[3] This is an important distinction. As discussed in the Motion and further below, Plaintiff's new allegations that he added to the FAC about the supposed relationship between Firstsource and MMH (among the other contradictory allegations that he included when amending) directly undermine his already implausible TCPA liability theories against both Defendants in this case. *See* Dkt. 29 at 17.

[4] The *Barry* opinion relies on *Harrison v. Humana, Inc.,* 2024 WL 4828737 (W.D. Ky. Nov. 19, 2024) and *Jewell v. Magnolia Bank, Inc.,* 2024 WL 203972 (W.D. Ky. Jan. 17, 2024) for its holding, where the courts allowed TCPA claims to proceed to discovery. Both decisions are distinguishable, requiring a different result (a dismissal) in this case. For example, the courts in those two cases did not focus on who "physically" placed the subject calls when considering the sufficiency of the direct TCPA liability allegations there, as other courts typically do. Further, the plaintiffs in each case claimed to have spoken with persons who identified themselves as being representatives of the defendants on the calls. *See Jewel*, 2024 WL 203972, at *1 & 3; *Harrison*, 2024 WL 4828737, at *1 & *3. The plaintiff in *Barry* did not allege this, and neither did Plaintiff.

claims <u>must</u> clearly identify (and thus plead actual facts and not bald conclusions or equivocations) who physically placed each of the calls <u>without</u> the benefit of any discovery to avoid a dismissal at the pleadings stage on this basis. *See, e.g.,* Dkt. 29 at 13 (citing *Hurley*, *Hyatt*, *Kolley*, *Twombly*).

Indeed, the Federal Rules of Civil Procedure do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). That is particularly true for TCPA cases. As one court aptly held when dismissing a TCPA case:

> As master[s] of [their] Complaint, it is [a plaintiff's] burden to state the facts within [their] knowledge that, taken as true, constitute a violation or violations of law. [Plaintiffs] possess[] knowledge as to each and every telephone call [they] [allegedly] received from [the defendant] and [are] perfectly capable of pleading facts to indicate to the Court that those calls violated the TCPA. As [Plaintiffs] failed to plead these facts, [their] Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc.,* 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015).

Put differently, federal law is clear that plaintiffs "must have a basis in fact and law for filing a lawsuit; [they] cannot file and then conduct discovery to see if there are facts that support [their] claim[s]." *Cholakyan v. Mercedes-Benz USA, LLC,* 2012 WL 12861143, at *24, n. 151 (C.D. Cal. Jan. 12, 2012). In the context of *Barry* and this case, it is not "impossible for [Plaintiff] to know of the alleged caller's relationship with Firstsource—if any—without discovery," and he is not entitled to any at this stage as a matter of settled law. As such, respectfully, *Barry* should not be applied here.

The holding in *Bradshaw v. CHW Grp., Inc*., 2025 WL 306783 (D.N.J. Jan. 24, 2025), likewise stands in stark contrast to the vast weight of applicable federal authority on the accepted standards for pleading direct TCPA liability. In fact, that court did not even discuss (let alone properly apply) those established standards in its opinion. For this reason alone, *Bradshaw* carries no persuasive weight in this case. Moreover, the *Bradshaw* court only acknowledged that "at first glance" the plaintiff's argument that the caller identified the defendant "seem[s]" like a basis for attributing the call to the defendant. *Id.* at *2. At the same time, the court commented that "dishonesty

about one's identity [over the phone] is at least somewhat common—and therefore, it will not always make sense to conclude that the person on the other end of the line is who they say they are." *Id.* at *3. In other words, even the *Bradshaw* court seemed to acknowledge the mere content of a call alone is an insufficient basis on which to infer direct TCPA liability, which is what most courts have found when dismissing similarly-defective complaints. Thus, *Bradshaw* should not be applied here, either.

The court in *Katz v. CHW Grp., Inc.,* 2023 WL 6445798 (W.D. Ark. Sept. 29, 2023), also did not discuss the accepted standards for pleading direct TCPA liability in its order—in fact, that court did not cite to *any* applicable authority for its holding on this critical threshold issue—and it certainly did not follow those standards when it improperly credited only the alleged content of the subject calls and the plaintiff's conclusory allegations about them. Indeed, contrary to what the *Katz* court found, the "entity ultimately responsible" for a call is not the same thing as physically placing a call directly someone, which is what matters in this context, and in the end really could refer to anyone.

In the *Smith v. Am.-Amicable Life Ins. Co.* case, the court misapplied and improperly conflated the legal standards for pleading "traceability" for Article III standing purposes under Rule 12(b)(1), where an alleged ***indirect*** connection to a call might suffice to show standing and avoid dismissal in some cases, with the more precise standards for pleading TCPA liability theories under Rule 12(b)(6), where an alleged indirect connection is not enough to plausibly allege a direct TCPA liability theory as a matter of law. *See* 2022 WL 1003762, at *1–2 (E.D. Pa. Apr. 4, 2022). Critically, these are distinct legal concepts with different pleading requirements, as other district courts have correctly recognized when dismissing on this basis. *See, e.g., Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021), *report and rec. adopted,* 2021 WL 1884671 (May 11, 2021) (call deemed indirectly "traceable" to defendant for Article III standing but dismissing for failure to allege TCPA liability, holding: "while the allegations against GoHealth may not be enough

to eventually establish [direct or vicarious] liability on the part of GoHealth …, they suffice[d] to allege that plaintiff's injury is traceable to the defendant") (internal citations omitted).

The decision in *Griffin v. Am.-Amicable Life Ins. Co. of Texas* is similarly flawed for a number of reasons, and it should not be followed here, either. In fact, the *Griffin* court's ruling on direct TCPA liability relied exclusively on one decision from the District of Arizona, which itself is a deeply-flawed, wrongly-decided, and inapposite case. *See* 2024 WL 4333373, at *3-4 (D. Or. Sept. 27, 2024) (citing *Workman v. CarGuard Admin. Inc.,* 2024 WL 249160, at *1-5 (D. Ariz. Jan. 22, 2024)). The *Workman* court's analysis on the issues of direct TCPA liability was faulty because the allegations there suggested that initial calls were physically placed by a third party and the plaintiff was "subsequently transferred" to the defendant by the initial caller. *Workman*, 2024 WL 249160, at *1-2. The same allegations were at play in *Griffin*—*i.e.,* that "each call was subsequently transferred" by the caller to someone "speaking on behalf of Defendant." 2024 WL 4333373, at *3 (D. Or. Sept. 27, 2024). Yet, logically, a call ***transferred to*** a defendant is not the same as the defendant itself physically placing an ***outbound*** call directly—rather, it is the defendant who ***receives*** the call in such a scenario—and thus does not amount to "direct" TCPA liability. Many other district courts, including those in the same circuit as *Griffin* and *Workman*, have recognized this obvious critical distinction. *See, e.g., Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023); *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *4 (E.D.N.Y. Mar. 28, 2024); *Cunningham,* 2023 WL 3985245, at *2; *Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021). That the *Griffin* and *Workmen* courts did not shows those cases were wrongly-decided.

In *Taylor v. Suntuity Solar LLC*, 2024 WL 964199, at *1-6 (M.D. Fla. Mar. 6, 2024), not only did that court also improperly credit just the alleged content of the calls, which is different from how most courts have approached evaluating the sufficiency of pled TCPA liability theories, but that

plaintiff also alleged she received an email from "a call center agent of the Defendant" immediately following the calls. But Plaintiff alleges no such facts in this case. Thus, *Taylor* is inapposite, too.

Plaintiff's reliance on *Davis v. Reliance First Cap., LLC* and *Nunes v. Twitter, Inc.* is entirely misplaced. *Davis* does not even discuss direct or vicarious TCPA liability. And in the footnote Plaintiff cites, the *Davis* court was referring to the defendant's alternative motion to strike the plaintiff's class allegations. *See* 2023 WL 1982354, at *4 n.2 (E.D.N.C. Feb. 13, 2023). And *Nunes* is a summary judgment opinion, not a ruling on a 12(b)(6) motion. Neither of these cases is relevant.

Lastly, in *Atkinson v. Choice Home Warranty*, that court also declined to dismiss on this basis after improperly crediting plaintiff's bald conclusions that she received calls "from Defendant" and the calls were "for telemarketing purposes" to sell her a "home warranty"—even though the plaintiff also suggested in the complaint that a third party placed the calls. 2023 WL 166168, at *3-5 (D.N.J. Jan. 11, 2023) (emphasis added). Again, this approach is inconsistent with how the vast majority of federal courts historically have analyzed and evaluated the facial sufficiency of direct TCPA liability claims at the pleading stage under Rule 12(b)(6), showing that *Atkinson* is another outlier decision.[5]

**Finally**, Plaintiff's Opposition addresses only a handful of the many on-point decisions cited in Firstsource's Motion on the issue of direct TCPA liability, albeit with no meaningful analysis, while ignoring the balance. *See* Dkt. 34 at 9-12, 15-16. For example, discussing *Rogers* and similar

---

[5] Plaintiff's baseless accusations about Firstsource and its counsel with respect to the ruling in *Barry* and defense counsel's involvement in other unrelated litigation (*see* Dkt. 34 at 12-13, n.1) are improper and should be flatly rejected. First, Firstsource did not "admit" to doing anything in *Barry* (or here), but rather properly challenged the sufficiency of the allegations pled under Rule 12(b)(6) with ample supporting authority. *See* Case No. 3:24-cv-00648-GNS-RSE, Dkt. 14. Second, Firstsource notes that the *Barry* decision was issued <u>after</u> Firstsource filed the Motion at bar and that it has moved to certify that decision for interlocutory review, primarily on the grounds that there is no applicable binding authority to guide district courts in the Sixth Circuit when ruling on this critical threshold issue. *See id*., Dkt. 28. Third, respectfully, that the *Abramson* and *Atkinson* courts (or others) erroneously ruled differently on this front in cases involving different parties and alleged fact patterns is of no moment here. Firstsource will not respond to the other unnecessary and improper potshots Plaintiff takes at Firstsource and its counsel in his Opposition in this reply.

"platform provider" cases, the Motion demonstrates how the conclusory allegations Plaintiff added to his FAC about the supposed relationship between Firstsource and MMH—*i.e.,* that Firstsource was "hired" by or "contracted with" MMH to place calls, or to "caus[e]" calls "to be sent" by third parties, to numbers "provided" to Firstsource by MMH, all on MMH's "behalf" or at its "direction" (Dkt. 22, ¶¶ 7, 9, 10, 16-18, 23, 67)—only further undermine his direct liability theories. *See* Dkt. 29 at 16-18 & n.7. Attempting (but failing) to counter this, the Opposition argues that, in contrast to "*Rogers*, the calls [there] were made to sell Assurance IQ's products and recipients were directed to make purchases and interact with Assurance IQ," whereas in this case "Plaintiff has pled exactly what *Rogers* did not: Firstsource is the user of the telecommunications service…." Dkt. 34 at 15-16. However, the allegations pled in *Rogers* are plainly factually analogous to those in Plaintiff's FAC.

For example, here, Plaintiff's FAC expressly alleges the calls at issue were about "a complementary service provided free of charge … ***by the hospital***" and not a service offered by Firstsource. Dkt. 22, ¶ 25 (emphasis added). It also expressly alleges (or, rather, baldly concludes) that the recipients were directed to Firstsource's website so that they could enter into a binding contract with MMH in this regard. *See id.,* ¶¶ 40-41. And, at the same time, it now alleges that MMH is somehow, "directly and/or vicariously liable" for the calls, and includes new allegations suggesting Firstsource is only vicariously liable. *See id.* ¶¶ 39, 65. Moreover, Plaintiff omits that, when reviewing sufficiency of the allegations pled and taking them as true under Rule 12(b)(6), the *Rogers* court deemed Assurance IQ to be the "user" of the platform and ***dismissed the entire complaint*** as to both defendants on direct and vicarious liability grounds (among others), even though the plaintiff alleged that the other defendant (Boomsourcing) "physically dialed" the subject calls "on behalf" Assurance based on numbers provided to Boomsourcing to sell Assurance's products. *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *3-5 (W.D. Wash. Mar. 27, 2023). That is similar to what

11

Plaintiff contradictorily alleges in the present case as to Firstsource and MMH. The point that Plaintiff misses or misapprehends here is that the "platform" liability theory appears on the face of the FAC, along with the other liability theories. That is what Plaintiff himself pled. But all of this cannot possibly be true, which underscores overall the implausibility of Plaintiff's allegations.

As to the remaining decisions cited in the Motion that Plaintiff discusses in his Opposition, Plaintiff misconstrues and/or misapplies the holdings in those cases, too. Though local briefing limits do not permit Firstsource to discuss all these cases in detail again here, it is readily apparent that those decisions (and others cited in the Motion) collectively show that the same "either/or" pleading approach that Plaintiff has adopted here has been rejected time and time again by countless federal courts as insufficient to plausibly allege a direct TCPA liability theory at the pleadings stage. In short, the decisions cited in the Motion are reflective of and consistent with how federal district courts across the country have evaluated the facial sufficiency of TCPA claims under Rule 12(b)(6). Plaintiff's Opposition gives this Court no compelling reason to take a different approach here.

## II.    **Plaintiff Fails to Plausibly Allege a Vicarious TCPA Liability Theory.**

As to Firstsource's arguments on his failure to plead a vicarious TCPA liability theory (*see* Dkt. 29 at 18-23), Plaintiff mostly ignores Firstsource's cited authorities, cites primarily to the *Barry*, *Harrison,* and *Jewell* cases, and ultimately invites this Court to blindly apply those decisions to his claim here. In this regard, Plaintiff argues that "[a]ny further details regarding the nature of the agency relationship between MMH and Firstsource will be the proper subject of discovery and need not be pled at the pleadings stage." Dkt. 34 at 13. Plaintiff is wrong here for several reasons.[6]

---

[6] Though Plaintiff's Opposition suggests that he is only alleging a vicarious TCPA liability theory against MMH (*see* Dkt. 34 at 13), or perhaps is doing so "at the very least" (*id*. at 14), that is not what his FAC pleads. Instead, it purports to assert both theories as to both Defendants. *See, e.g.,* Dkt. 22, ¶¶ 7, 38, 39, 67, 68, 71. As such, Firstsource will address vicarious liability here.

For one, as discussed above, the foregoing cases (respectfully) have significant flaws, stand in contrast to the majority of applicable federal authority, and are distinguishable from and inapposite in this case. For another, in accordance with federal pleading standards, one cannot conclude their way into a vicarious TCPA liability theory and hope for discovery to shore up their allegations later and, instead, must plead some specific plausible facts supporting a reasonable inference that a common law agency relationship existed to avoid a dismissal on the pleadings. *See* Dkt. 29 at 19-22 (collecting cases, including *Cunningham, Dobronski*). In short, unlike what the *Harrison* court held, federal law is clear that "explicit pleading" of an agency relationship ***is required*** under Rule 12.

Further, as the Motion shows, the well-accepted touchstone of a common law agency relationship in the TCPA context, as is required to plead vicarious TCPA liability, is that the alleged principal has specific "control" over the "manner and means" of call campaign conducted by a third party caller—*i.e.,* literally how to call, when, who, etc. *See id.* at 19-20 (citing *Monitronics*, *Bank*, *Cunningham*, *Fabricant*, *Rogers*, *Meeks*); *see also Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *5 (S.D. Ohio July 10, 2015). Plaintiff's Opposition does not dispute this settled point of law or address Firstsource's argument in this regard. Yet, his FAC plainly lacks any such facts. Indeed, aside from his class allegations (*see* Dkt. 22, ¶ 52), ***the word "control" is not even used***.

Additionally, as the Motion shows, and as the Opposition ignores, an apparent authority agency theory only arises from "'proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied' to the plaintiff's detriment." Dkt. 29 at 22 (quoting *Linlor v. Five9, Inc.,* 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017) (quoting *Thomas v. Taco Bell Corp.,* 582 F. App'x 678, 679 (9th Cir. 2014)) (punctuation omitted, alterations original)). *See also id.* ( citing *Paintsville Hosp. Co.*). In this regard, there are no facts in the FAC about any statement or act <u>by MMH</u> upon which <u>Plaintiff</u> reasonably <u>relied</u>, let alone relied on to his <u>detriment</u>, which further

supports dismissal on vicarious liability grounds here. *See* Dkt. 29 at 22-23 (citing *Sapan, Fabricant, Cunningham*). Thus, Plaintiff's Complaint is also subject to dismissal on vicarious liability grounds.

### III.  Plaintiff Fails to Plead Facts Supporting His Request for Treble Damages.

By arguing "acting intentionally" is enough to allege a knowing or willful TCPA violation, Plaintiff urges this Court to adopt a standard that would be satisfied in every TCPA case, thereby always triggering the imposition of treble damages. Dkt. 34 at 18. This Court should reject taking such an extreme position. While Plaintiff cites to decisions ruling otherwise, one Court of Appeals aptly noted that "[i]f [courts] interpreted the [TCPA] to require only that the violator knew he was making a call [*i.e.*, just acting intentionally], the statute would have almost no room for violations that are not willful or knowing." *Lary v. Trinity Physician Fin. & Ins. Servs.,* 780 F.3d 1101, 1107 (11th Cir. 2015). Courts in this Circuit have agreed, and have found more than an alleged intentional act is needed. *See, e.g., Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4338957, at *8 (E.D. Mich. May 14, 2021), *report and rec. adopted in part, rejected in part on other grounds*, 2021 WL 4452218 (Sept. 29, 2021) (recommending and approving dismissal of treble damages allegations, holding: "The defendant must know the call is being made to a person who did not consent to receive the call. Otherwise, the distinction between a violation of the TCPA and a willful or knowing violation would be negligible or nearly undetectable.") (citing *Lary* and *Harris v. World Fin. Network Nat'l Bank,* 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012)). This Court should adopt the better-reasoned approach adopted by these courts here, and dismiss Plaintiff's allegations on this issue accordingly.

### IV.  Plaintiff Fails to Plead a Basis for His Requests for Injunctive Relief.

Finally, Plaintiff suggests his imminent risk of future injury to seek injunctive relief, for Article III standing purposes, is established because of TCPA cases filed by other plaintiffs against Firstsource, none of which have been adjudicated. *See* Dkt. 34 at 20. But allegations by these other

14

plaintiffs are not evidence and, in any event, are not included in the FAC. The Court should reject this argument, as Plaintiff cannot amend his deflective pleading through briefing. *See Bates, supra*.

Plaintiff's scant cited authority on this issue is inapposite. In *Gutierrez v. Fla. Advert. & Mktg. Corp.*, defendant did not raise a standing challenge to plaintiff's request for injunctive relief, but a merits-based challenge to a standalone claim for injunctive relief. 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019). *Abramson* did involve a standing challenge to a plaintiff's ability to seek injunctive relief. But the court found it is still incumbent upon plaintiff to demonstrate a threat of future harm, and determined the complaint adequately alleged a plausible threat of future harm where the calls were placed shortly before the complaint was filed. *See* 2023 WL 1782728 at *1-5. Here, Plaintiff does not deny the last call **he** received "from" Firstsource was **well over a year ago**. *See* Dkt. 22, ¶ 23. That Firstsource has been previously named in other baseless and unadjudicated TCPA lawsuits does not plausibly suggest that Plaintiff **himself** is at any **imminent** risk of future harm here, which is what matters for standing to seek injunctive relief under <u>binding</u> federal law. *See* Dkt. 29 at 6-7, 24 (citing, *inter alia*, *Shelby*, *Driehaus*, *Summers*, *Transunion*). As such, Plaintiff's bald requests for injunctive relief should at least be dismissed on standing grounds under Rule 12(b)(1), as well.

\* \* \*

All told, Plaintiff's FAC should be seen for what it is: another opportunistic plaintiff distorting the remedial purpose of the TCPA looking for an unjustified financial windfall with a contradictory and inconsistent pleading plainly lacking in requisite factual support. Countless federal district courts throughout the country have dismissed similarly-defective TCPA complaints under Rule 12, as the Motion shows. This Court should join them in this case and grant the Motion. And as Plaintiff's FAC represents his second bite at the proverbial apple here, he should not be afforded a third chance, and therefore the FAC should be dismissed <u>with prejudice</u>. *See* Dkt. 29 at 24-25.

Dated: August 20, 2025

Respectfully submitted,

By: /s/A. Paul Heeringa
A. Paul Heeringa (admitted *pro hac vice*)
**Manatt, Phelps & Phillips LLP**
151. N. Franklin Street, Suite 2600
Chicago, IL 60606
Tel: 312-529-6300
Email: pheeringa@manatt.com

Casey L. Hinkle
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Fl.
Louisville, KY 40202
Tel:     (502) 416-1630
Email:  chinkle@kaplanjohnsonlaw.com

*Counsel for Defendant*
*Firstsource Solutions USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2025, the foregoing was filed via the Court's electronic filing system, which will automatically send notice of such filing to all counsel of record.

/s/ A. Paul Heeringa
*Counsel for Defendant*