**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **MARSHALL MCCLAIN, individually and on behalf of a class of all persons and entities similarly situated,** | |
| **Plaintiff,** | **Case No. 3:25-cv-00150-DJH-RSE** |
| **v.** | |
| **FIRSTSOURCE SOLUTIONS USA, LLC and MANATEE MEMORIAL HOSPITAL, LIMITED PARTNERSHIP,** | |
| **Defendants.** | |

**DEFENDANTS' JOINT MOTION TO CERTIFY THIS COURT'S MARCH 18, 2026 ORDER [DKT. 41] FOR AN INTERLOCUTORY APPEAL AND TO STAY**

**TABLE OF CONTENTS**

                                                                                       **Page**

I.    INTRODUCTION...................................................................................................1

II.   ARGUMENT ........................................................................................................6

      A.    The Court's Order Involves Controlling Questions of Law. ...................................6

      B.    There are Substantial Grounds for Differences of Opinion on the Controlling Questions In the Court's Order................................................9

            1.    There is Little Binding Precedent in the Sixth Circuit On the Standards for Properly Pleading Direct or Vicarious TCPA Liability Theories. ........................................................................9

            2.    Other Courts Have Reached Different Conclusions Than This Court on The Threshold Issues of Direct and Vicarious TCPA Liability........................................................................11

      C.    Immediate Appeal Would Materially Advance the Termination of this Case. ..........................................................................18

      D.    This Case Should Be Stayed During the Appellate Proceedings. .........................19

III.  CONCLUSION ...................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ..................................................................................................... 17

*Bank v. Philips Elecs. N. Am. Corp.,*
2015 WL 1650926 (E.D.N.Y. Apr. 14, 2015) ..................................................... 13, 15

*Bank v. Vivint Solar, Inc.,*
2019 WL 2280731 (E.D.N.Y. Feb. 25, 2019) ........................................................... 12

*Barnes v. SunPower Corp.,*
2023 WL 2592371 (N.D. Cal. Mar. 16, 2023) .......................................................... 13

*Barry v. Firstsource Sols. USA, LLC,*
2025 WL 1762289 (W.D. Ky. June 25, 2025)..................................................... passim

*Belleville v. Florida Insur. Servs., Inc.,*
2024 WL 2342337 (S.D. Fla. May 23, 2024)............................................................. 13

*Bennett v. Celtic Ins. Co.,*
2022 WL 865837 (N.D. Ill. Mar. 23, 2022)............................................................... 14

*Brickman v. Facebook, Inc.,*
2017 WL 1508719 (N.D. Cal. Apr. 27, 2017)............................................................. 8

*Cerjanec v. FCA US, LLC,*
2018 WL 7152556 (E.D. Mich. Sept. 4, 2018) ................................................... passim

*Charvat v. EchoStar Satellite,*
630 F.3d 459 (6th Cir. 2010) ..................................................................................... 10

*Childress v. City of Cincinnati, Ohio,*
765 F. Supp. 3d 662 (S.D. Ohio 2025)......................................................................... 3

*Cholakyan v. Mercedes-Benz USA, LLC,*
2012 WL 12861143 (C.D. Cal. Jan. 12, 2012).......................................................... 17

*Compressor Eng'g Corp. v. Manuf's Fin. Corp.,*
746 F. App'x 460 (6th Cir. 2018) ............................................................................... 10

*Couch v. Telescope Inc.,*
611 F.3d 629 (9th Cir. 2010) ....................................................................................... 2

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,*
648 F.3d 365 (6th Cir. 2011) ....................................................................................... 7

*Cunningham v. Daybreak Solar Power, LLC,*
2023 WL 3985245 (N.D. Tex. June 13, 2023).......................................................... 15

*Cunningham v. Health Plan Intermediaries Holdings, LLC,*
2021 WL 1946645 (M.D. Tenn. May 14, 2021) ................................................. passim

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Delgado v. eMortgage Funding LLC*,
  2022 WL 229884 (E.D. Mich. Jan. 25, 2022) ................................................................. passim

*Dobronski v. Juliasangel Mktg., LLC*,
  2025 WL 2659265 (E.D. Mich. Sept. 17, 2025) ...................................................2, 13

*Dobronski v. Russo*,
  2024 WL 4363118 (E.D. Mich. Sept. 30, 2024) ...................................................2, 13

*Dobronski v. Tobias & Assocs., Inc.*,
  2024 WL 1174553 (E.D. Mich. Mar. 18, 2024).............................................................. 16

*Doyle v. GoHealth, LLC*,
  2023 WL 3984951 (D.N.J. Mar. 30, 2023)...................................................................... 5

*Dunigan v. Thomas*,
  2023 WL 2215954 (E.D. Mich. Feb. 24, 2023).............................................................. 17

*Eberline v. Douglas J. Holdings, Inc.*,
  2019 WL 989284 (E.D. Mich. Mar. 1, 2019)........................................................2, 20

*Flint v. Ky. Dept. of Corr.*,
  270 F.3d 340 (6th Cir. 2001) ..................................................................................... 7

*Hale v. Teledoc Health, Inc.*,
  2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021)............................................................... 16

*Harrison v. Humana, Inc.*,
  2024 WL 4828737 (W.D. Ky. Nov. 19, 2024).......................................................3, 4

*Hurley v. Messer*,
  2018 WL 4854082 (S.D.W.Va. Oct. 4, 2018).............................................................. 17

*Hyatt v. J.B. Hunt Transp. Servs., Inc.*,
  2015 WL 13648356 (W.D. Ark. June 16, 2015)........................................................... 17

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*,
  792 F.3d 627 (6th Cir. 2015) ..................................................................................... 10

*In re Auto. Parts Antitrust Litig.*,
  2013 WL 4784682 (E.D. Mich. Sept. 6, 2013) .............................................................. 8

*In re Baker & Getty Fin. Servs., Inc.*,
  954 F.2d 1169 (6th Cir. 1992) ..................................................................................... 7

*In re Miedzianowski*,
  735 F.3d 383 (6th Cir. 2013) ..................................................................................... 9

*In re Trump*,
  874 F.3d 948 (6th Cir. 2017) ................................................................... 2, 7, 9, 19

*Jewell v. Magnolia Bank, Inc.*,
  2024 WL 203972 (W.D. Ky. Jan. 17, 2024)............................................... 3, 4, 15, 16

iii

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Katz v. CHW Grp., Inc.*,
  2023 WL 6445798 (W.D. Ark. Sep. 29, 2023) ........................................................... 15

*Keating v. Peterson's Nelnet, LLC*,
  615 F.App'x 365 (6th Cir. 2015) ................................................................................ 10

*Klinghoffer v. S.N.C. Achille Lauro*,
  921 F.2d 21 (2d Cir. 1990) ........................................................................................... 7

*Landy v. Nat. Power Sources, LLC*,
  2021 WL 3634162 (D.N.J. Aug. 17, 2021) ................................................................ 16

*Lucas v. Telemarketer Calling from (407) 476-5680*,
  2019 WL 3021233 (6th Cir. May 29, 2019) *vacated in part on reh'g*, 2019 WL
  13545379 (Nov. 1, 2019) .........................................................................................3, 4, 10

*Meeks v. Buffalo Wild Wings, Inc.*,
  2018 WL 1524067 (N.D. Cal. Mar. 28, 2018) .........................................................13, 15

*Melito v. Am. Eagle Outfitters, Inc.*,
  2015 WL 7736547 (S.D.N.Y. Nov. 30, 2015) .........................................................11, 16

*Metzler v. Pure Energy USA LLC*,
  2023 WL 1779631 (S.D.N.Y. Feb. 6, 2023) .............................................................. 14

*Murray v. Choice Energy, LLC*,
  2015 WL 4204398 (S.D. Ohio July 10, 2015) ..........................................................5, 13

*Nelums v. Mandu Wellness, LLC*,
  2023 WL 5607594 (D.N.M. Aug. 30, 2023) ............................................................... 2

*Newsome v. Young Supply Co.*,
  873 F. Supp. 2d 872 (E.D. Mich. 2012) ................................................... 7, 10, 11, 18

*Phipps v. Wal-Mart Stores, Inc.*,
  792 F.3d 637 (6th Cir. 2015), *abrogated on other grounds by China Agritech, Inc. v.
  Resh*, 138 S. Ct. 1800 (2018) ....................................................................................... 7

*Reese v. B.P. Exploration, Inc.*,
  643 F.3d 681 (9th Cir. 2011) ........................................................................................ 9

*Reliable Carriers Inc. v. Moving Sites LLC*,
  2018 WL 1477666 (E.D. Mich. Mar. 27, 2018) .......................................................... 7

*Rogers v. Assurance IQ, LLC*,
  2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ...................................... 5, 11, 13, 15

*Scruggs v. CHW Grp., Inc.*,
  2020 WL 9348208 (E.D. Va. Nov. 12, 2020) ............................................................ 13

*Siding & Insulation Co. v. Alco Vending, Inc.*,
  822 F.3d 886 (6th Cir. 2016) ...................................................................................... 10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sims v. First Horizon Nat. Corp.*,
 2010 WL 1050976 (W.D. Tenn. Mar. 22, 2010)........................................................................19

*Tuso v Lennar Corp.*,
 2024 WL 1239474 (S.D. Fla. Mar. 22, 2024)..............................................................................2

*W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*,
 138 F. Supp. 2d 1015 (W.D. Tenn. 2000).............................................................................7, 18

*Wang v. Gen. Motors, LLC*,
 2019 WL 1950185 (E.D. Mich. May 2, 2019) ............................................................................9

*Williams v. Mehra*,
 186 F.3d 685 (6th Cir. 1999) ......................................................................................................7

*Yuhasz v. Brush Wellman, Inc.*,
 341 F.3d 559 (6th Cir. 2003) ....................................................................................................17

### STATUTES

28 U.S.C. § 1292..............................................................................................................................2

28 U.S.C. § 1292(b).................................................................................................................. passim

47 U.S.C. § 227(b)(1)(A)(iii) ..........................................................................................................1

### OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(1) ................................................................................................................1

47 C.F.R. § 64.1200(a)(2) ................................................................................................................1

### RULES

Fed. R. App. P. 5(a)(3) ..............................................................................................................6, 20

Fed. R. Civ. P. 1 ...............................................................................................................................6

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... passim

Pursuant to 28 U.S.C. § 1292(b), Defendants Firstsource Solutions USA, LLC ("Firstsource") and Manatee Memorial Hospital, L.P. ("MMH") (collectively, "Defendants") hereby respectfully move to certify for interlocutory appeal the Court's March 18, 2026 Memorandum and Order (Dkt. 41, the "Order") denying Defendants' Motions to Dismiss (Dkt. 29 and 32, "Motions") Plaintiff's First Amended Complaint (Dkt. 22, "FAC"),[1] and for a stay of these proceedings pending appellate review and completion of the appellate proceedings for efficiency purposes.

As discussed below, Defendants seek certification because the Order turns on controlling questions of law regarding the minimum allegations required to plausibly plead (1) direct TCPA liability (*i.e.*, whether that defendant "made" or "initiated" the subject calls within the meaning of the statute) and (2) vicarious TCPA liability (*i.e.*, whether the defendant is liable for the calls under common law agency principles of actual authority, apparent authority, or ratification), and whether those pleading standards were applied to the allegations in Plaintiff's FAC. There are substantial grounds for differences of opinion on both questions, and an immediate appeal of those questions may materially advance the ultimate termination of this case. As such, the Court should grant this motion, certify the Order, and stay this entire case pending the Sixth Circuit's decision to grant review and until the conclusion of appellate proceedings for the sake of judicial and party economy.

## I.    INTRODUCTION

A federal district court may certify an interlocutory order for immediate appeal where the following "three conditions exist: '[1] the order involves a ***controlling question of law*** to which

---

[1] As the Court is aware, Plaintiff alleges that Defendants violated the "artificial or prerecorded voice" message provision and related implementing regulations of the federal Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. §§ 64.1200(a)(1)-(2). Plaintiff's claim is based on two supposedly "prerecorded voice messages" (*i.e.,* voicemails)—which were non-telemarketing, healthcare-related messages and merely offered a "complementary service provided free of charge" to find financial assistance—that he conclusorily alleges were "sent" or "caused" to be sent either by Firstsource, MMH, and/or by an unidentified third party "on behalf" of MMH to his cell number without his consent. *See generally* Dkt. 22.

1

there is [2] ***substantial ground for difference of opinion*** and ... [3] ***an immediate appeal may materially advance the termination of the litigation***.'" *See In re Trump,* 874 F.3d 948, 951 (6th Cir. 2017) (quoting 28 U.S.C. § 1292(b)) (emphasis and alterations in original). If all three conditions are satisfied, the court "shall permit a party to appeal a non-final order" and it "must 'expressly find in writing that all three § 1292 requirements are met.'" *Eberline v. Douglas J. Holdings, Inc.*, 2019 WL 989284, at *1 (E.D. Mich. Mar. 1, 2019) (citing *In re Trump*, 874 F.3d at 951 and quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). All three requirements are met in this instance.

The Order's rulings on direct TCPA liability and vicarious TCPA liability[2] present a prime case for immediate appellate review. It is widely recognized that direct and vicarious liability are the very "first elements" of ***any*** TCPA claim, and that such theories must be adequately pled in ***all*** cases to survive dismissal at the pleadings stage under Rule 12(b)(6), regardless of whether there are also facts pled supporting other essential elements of the claim(s) asserted. *Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023). *See also Tuso v Lennar Corp.,* 2024 WL 1239474, at *4 (S.D. Fla. Mar. 22, 2024) ("Because [plaintiff] has failed to allege that the Defendant is liable—either directly or vicariously—his [TCPA] claims must be dismissed."). In fact, federal courts nationwide routinely dismiss entire TCPA complaints under Rule 12(b)(6) on these core bases alone. *See*, *e.g.*, *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024); *Dobronski v. Juliasangel Mktg., LLC*, 2025 WL 2659265, at *9-11 (E.D. Mich. Sept. 17, 2025); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at *2 (M.D. Tenn. May 14, 2021) (each dismissing TCPA cases on these bases). *See also* Dkt. 29 at 8-23 (collecting cases). These threshold pleading requirements act as critical guardrails to prevent defendants from facing costly class action litigation and discovery costs and potentially ruinous statutory damages

---

[2] Defendants do not seek interlocutory review of the Order with respect to Plaintiff's failure to plead facts showing his standing to seek injunctive relief or treble damages. *See* Dkt. 41 at 9-13.

2

under the TCPA when the allegations against them may (and often do) ultimately lack merit. *See also Childress v. City of Cincinnati, Ohio*, 765 F. Supp. 3d 662, 679 (S.D. Ohio 2025) (courts "play 'an important gatekeeper role'" at the pleadings stage). In short, they are "controlling" legal issues.

Despite all this, and despite the staggering amount of TCPA complaints filed daily in this country, applicable binding Sixth Circuit precedent to guide district courts when ruling on these key threshold dispositive issues is surprisingly sparse and undeveloped.[3] This lack of precedential authority results in different courts applying different standards and reaching vastly different conclusions from each other on these issues in strikingly similar cases. All this makes the Court's Order denying the Motions on these grounds an exemplary candidate for an interlocutory review.

Here, in denying Defendants' Motions (in part) on direct and vicarious liability grounds, the Order seemingly relies primarily on three non-binding decisions from courts in this District. *See* Dkt. 41 at 5-9 (citing *Barry v. Firstsource Sols. USA, LLC*, 2025 WL 1762289 (W.D. Ky. June 25, 2025), *Harrison v. Humana, Inc.*, 2024 WL 4828737 (W.D. Ky. Nov. 19, 2024) and *Jewell v. Magnolia Bank, Inc.*, 2024 WL 203972 (W.D. Ky. Jan. 17, 2024)). Yet, this Court had only one applicable ***binding*** opinion on the standards for adequately pleading direct and vicarious TCPA liability to guide it here—*i.e., Lucas. See* 2019 WL 3021233, at *5 (generally describing requirements for direct and vicarious liability and affirming dismissal because of plaintiff's failure to allege either). And the Court seemingly did not rely on this sole precedential authority when ruling on the Motions.

This lack of binding guidance on these critical issues alone warrants interlocutory review of this Court's Order in this case, as other courts in this Circuit have found. *See, e.g., Delgado v.*

---

[3] In fact, as discussed below, there is ***only one*** applicable Sixth Circuit decision addressing these issues in the context of a Rule 12(b)(6) motion, doing so only briefly. *See Lucas v. Telemarketer Calling from (407) 476-5680*, 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019) *vacated in part on reh'g*, 2019 WL 13545379 (Nov. 1, 2019). And while there was no dispute on direct liability in *Lucas*, that decision was ultimately vacated in part after a rehearing based on then-newly-issued FCC guidance on vicarious liability. *See* 2019 WL 13545379, at *5 (6th Cir. Nov. 1, 2019).

*eMortgage Funding LLC*, 2022 WL 229884, at *3 n.2 (E.D. Mich. Jan. 25, 2022) (granting motion to certify order denying Rule 12(b)(6) motion on direct and vicarious TCPA liability grounds for interlocutory appeal for this reason, citing to *Lucas* and the scarcity of binding Sixth Circuit authority on these critical controlling legal issues as the basis for granting certification).

The *Delgado* case cited above is directly on point here. There, the district court denied the defendant's motion to dismiss on the grounds that the plaintiff plausibly alleged a TCPA liability theory, where the plaintiff "asserted that [the defendant], or an agent acting on its behalf, violated the TCPA." *Delgado*, 2022 WL 229884, at *3. The defendant accordingly moved to certify the court's order for interlocutory appeal, arguing (i) there was little relevant binding precedent in this Circuit on the controlling threshold issues of the standards for pleading direct and vicarious TCPA liability and whether the plaintiff sufficiently pled facts supporting such theories (*i.e.*, *Lucas* being the only case), such that substantial grounds for differences of opinion exists, and (ii) an immediate appeal on those controlling questions could materially affect the outcome of the entire litigation. *Id*. The *Delgado* court agreed, holding: "[b]ecause there is so little relevant [binding] precedent on the pleading standard [*i.e.,* direct and vicarious liability] for TCPA call/text claims, … a substantial ground for difference of opinion exists in this case." *See id*. at *3 n.2. The same is true here.

Beyond the lack of binding authority on these crucial issues, which by itself warrants certification, numerous other district courts in this Circuit and elsewhere have ruled differently than the Court's ruling in this case (as well as its rulings in the *Barry*, *Harrison* and *Jewell* cases cited in the Order) on the same threshold issues in cases involving similar allegations. In fact, in contrast to how the Court seemingly ruled in the Order, myriad other courts have held that (i) merely taking an equivocating and inconsistent "either/or" approach to pleading a TCPA liability theory and alleging that one of the "defendants and/or its agents" placed the subject calls (as Plaintiff did here) is

4

insufficient to avoid dismissal on these grounds; and (ii) the alleged content of a communication (even if the defendant's name or products are mentioned) is not dispositive of direct or vicarious liability standing alone. *See, e.g.*, *Cunningham v. Health Plan,* 2021 WL 1946645, at \*2 (call content alone was not dispositive, even though the defendant's name was identified); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at \*5-7 (W.D. Wash. Mar. 27, 2023) (dismissing a strikingly-similar TCPA case brought by some of the same counsel representing Plaintiff on these bases, where the plaintiffs concluded that one of the defendants "physically" placed the subject calls, noting that "[p]laintiffs have not pleaded any *facts* supporting their inference that [said defendant] physically dialed the calls to four of the individual plaintiffs," and dismissing the other defendant because plaintiffs failed to adequately plead facts showing control over the manner and means of the call campaign, as required to show common law agency to plead vicarious TCPA liability) (emphasis in original));[4] *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at \*4–6 (D.N.J. Mar. 30, 2023) (holding plaintiffs' allegations the calls were "from Defendant, its employees and/or agents" were insufficient to plead a TCPA liability theory); *Murray v. Choice Energy, LLC,* 2015 WL 4204398, at \*2-4 (S.D. Ohio July 10, 2015) (dismissing on direct liability grounds, even though the plaintiff was allegedly expressly "informed that the call was from Choice Energy"). *See also* Dkt. 29 at 8-23 (collecting cases). This, along with the utter dearth of binding authority to guide this Court and others when ruling on these threshold liability issues, shows the Sixth Circuit's immediate guidance is necessary.

In sum, this case satisfies all three requirements of § 1292(b). **First**, the Order presents controlling questions of law about the pleading standards for direct and vicarious TCPA liability under Rule 12(b)(6) and whether those were properly applied when the Court evaluated the sufficiency of the allegations in Plaintiff's FAC. **Second**, there are substantial grounds for difference

---

[4] Though discussed repeatedly in the Motions, the *Rogers* case is not discussed in the Order.

of opinion on these questions because Sixth Circuit guidance is limited, courts around the country have adopted materially different approaches on similar pleadings, and the Order's analysis permits liability to proceed based largely on the content of third-party messages and generalized website terms. **Third**, immediate appellate review on these critical issues may materially advance termination of the litigation because, if the Sixth Circuit concludes that Plaintiff has not plausibly pled such theories here, his entire FAC would be subject to dismissal with prejudice at the pleadings stage, sparing the parties and the Court the burden of class discovery and merits proceedings. Plus, it is consistent with the core principles of Fed. R. Civ. P. 1 to seek the Sixth Circuit's guidance on these key issues now, rather than wait until end-of-the-case review after substantial merits litigation.

Finally, once the Court certifies the Order for interlocutory appeal, it would be appropriate to also stay this case pending action by the Sixth Circuit for efficiency purposes. Courts have found such stays promote "economy of time and effort for the Court and the parties" by allowing appellate guidance on these key threshold liability issues before the parties and the Court devote substantial resources to discovery, motions for summary judgment, class certification, and potentially a class action trial. *Cerjanec v. FCA US, LLC*, 2018 WL 7152556, at *3 (E.D. Mich. Sept. 4, 2018); *see also Delgado,* 2022 WL 229884, at *4 (granting motion to certify order and staying case pending outcome of appellate proceedings, citing *Cerianec*). All this rings true here. Therefore, for the reasons above and further discussed below, the Order should be certified and the case stayed, accordingly.[5]

## II.    ARGUMENT

### A.    The Court's Order Involves Controlling Questions of Law.

The Court's Order easily clears the first "low bar" for certification under § 1292(b). *See Delgado,* 2022 WL 229884, at *3 n.2 (noting that "[t]he Sixth Circuit has ... set a low bar for a

---

[5] Fed. R. App. P. 5(a)(3) permits the Court to amend its Order, on its own or in response to this motion, to include the required permission statement for an appeal.

determination that a question of law is controlling in the context of a motion for certification under § 1292(b).”) (citing *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875 (E.D. Mich. 2012)).

Under this first requirement, “[a]ll that must be shown in order for a question to be controlling is that resolution of the issue on appeal ***could*** materially affect the outcome of the litigation in the district court.” *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (emphasis added). Thus, “‘the resolution of an issue need not necessarily terminate an action’ or ‘have precedential value for a number of pending cases’ to be ‘controlling’” for §1292(b) purposes. *Id.* (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990)). Courts consider the first and third requirements to be “closely tied” together. *Newsome*, 873 F. Supp. 2d at 878.

In this context, “‘[t]he sufficiency of a complaint is a question of law.’” *In re Trump,* 874 F.3d at 951 (quoting *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 369 (6th Cir. 2011)). Threshold dispositive issues, like those involved in the Order, also “are undoubtedly controlling because their resolution could materially affect the outcome of the case.” *Id.* (citing, *inter alia, Baker*); *see also Phipps v. Wal-Mart Stores, Inc.,* 792 F.3d 637, 642 (6th Cir. 2015) (accepting interlocutory review to resolve threshold issues), *abrogated on other grounds by China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018); *Reliable Carriers Inc. v. Moving Sites LLC*, 2018 WL 1477666, at *2 (E.D. Mich. Mar. 27, 2018) (certifying an order under §1292(b) involving a “dispositive issue”). Therefore, “an issue could be controlling if [for example] its resolution on appeal ‘could result in a reversal of a district court’s final judgment,’ ‘has precedential value,’ or ‘is central to liability[.]’” *Cerjanec*, 2018 WL 7152556, at *2 (quoting *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1018-19 (W.D. Tenn. 2000)).

“Mixed questions of law and fact are [also] treated as questions of law for purposes of an interlocutory appeal.” *Flint v. Ky. Dept. of Corr.,* 270 F.3d 340, 346 (6th Cir. 2001) (citing *Williams*

7

*v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999)). Thus, where a "challenge is to the sufficiency of the [factual] allegations" in a complaint under federal pleading standards, that is a "legal" question in this context. *In re Auto. Parts Antitrust Litig.,* 2013 WL 4784682, at *2–3 (E.D. Mich. Sept. 6, 2013).

Along these lines, district courts in the Sixth Circuit and elsewhere have held that issues involving the appropriate pleading standards applicable to TCPA claims are "controlling" questions of law appropriate for certification for interlocutory appeal. *See*, *e.g.*, *Delgado,* 2022 WL 229884, at *3; *Brickman v. Facebook, Inc.*, 2017 WL 1508719, at *2 (N.D. Cal. Apr. 27, 2017) (granting motion to certify order for interlocutory appeal involving the pleading standard applicable to the other elements of a TCPA "autodialer" claim). As discussed above, *Delgado* involved precisely the same issue raised by Defendants here regarding the proper pleading standards for direct and vicarious TCPA liability, demonstrating that these issues are "controlling" questions of law in this instance.

Further, resolution of these controlling questions on appeal could materially affect—and likely determine—the outcome of this case. As is reflected in the Motions and herein, and further below, TCPA complaints are routinely dismissed under Rule 12(b)(6) in their entirety where a plaintiff does not plausibly allege a liability theory. This Court has already dismissed Plaintiff's vicarious liability claim against Firstsource and direct liability claim against MMH, and it declined to grant leave to amend. Thus, if the Sixth Circuit reverses the portions of the Order denying dismissal of (i) Plaintiff's direct liability claim against Firstsource and/or (ii) Plaintiff's vicarious liability claim against MMH on the ground the FAC fails to satisfy the governing pleading standards for those theories, Plaintiff's entire FAC would be subject to dismissal at the pleadings stage.[6]

In all, "[r]esolution of the issue [of] whether [P]laintiff sufficiently pled [his] TCPA claims"—*i.e.,* if he pled a plausible direct or vicarious liability theory against Defendants in

---

[6] At the very least, the issues will be streamlined, as there could be only one Defendant remaining.

accordance with federal pleading standards—"on appeal could materially affect the outcome of the litigation before this Court" and "[t]herefore, the Court's [O]rder satisfies the first prong of the test for certification for interlocutory appeal" under § 1292(b). *Delgado,* 2022 WL 229884, at *3 n.2.

> **B.      There are Substantial Grounds for Differences of Opinion on the Controlling Questions In the Court's Order.**

For the second 1292(b) requirement, Defendants need only show "'reasonable jurists *might* disagree on an issue's resolution, *not* merely where they have *already* disagreed.'" *In re Trump*, 874 F.3d at 952 (quoting *Reese v. B.P. Exploration, Inc.,* 643 F.3d 681, 688 (9th Cir. 2011)) (emphasis added). Generally, courts in the Sixth Circuit have held that "[s]ubstantial grounds for disagreement exist when: (1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *Cerjanec*, 2018 WL 7152556, at *2 (citing *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013)); *see also Delgado,* 2022 WL 229884, at *2.

In this case, reasonable jurists might disagree—and, in fact, *have* disagreed—with the Court's rulings on the foregoing controlling questions of law in the Order for at least two reasons:

> 1.      *There is Little Binding Precedent in the Sixth Circuit On the Standards for Properly Pleading Direct or Vicarious TCPA Liability Theories.*

As discussed above, a lack of (or minimal) binding authority on a controlling legal question alone can satisfy the second Section 1292(b) certification requirement. *See, e.g., Delgado,* 2022 WL 229884, at *3 & n.2. Again, *Delgado* is directly on-point here, as that court based its decision to certify its interlocutory order in that case in large part on the "little relevant [binding] precedent on the pleading standard [*i.e.,* direct and vicarious liability] for TCPA call/text claims" in this Circuit. *See also Wang v. Gen. Motors, LLC,* 2019 WL 1950185, at *2 (E.D. Mich. May 2, 2019) (holding

second factor weighed in favor of interlocutory appeal where there "[wa]s little precedent addressing this issue" at bar); *Cerjanec*, 2018 WL 7152556, at \*2 (finding second factor met where "there [wa]s little precedent on the issue"); *Newsome*, 873 F. Supp. 2d at 878 (finding there was "substantial ground for a difference of opinion" "[g]iven the absence of guidance from previous decisions").

As applied here, the Sixth Circuit has given no further guidance since the court's certification ruling in *Delgado*, and the *Lucas* case still appears to be the ***only*** applicable decision to date on the necessity of and the proper standards for adequately pleading direct or vicarious TCPA liability at the pleadings stage for alleged unlawful calls. Further, though *Lucas* does generally discuss the direct liability pleadings standards (*i.e.,* the plaintiff must plausibly allege the defendant itself physically placed all the subject calls directly to him/her), *Lucas* primarily involved issues of vicarious liability, as it was undisputed that the defendant did not place the subject calls. Moreover, as noted above, the *Lucas* decision was ultimately vacated in part on vicarious liability grounds. *See* 2019 WL 13545379, at \*5 (6th Cir. Nov. 1, 2019). As such, *Lucas* effectively provides very little guidance to litigants or courts who have to rule on numerous Rule 12(b)(6) motions in TCPA cases.

In all, the near complete dearth of binding relevant authority on the standards for properly pleading these threshold liability issues in TCPA cases[7] shows precisely why the Sixth Circuit's immediate review and further guidance is warranted in this case. As a consequence of this, the Court had virtually no guidance when ruling on these core dispositive issues in the present case—issues that impact not only this case but also many others cases, given that TCPA cases are often dismissed

---

[7] The <u>only other</u> Sixth Circuit opinions relevant to direct or vicarious TCPA liability were decided at the summary judgment stage and/or involve faxes (which have different liability standards than TCPA call cases like this one) and, thus, are not applicable to this case. *See, e.g., Keating v. Peterson's Nelnet, LLC,* 615 F.App'x 365, 371-75 (6th Cir. 2015); *Charvat v. EchoStar Satellite*, 630 F.3d 459, 465 (6th Cir. 2010); *Compressor Eng'g Corp. v. Manuf's Fin. Corp.*, 746 F. App'x 460, 463 (6th Cir. 2018); *Siding & Insulation Co. v. Alco Vending, Inc.,* 822 F.3d 886, 894–898 (6th Cir. 2016); *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 634–37 (6th Cir. 2015).

10

at the pleadings stage on these bases—and relied on distinguishable non-binding cases. This alone meets the second 1292(b) certification factor. *See, e.g., Delgado, Newsome* and *Cerjanec, supra*.

> **2.      *Other Courts Have Reached Different Conclusions Than This Court on The Threshold Issues of Direct and Vicarious TCPA Liability.***

Moreover, reasonable jurists **have** disagreed with this Court's analysis on these crucial threshold issues. This also demonstrates that the second 1292(b) certification factor is met here.

For example, as noted above, the *Rogers* case discussed in the Motions is directly on-point, involved a starkly similar fact pattern and conclusory liability allegations, and was brought by some of the same plaintiffs' counsel. While that court dismissed <u>both</u> of those defendants on direct <u>and</u> vicarious liability grounds for all the same reasons as in Defendants' Motions here (*see* 2023 WL 2646468, at *5-7), the outcome in this case was different. It is unclear whether the Court considered *Rogers* with ruling, as it is not discussed in the Order. *See generally* Dkt. 29. Regardless, just this one closely-analogous decision shows that reasonable jurists can disagree with this Court's view.

Further, in a footnote in the Order relating to the issue of direct TCPA liability, the Court noted that "Defendants also point to McClain's allegation that 'Defendant Firstsource violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff.' [] This allegation … sets out alternative ways of defining direct liability, [], and thus does not defeat McClain's claim." Dkt 41 at 6, n.2 (internal citations omitted). Other courts have disagreed with the Court's ruling on this point, as well. *See* Dkt. 39 at 4 (citing *Melito v. Am. Eagle Outfitters, Inc.*, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing on this basis where "none of [plaintiffs'] factual allegations" at bar "even if accepted as true, establish[] direct liability on [the defendant's] part under the TCPA because, put simply, none of those actions involves the making, or physical placement," of a call to the plaintiffs, as required for direct TCPA liability, and holding that plaintiffs' "conclusory assertions that [the defendant] ***sent or caused the text message***

11

*to be sent* is simply a legal conclusion devoid of further factual enhancement") (emphasis added)). *See also Bank v. Vivint Solar, Inc.,* 2019 WL 2280731, at *2-3 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (holding that plaintiff's allegations defendant "placed, or directed to be placed" the at-issue call deemed insufficient for direct TCPA liability).

In another footnote in the Order, the Court noted "Defendants provide no explanation for why the presence of multiple defendants is relevant outside of their argument regarding inconsistency [] and the Court rejects the inconsistency argument." Dkt. 41 at 6, n.3 (discussing *Barry*). Respectfully, the "inconsistency" raised in the Motions is not just whether Plaintiff had alleged Firstsource physically placed the calls or was so involved such that it should be deemed to have physically placed them, as the Court concludes. *See id.* at 5. Rather, the inconsistency with Plaintiff's liability allegations, rendering them inherently implausible and insufficient to survive dismissal on these grounds, is that he expressly alleged ***both Firstsource and MMH physically placed the subject calls and thus are directly liable <u>and</u> both are vicariously liable for them***. *See* Dkt. 29 at 16-18. This is indicative of Plaintiff's flawed "either/or" approach to pleading TCPA liability theories in his FAC, which myriad courts have rejected, as shown in the Motions and herein. Other courts (*Rogers*) dismissed both defendants on direct and vicarious liability grounds (entirely) in similar cases, but this Court did not, which further shows reasonable jurists may disagree.

Additionally, one of the cases on which this Court relied heavily in its Order (*see* Dkt. 41 at 6) was from another case this District involving Firstsource (not MMH)—*Barry*—where the Court declined to dismiss Firstsource on direct and vicarious liability grounds because the speaker there (like what Plaintiff alleges here) purportedly said they were "calling from Firstsource" and "the voice message [at issue] directed the recipient to Firstsource's website." 2025 WL 1762289, at *3.[8] As

---

[8] In *Barry*, Firstsource moved for certification on this issue; the case resolved in the interim.

reflected in the Motions and above, however, numerous other courts in this Circuit and elsewhere have dismissed similar TCPA claims on direct liability grounds where plaintiffs merely alleged that the calls came "from the defendant" or offered the defendant's products and services or referred them to the defendant's website during the call—*i.e.,* where the plaintiff merely relied on conclusorily allegations about call content, without pleading additional facts. *See*, *e.g.*, *Dobronski v. Russo*, *Dobronski v. Juliasangel*, *Murray*, *Cunningham v. Health Plan*, and *Rogers*, *supra*. *See also Bank v. Philips Elecs. N. Am. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (allegations calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct TCPA liability); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023) (dismissing on these grounds, even though one plaintiff spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant); *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020) (deeming calls from someone who stated they were "associated with" the defendant insufficient, without more); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018) (finding no direct TCPA liability, even though the at-issue text identified defendant by name and contained a link to its website); *Belleville v. Florida Insur. Servs., Inc.*, 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part by,* 2024 WL 2794108 (May 31, 2024) (approving dismissal on these grounds, even though one caller said they were calling "from" the defendant and provided its website to plaintiff). In short, this Court seemingly found that call content alone was dispositive of Firstsource's direct TCPA liability in its Order here, in contrast to how many other courts have ruled on that front in similar cases.

The Court also appeared to deny the Motions on direct liability grounds to the extent that Plaintiff conclusorily alleged that the phone number used to place the calls was "owned, operated,

13

and used by Firstsource" and that calling it reaches a "robot" message identifying Firstsource. Dkt. 41 at 6 (quoting Dkt. 22, ¶ 30). Yet, other courts have found that such allegations are also not dispositive of direct TCPA liability standing alone. *See, e.g., Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *2, 5-7 (S.D.N.Y. Feb. 6, 2023) (dismissing TCPA complaint where the plaintiff merely concluded the caller's number was "owned and/or operated by or on behalf of Defendant," even though he also alleged he "called the number provided [by the caller] in the [voicemail] message and reached a person who identified herself as a representative of Pure Energy").

The analytical approach taken by the courts cited in the Motions and above is logical and consistent with how federal courts have historically applied the *Iqbal/Twombly* pleading standard in TCPA cases for decades, and it is in tacit recognition that today marketing calls are more often placed by third parties and not the defendants themselves. Indeed, a defendant can "cause" a third party to make calls for it, as Plaintiff avers. Such calls initiated by a third-party vendor would naturally identify the defendant by name, sells its products, or contain a link to its website, and thus may have <u>indirectly</u> originated "from" or by someone associated "with" the defendant in a very technical sense. But that simply is not <u>direct</u> TCPA liability. *See, e.g., Cunningham v. Health Plan,* 2021 WL 1946645, at *1 (holding that the plaintiff's allegations that "Defendants['] third-party agents" called him on the Defendants' behalf, he received prerecorded calls that all "mentioned each Defendant's products," and that he subsequently "got written offers in the mail featuring all Defendants' names" were insufficient). *See also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (dismissing and holding that "a [TCPA] defendant 'generally does not [physically] initiate calls placed by third-party telemarketers"). And if all it took to properly allege a liability theory was for a caller to state the defendant's name or sell its products during a call, there would be no need for plaintiffs to distinguish between direct and vicarious liability theories in a complaint, and no TCPA

14

case would ever be dismissed at the pleadings stage on these grounds. That plainly is not so. In short, call content cannot be dispositive of TCPA liability, as anyone can say virtually anything on a call.

With respect to MMH in particular, the Order's conclusion that "an allegation that a party held itself out as the defendant's agent is enough to plausibly suggest an agency relationship" effectively permits apparent authority to be created by the alleged agent's own statements, notwithstanding core agency principles requiring a manifestation by the principal to the third party and reasonable reliance. Dkt. 41 at 8-9 & n.5 (citing *Barry*, 2025 WL 1762289, at *3, *Jewell*, 2024 WL 203972, at *4, and *Katz v. CHW Grp., Inc.,* 2023 WL 6445798, at *4 (W.D. Ark. Sep. 29, 2023));[9] *see also* Dkt. 29 at 20-22 (discussing differences between common law agency theories).

Moreover, courts have widely recognized that specific facts showing the defendant "control" over the "manner and means" of the call campaign is what matters to demonstrate actual authority for agency purposes in a TCPA case, and thus are required to plausibly allege a vicarious TCPA liability theory. *See* Dkt. 29 at 19-20 (citing, *inter alia*, *Meeks*, 2018 WL 1524067, at *6; *Rogers*, 2023 WL 2646468, at *6; *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *3 (N.D. Tex. June 13, 2023)). *See also Bank v. Philips Elec.,* 2015 WL 1650926, at *3 (dismissing where there were "no allegations of fact that establish an agency relationship between [defendant] and the authorized dealers or any control by [defendant]"). As Plaintiff pled no such facts of "control" in this FAC (nor any other non-conclusory facts supporting a plausible agency theory, for that matter), the result should have been the same. That this Court seemingly did not consider these points in the Motions when ruling on vicarious liability underscores that reasonable jurists can

---

[9] The Order cites to *Katz* on this point, but that case does not discuss the well-accepted standards for pleading a viable direct or vicarious liability theory under the TCPA, nor does it cite any authorities for its holding in that regard. Nor did that court properly apply those standards and merely held that the allegations at bar were enough to show the defendant was "ultimately responsible" for the calls. *See* 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023). Thus, *Katz* carries no persuasive weight on this front, and stands in contrast to how other courts have ruled.

disagree and have taken vastly different approaches to evaluating the facial sufficiency of vicarious TCPA liability allegations than this Court did in this case and in others (*e.g., Barry* and *Jewell*).[10]

Nor does it matter for vicarious TCPA liability purposes if the defendant's name or products were mentioned on a call—which also seemed to be the Court's focus here when ruling on this point. *See*, *e.g.*, Dkt. 29 at 20-1 (citing *Hale v. Teledoc Health, Inc.,* 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) ("[T]he inclusion of Teledoc's services in HII's insurance bundle, alone, is insufficient to permit even a circumstantial inference that HII called plaintiffs at Teledoc's direction or subject to Teledoc's control."); *Landy v. Nat. Power Sources, LLC*, 2021 WL 3634162, at *1 (D.N.J. Aug. 17, 2021) ("[a]n entity cannot be held [vicariously] liable under the TCPA 'merely because they stand to benefit from the call'") (citation omitted). Put simply, a caller merely stating the calls were "on behalf" of a defendant is not dispositive of vicarious TCPA liability, contrary to what this Court concluded in its Order. The substantial disagreement among courts as to whether (and when) content, generalized website terms, or an alleged agent's self-identification can substitute for well-pleaded facts of control, authorization, reliance, or ratification underscores why immediate Sixth Circuit guidance on this controlling threshold legal question is warranted in this case.

Finally, in the *Barry* case cited in the Order, this Court noted that "it would otherwise be impossible for [the plaintiff] to know of the alleged caller's relationship with Firstsource—if any—without discovery, but pleading the existence of an 'apparent relationship' is sufficient." 2025 WL 1762289, at *2. Yet, it is axiomatic that the Federal Rules of Civil Procedure do "not unlock the

---

[10] Of course, bald conclusions do not meet federal pleadings standards and are insufficient to plead any agency theory (especially in a TCPA case), as courts have uniformly held; and Plaintiff "cannot simply allege general control in a vacuum" to avoid dismissal here. *Melito,* 2015 WL 7736547, at *7. *See also Cunningham v. Health Plan,* 2021 WL 1946645, at *4 (dismissing TCPA claim in part on this basis, holding that a plaintiff "must allege some factual predicate that gives rise to an inference of an agency relationship"); *Dobronski v. Tobias & Assocs., Inc.*, 2024 WL 1174553, at *3 (E.D. Mich. Mar. 18, 2024) (citing *Cunningham v. Health Plan* and dismissing TCPA claim in part on this basis where plaintiff did not plead any plausible facts supporting an agency theory).

16

doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). That is particularly true for TCPA cases, as the authorities cited above show. As district court dismissing a TCPA claim on direct and vicarious liability grounds aptly held:

> As master[s] of [their] Complaint, it is [a plaintiff's] burden to state the facts within [their] knowledge that, taken as true, constitute a violation or violations of law. [Plaintiffs] possess[] knowledge as to each and every telephone call [they] [allegedly] received from [the defendant] and [are] perfectly capable of pleading facts to indicate to the Court that those calls violated the TCPA. As [Plaintiffs] failed to plead these facts, [their] Complaint must be dismissed pursuant to Rule 12(b)(6).

*Hyatt v. J.B. Hunt Transp. Servs., Inc.,* 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015). *See also Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing TCPA case where the plaintiff did not sufficiently plead a liability theory, noting that "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"). Put differently, under settled federal law, and contrary to what *Barry* suggests, Plaintiff "must have a basis in fact and law for filing a lawsuit; [he] cannot file and then conduct discovery to see if there are facts that support [his] claim[s]." *Cholakyan v. Mercedes-Benz USA, LLC,* 2012 WL 12861143, at *24, n. 151 (C.D. Cal. Jan. 12, 2012). *See also Dunigan v. Thomas,* 2023 WL 2215954, at *19 (E.D. Mich. Feb. 24, 2023) ("[A] plaintiff is not entitled to discovery to find facts necessary to plead a sufficient claim."). Indeed, the "very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003).

In the context of this case, it is <u>not</u> "impossible" for Plaintiff to plausibly direct or vicarious TCPA liability theory without discovery. The law is clear he must do so prior to the discovery stage to avoid a dismissal, he is not entitled to any discovery to help him do so in any event, and the mere existence of a "relationship" with the caller is not enough to plausibly allege any liability under the TCPA. All this just underscores how other courts have taken different approaches than this Court

did when ruling on these threshold issues in *Barry* and here. Most courts have required more factual enhancement than what Plaintiff's FAC offers and what the Court's Order required in this case.

In sum, while this Court has ruled differently on these points, the foregoing cases show that the Sixth Circuit's immediate guidance is needed. Again, "[b]ecause there is so little relevant [binding] precedent on the pleading standard[s]" for direct and vicarious liability under the TCPA, and because other reasonable jurists may disagree and have disagreed with this Court's analysis on those controlling legal questions, "a substantial ground for difference of opinion exists in this case." *Delgado*, 2022 WL 229884, at *3. Therefore, the second requirement for certification is met here.

### C.        Immediate Appeal Would Materially Advance the Termination of this Case.

The third factor is met because immediate appellate review on the threshold questions of direct and vicarious liability could save substantial judicial resources and litigant expense. "An interlocutory appeal materially advances the ultimate termination of litigation when appellate review could save 'judicial resources and litigant expense.'" *Cerjanec*, WL 7152556, at *3 (quoting *Newsome*, 873 F. Supp. 2d at 878). Further, "'[i]nterlocutory appeal is favored where reversal would substantially alter the course of the district court proceedings or relieve the parties of significant burdens [whereas] the role of interlocutory appeal is diminished when a case is nearing trial and large expenditures have already been made.'" *Id*. (quoting *City of Memphis*, 138 F. Supp. 2d at 1026).

That concern is acute here. Plaintiff brings this case as a putative nationwide class action seeking statutory damages of $500 per call over a four-year period; and the FAC contemplates (and Plaintiff has issued) robust discovery as to at least 4-years' worth of Firstsource's and MMH's records, which implicates healthcare and patient privacy concerns given the circumstances and will be very costly and tricky to navigate. Proceeding through complicated discovery and certification briefing before obtaining appellate guidance on the threshold liability-pleading standards risks imposing precisely the asymmetric costs that Rule 12(b)(6) and § 1292(b) are designed to mitigate.

18

Meanwhile, if the Sixth Circuit concludes that Plaintiff failed to plead the required facts to support a TCPA liability theory against one or both of the Defendants, the remaining claims and thus his entire FAC would be dismissed (possibly with prejudice)—or at least the issues at bar and scope of discovery would be simplified—thereby materially advancing the ultimate termination of this case. *See Delgado*, 2022 WL 229884, at *3. *See also Sims v. First Horizon Nat. Corp.*, 2010 WL 1050976, at *4 (W.D. Tenn. Mar. 22, 2010) (finding the second certification factor met satisfied because "interlocutory appeal at this juncture has the potential to save substantial resources in what will undoubtedly be protracted litigation"). And even if an appeal results only in narrowing or clarifying the governing standards or a dismissal of one of the Defendants, it would substantially alter the course of these proceedings by focusing discovery and class issues (if any remain) on the proper liability framework, rather than litigating those issues through expensive discovery and post-judgment review. Thus, the third 1292(b) requirement for certification is satisfied here, as well.

### D.    This Case Should Be Stayed During the Appellate Proceedings.

Lastly, the Court should stay these proceedings (including discovery deadlines in particular) pending the outcome of the appellate proceedings, for the sake of judicial and party economy.

Once the Order is certified, the Sixth Circuit has discretion whether to grant an application for interlocutory review. *In re Trump*, 874 F.3d at 951. But the application, which is to be made within 10 days of the district court's certification order, does not automatically "stay proceedings in the district court unless the district judge or the Court of Appeals" enters a stay. 28 U.S.C. § 1292(b). Thus, courts in this District routinely exercise their discretion and will stay cases pending the outcome of an interlocutory appeal for the sake of judicial and party economy. *See, e.g., Delgado*, 2022 WL 229884, at *4 (granting motion to certify order for interlocutory appeal in TCPA case on same grounds and staying case pending outcome of appellate proceedings); *Cerjanec*, 2018 WL 7152556, at *3 ("As judicial resources would be spared in adjudicating pending motions that may

19

become moot after the appeal, the Court will STAY the proceedings pending the appeal."); *Eberline*, 2019 WL 989284, at \*3–4 ("It is appropriate to grant the stay because if the Court is reversed, the Court's and the parties' time and resources spent continuing the litigation will have been wasted."). This case is at an early stage, and a stay would avoid the risk that the parties and the Court expend significant resources on discovery and scheduling issues that may become moot depending on the Sixth Circuit's resolution of the certified questions. *See Delgado*, 2022 WL 229884, at \*4. To avoid such waste, the Court should also enter a stay pending the outcome of the appellate proceedings.

## III.    CONCLUSION

For all the reasons above, the Court should amend and certify its Order on Defendants' Motions (*see* Dkt. 41) for an interlocutory appeal to the Sixth Circuit pursuant to 28 U.S.C. § 1292(b), and also stay this action pending the Sixth Circuit's decision to grant interlocutory review and (if granted) until the conclusion of appellate proceedings for the sake of judicial and party economy.

In accordance with Fed. R. App. P. 5(a)(3), a proposed certification and stay order has been submitted herewith for the Court's consideration.

Dated: April 16, 2026

Respectfully submitted,

By: /s/A. Paul Heeringa

A. Paul Heeringa (admitted *pro hac vice*)
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin Street, Suite 2600
Chicago, IL 60606
Telephone: (312) 529-6300
Email: pheeringa@manatt.com

Casey L. Hinkle
KAPLAN JOHNSON ABATE & BIRD LLP
710 W. Main St., 4th Fl.
Louisville, KY 40202
Telephone: (502) 416-1630
Email: chinkle@kaplanjohnsonlaw.com

*Counsel for Defendants*

20

## CERTIFICATE OF SERVICE

I hereby certify that, on April 16, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties, via their counsel of record, by operation of the Court's electronic filing and docketing system.

/s/ A. Paul Heeringa

*Counsel for Defendants*