**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **MARSHALL MCCLAIN, individually and on behalf of a class of all persons and entities similarly situated,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **FIRSTSOURCE SOLUTIONS USA, LLC and MANATEE MEMORIAL HOSPITAL, LIMITED PARTNERSHIP,** <br><br> **Defendants.** | **Case No. 3:25-cv-00150-DJH-RSE** |

<u>**DEFENDANTS' JOINT MOTION TO STAY AND/OR BIFURCATE DISCOVERY**</u>

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

APPLICABLE LEGAL STANDARDS ....................................................................................... 3

ARGUMENT .............................................................................................................................. 4

    I.     All Discovery Should Be Temporarily Stayed During the Pendency of
         Defendants' Section 1292(b) Motion for the Sake of Judicial and Party
         Economy ....................................................................................................................... 4

    II.    If Discovery Proceeds at All, It Should Be Bifurcated Between Plaintiff's
         Individual Claim and The Claims of the Putative Class Members, Also For
         Efficiency Purposes. .................................................................................................... 6

         A.    Courts Have Widely Held That Bifurcated Discovery is Beneficial In
                TCPA Class Action Cases, as It is More Efficient And Cost Effective. ..... 7

         B.    Bifurcation Will Drive A Just, Speedy, Inexpensive, And Efficient
                Resolution of This Entire Case. ................................................................... 11

         C.    Additional "Good Cause" Exists For Bifurcating Discovery In This Case.
                ..................................................................................................................... 13

         D.    Defendants Propose A Short Initial Discovery Period On The Merits Of
                Plaintiff's Individual Claims, Followed By Summary Judgment Briefing.
                ..................................................................................................................... 16

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Adam v. CHW Grp., Inc.*,
 2021 WL 7285904 (N.D. Iowa June 29, 2021) .......................................................... 12

*Akselrod v. MarketPro Homebuyers LLC*,
 2021 WL 100666 (D. Md. Jan. 12, 2021) ...................................................... 10, 13, 17

*Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*,
 2018 WL 3474444 (N.D. Ill. July 19, 2018) ............................................................. 6

*Ankcorn v. Kohl's Corp.*,
 2017 WL 395707 (N.D. Ill. Jan. 30, 2017) ................................................................ 6

*Babare v. Sigue Corp.*,
 2020 WL 8617424 (W.D. Wash. Sept. 30, 2020) ................................................. 5, 13

*Bank v. City of Menasha*,
 627 F.3d 261 (7th Cir. 2010) ..................................................................................... 5

*Banks, v. Bio Trust Nutrition, LLC*,
 2026 WL 678871 (D. Colo. Jan. 20, 2026) ...................................................... passim

*Busk v. Integrity Staffing Sols., Inc.*,
 2013 WL 4786254 (D. Nev. Sept. 5, 2013) ................................................................ 5

*Cameron v. CHW Group, Inc.*,
 2025 WL 2336513 (D. Utah Aug. 13, 2025) ............................................ 9, 13, 15, 17

*Canady v. Bridgecrest Acceptance Corp.*,
 2020 WL 5249263 (D. Ariz. Sept. 3, 2020) ............................................................. 6

*Cerjanec v. FCA US, LLC*,
 2018 WL 7152556 (E.D. Mich. Sept. 4, 2018) ......................................................... 4

*Chenault v. Beiersdorf, Inc.*,
 2020 WL 5016795 (S.D. Ohio, Aug. 24, 2020) ..................................................... 3, 6

*Clinton v. Jones*,
 520 U.S. 681 (1997) ................................................................................................... 3

*Davis v. Healthplex*,
 2026 WL 1002120 (N.D.N.Y. Apr. 14, 2026) ......................................................... 11

*Delgado v. eMortgage Funding LLC*,
 2022 WL 229884 (E.D. Mich. Jan. 25, 2022) ........................................................ 3, 4

*Eberline v. Douglas J. Holdings, Inc.*,
 2019 WL 989284 (E.D. Mich. Mar. 1, 2019) ........................................................... 4

*Fania v. Kin Ins., Inc.*,
 2024 WL 2607303 (E.D. Mich. May 24, 2024) ..................................................... 7, 17

*Fazio v. Lehman Bros., Inc*,
 2002 WL 32121836 (N.D. Ohio May 16, 2002) ....................................................... 6

*Guido v. Travelers Cos. Inc.*,
  2023 WL 5658920 (E.D. Ky. Aug. 31, 2023) ................................................................ 6

*Hall v. Xanadu Mktg., Inc.*,
  682 F. Supp. 3d 1278 (N.D. Ga. 2023) ..................................................................... 11

*Harris v. Shore Funding Sols. Inc.*,
  2023 WL 3440077 (E.D.N.Y. Apr. 21, 2023) .................................................. 12, 13, 15

*Hines v. Joy Mfg. Co.*,
  850 F.2d 1146 (6th Cir. 2007) ................................................................................ 6

*Katz v. Liberty Power Corp., LLC*,
  2019 WL 957129 (D. Mass. Feb. 27, 2019) ........................................................... 10, 17

*Keating v. Peterson's Nelnet, LLC*,
  615 F.App'x 365 (6th Cir. 2015) ............................................................................ 11

*Kemen v. Cincinnati Bell Tel. Co. LLC*,
  2024 WL 3633333 (S.D. Ohio Aug. 2, 2024) ................................................... passim

*Klassen v. SolidQuote LLC*,
  2023 WL 5497865 (D. Colo. Aug. 23, 2023) ............................................................ 9

*Laccinole v. Inter. Union of Police Assoc.*,
  2022 WL 14812545 (D.R.I. Oct. 26, 2022) ............................................................. 11

*Leschinsky v. Inter-Continental Hotels Corp.*,
  2015 WL 6150888 (M.D. Fla. Oct. 15, 2015) .......................................................... 10

*Mantha v. QuoteWizard.com, LLC*,
  2020 WL 4369701 (D. Mass. July 30, 2020) ........................................................... 17

*Mestas v. CHW Grp. Inc.*,
  2019 WL 5549913 (D.N.M. Oct. 28, 2019) .............................................................. 6

*Moore v. Demand Science Grp, LLC*,
  2024 WL 175743 (N.D. Ill. Jan. 4, 2024) ......................................................... passim

*Newell v. Aliera Healthcare, Inc.*,
  2020 WL 13568762 (N.D. Ga. Apr. 6, 2020) .................................................... passim

*Osidi v. Assurance IQ, LLC*,
  2022 WL 623733 (D. Mass. Mar. 3, 2022) ........................................................ 10, 13

*Pavelka v. Paul Moss Ins. Agency, LLC*,
  2023 WL 3728199 (N.D. Ohio May 30, 2023) ...................................................... 3, 7, 17

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*,
  2014 WL 413534 (D.N.J. Feb. 4, 2014) ............................................................ 10, 13

*Ragsdale v. Harmony Leads, Inc.*,
  2025 WL 1617233 (D. Colo. May 9, 2025) ....................................................... 8, 15, 17

*Raimo v. Washington Univ. in St. Louis*,
  2021 WL 243559 (E.D. Mo. Jan. 25, 2021) .............................................................. 6

iii

*Rawlings & Assocs., PLLC v. Archer Sys., LLC,*
  2024 WL 947817 (W.D. Ky. Feb. 29, 2024) ................................................................ 3

*Sapan v. Fin. of Am. Reverse LLC,*
  2025 WL 1932935 (C.D. Cal. July 14, 2025) ...................................................... passim

*Shields v. Sonora Quest Lab'ys, LLC,*
  2017 WL 3841489 (D. Ariz. Mar. 29, 2017) ............................................................. 11

*Trepel v. Roadway Exp., Inc.,*
  194 F.3d 708 (6th Cir. 1999) ....................................................................................... 3

*Van Patten v. Vertical Fitness Grp., LLC,*
  847 F.3d 1037 (9th Cir. 2017) ................................................................................... 11

*Vandersloot v. Charles Baratta LLC,*
  2025 WL 2605343 (E.D.N.Y. Sept. 9, 2025) ....................................................... 10, 12

## STATUTES

28 U.S.C. § 1292(b) ................................................................................................. 1, 4, 17

47 U.S.C. § 227(b)(1)(A)(iii) .......................................................................................... 1

## OTHER AUTHORITIES

47 C.F.R. § 64.1200(a)(1) ................................................................................................ 1

47 C.F.R. § 64.1200(a)(2) ................................................................................................ 1

## RULES

Fed. R. Civ. P. 1 ..................................................................................................... 12, 15, 16

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1

Fed. R. Civ. P. 23 ..................................................................................................... 9, 15

Fed. R. Civ. P. 26(c) ............................................................................................... passim

Fed. R. Civ. P. 26(c)(1) ................................................................................................... 3

Fed. R. Civ. P. 26(f) ...................................................................................................... 18

Defendants Firstsource Solutions USA, LLC ("Firstsource") and Manatee Memorial Hospital, L.P. ("MMH") (collectively, "Defendants") respectfully move this Court, under Fed. R. Civ. P. 26(c), for a protective order: (i) temporarily staying all discovery and related deadlines during the pendency of Defendants' motion to certify the Court's March 18, 2026 interlocutory order for appeal pursuant to 28 U.S.C. § 1292(b) (*see* Dkt. 52, the "Motion") and/or (ii) bifurcating discovery, whereby discovery would initially be focused on the merits of Plaintiff's individual claim for a short period (*e.g.*, 90 to 120 days), followed by summary judgment briefing on those issues, before proceeding to class discovery (if at all). In support, Defendants provide the following grounds.

**INTRODUCTION**

In this putative class action, Plaintiff alleges that Defendants violated the "artificial or prerecorded voice" message provisions of the Telephone Consumer Protection Act ("TCPA"). *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. §§ 64.1200(a)(1)-(2). Per his First Amended Complaint ("FAC"), Plaintiff's TCPA claim is based on two supposedly "prerecorded voice messages" (*i.e.,* voicemails)—which were non-telemarketing, healthcare-related messages and merely offered a "complementary service provided free of charge" to find financial assistance—that he concludes were "sent" or "caused" to be sent either by Firstsource, MMH, and/or by an unidentified third party "on behalf" of MMH to his cell number without his consent. *See generally* Dkt. 22.

As these conclusory allegations do not meet federal pleadings standards, Defendants moved to dismiss the entire FAC with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), arguing *inter alia* that Plaintiff did not properly plead a direct or vicarious TCPA liability theory in accordance with the weight of applicable federal authority. *See generally* Dkt. 29 and 32. The Court disagreed, however, and denied Defendants' dispositive motions (in part) on those grounds. *See generally* Dkt. 41 (the "Order"). Given the Court's rulings on direct and vicarious TCPA liability involve controlling

1

questions of law as to which there are substantial grounds for differences of opinion and that an immediate appeal of those critical threshold questions may materially advance the ultimate termination of this case, Defendants filed their Motion seeking to certify the Court's Order for interlocutory appeal and to stay the case until the conclusion of the appellate proceedings. *See generally* Dkt. 52. Further, if the Sixth Circuit reverses the Order on the grounds that this Court did not properly consider or apply the standards for pleading direct or vicarious TCPA liability when evaluating the sufficiency of Plaintiff's allegations in the FAC in that regard, his entire claim is subject to dismissal (possibly with prejudice)—or at the very least the issues in this case and the scope of discovery would be simplified. *Id*. at 17-18. Thus, if the Motion is granted, it could be fully case dispositive and discovery may not be needed, or the scope of discovery may be much different.

Through the instant motion, therefore, Defendants primarily seek to stay discovery during the pendency of their Motion, for the sake of judicial and party economy. If the Motion is granted, the Sixth Circuit grants review, and the Order is reversed on appeal, the entire FAC is subject to re-review by this Court and possibly dismissal with prejudice; thus, the Court's and the parties' time and resources spent continuing the litigation and conducting costly and burdensome discovery in the interim will have been wasted. Courts often exercise their broad discretion under Rule 26(c) to control their own dockets and to stay discovery to avoid such burden and waste. So should this Court.

Alternatively, should discovery proceed at all, Defendants submit that the Court should bifurcate discovery between Plaintiff's individual claim and the claims of the putative class members, also for efficiency purposes. As shown below, district courts routinely bifurcate discovery in such fashion in putative TCPA class actions, recognizing it is far more efficient and cost effective to do so, does not prejudice plaintiffs, avoids prejudice to defendants, and does not burden the Court or its resources. This Court should rule similarly and therefore enter a bifurcated discovery schedule.

## APPLICABLE LEGAL STANDARDS

It is axiomatic that federal district courts have broad discretion to control their own dockets under Federal Rule 26(c) and to enter protective orders limiting or governing the timing of discovery. *Clinton v. Jones,* 520 U.S. 681, 706 (1997); *Chenault v. Beiersdorf, Inc.*, 2020 WL 5016795, at *2 (S.D. Ohio, Aug. 24, 2020); *Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 716 (6th Cir. 1999). *See also* Fed. R. Civ. P. 26(c)(1) (district courts "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

This broad discretion includes the power to enter orders temporarily staying discovery during the pendency of a dispositive motion or bifurcating discovery. *See, e.g., Rawlings & Assocs., PLLC v. Archer Sys., LLC,* 2024 WL 947817, at *3 (W.D. Ky. Feb. 29, 2024) (staying discovery during the pendency of dispositive motions, noting that if the motions were granted the case would be "back to square one" and that the opposing party would "suffer little hardship in discovery being delayed" pending resolution of the motions); *Delgado v. eMortgage Funding LLC*, 2022 WL 229884, at *4 (E.D. Mich. Jan. 25, 2022) (entering stay in TCPA class action in light of motion to certify for interlocutory appeal, and noting the potential "waste of resources for the parties to engage in extensive, costly, and time-consuming class action discovery" in the interim, if the plaintiff had not plausibly alleged a theory of TCPA liability, which is true in this case); *Pavelka v. Paul Moss Ins. Agency, LLC,* 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023) (holding that "bifurcation of discovery to first address the individual [TCPA] liability claims, and then to entertain possible summary judgment motion practice on Plaintiffs' individual claims, prior to class action discovery, is appropriate"); *Kemen v. Cincinnati Bell Tel. Co. LLC*, 2024 WL 3633333, at *2-3 (S.D. Ohio Aug. 2, 2024) (ruling similarly, and bifurcating discovery in TCPA case for efficiency).

For the reasons below, the Court's discretion on both fronts would be appropriate here.

3

**ARGUMENT**

I.    **All Discovery Should Be Temporarily Stayed During the Pendency of Defendants' Section 1292(b) Motion for the Sake of Judicial and Party Economy.**

As discussed in Defendants' Motion (*see* Dkt. 52 at 19-20), courts commonly exercise their discretion to control their dockets and stay discovery after a Section 1292(b) certification motion is granted for the sake of judicial and party economy. *See, e.g., Delgado v.*, 2022 WL 229884, at *4 (citing *Cerjanec v. FCA US, LLC,* 2018 WL 7152556, at *3 (E.D. Mich. Sept. 4, 2018)). *See also Eberline v. Douglas J. Holdings, Inc.*, 2019 WL 989284, at *3-4 (E.D. Mich. Mar. 1, 2019) (staying discovery in non-TCPA case, holding: "It is appropriate to grant the stay because if the Court is reversed, the Court's and the parties' time and resources spent continuing the litigation will have been wasted."). This sound reasoning applies equally to when a Section 1292(b) motion is *pending*.

Defendants' accompanying § 1292(b) Motion identifies substantial legal issues on which there is potential for a clear differences of opinion between reasonable jurists, meeting all the necessary requirements for certification for an interlocutory appeal. Indeed, the lack of binding guidance from the Sixth Circuit on the proper standards for adequately pleading direct and vicarious TCPA liability (which are critical threshold issues in any TCPA case and often are a basis for dismissal) *alone* warrants interlocutory review of this Court's Order denying the Defendants' dispositive motions on those grounds. *See* Dkt. 52 at 3-4, 7-11 (citing and analyzing *Delgado*). And myriad other courts have ruled differently than this Court did on those issues in similar cases. *Id*. at 11-18. Consequently, Defendants respectfully submit that there is a strong chance the Motion will be granted. If that happens, the parties' energies will be focused on the appellate proceedings. Thus, there is no good reason why the parties and Court should waste time and resources on discovery now (especially burdensome class discovery, as to which the Defendants will bear the most burden and expense) while the Court considers the Motion, if this case will soon be before the Sixth Circuit and

4

stayed until the resolution of the appellate proceedings at the end of the day. In other words, it only makes sense to also stay discovery pending resolution of the Motion itself. Otherwise, discovery could get underway while the Motion is pending, only to be abruptly halted once it is granted.

Defendants would also be severely prejudiced by having had to endure costly class and other discovery while the Motion is pending, when the Sixth Circuit may simply reverse the Order on appeal and this entire case goes "back to square one." As one district court noted in a putative TCPA class action, "***[i]t is well-recognized that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens***." *Babare v. Sigue Corp.,* 2020 WL 8617424, at *2 (W.D. Wash. Sept. 30, 2020) (emphasis added). *See also Bank v. City of Menasha,* 627 F.3d 261, 266 (7th Cir. 2010) (noting class action plaintiffs can "us[e] discovery to impose asymmetric costs on Defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit"); *Busk v. Integrity Staffing Sols., Inc.,* 2013 WL 4786254, at *2 (D. Nev. Sept. 5, 2013) ("Plaintiffs are seeking to pursue a class action which will include nationwide discovery costs and legal fees and ultimately be very costly and burdensome for [defendants]."). Such is why TCPA plaintiffs seemingly always oppose discovery stays (as well as bifurcated discovery)—not because it is prejudicial to them or inefficient, but because it is beneficial to them to oppose because they can use the threat of costly class discovery to force lofty settlements on defendants before their oft-faulty claims can be dismissed on the pleadings or later on summary judgment. Therefore, there is ample "good cause" under Rule 26(c) to stay discovery pending resolution of Defendants' Motion.

Defendants anticipate that, in response to this motion, Plaintiff may argue that a temporary discovery stay while the Court decides the Motion could lead to lost or destroyed evidence. This is a non-starter. Myriad courts have recognized the ***mere possibility*** of unavailable evidence is a prejudice inherent in ***any*** stay in ***any*** civil case that does not defeat a motion to stay discovery. *See,*

*e.g., Raimo v. Washington Univ. in St. Louis,* 2021 WL 243559, at *1 (E.D. Mo. Jan. 25, 2021) ("The risk of lost evidence or diminished witness recall is … relatively low in a case based on events that took place so recently."); *Fazio v. Lehman Bros., Inc,* 2002 WL 32121836, *3 (N.D. Ohio May 16, 2002) ("[g]eneral allegations and speculative risks regarding lost evidence or fading memories" are insufficient to overcome discovery stay); *Ankcorn v. Kohl's Corp.,* 2017 WL 395707, at *4 (N.D. Ill. Jan. 30, 2017) (staying discovery in TCPA case); *Mestas v. CHW Grp. Inc.,* 2019 WL 5549913, at *2 (D.N.M. Oct. 28, 2019) (same); *Canady v. Bridgecrest Acceptance Corp.,* 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020) (noting the legal obligation to preserve evidence reduces the risk of evidence being destroyed, lost, corrupted, or forgotten). This Court should rule similarly here.

## II.   If Discovery Proceeds at All, It Should Be Bifurcated Between Plaintiff's Individual Claim and The Claims of the Putative Class Members, Also For Efficiency Purposes.

Should discovery proceed in this case at all, then it should be bifurcated. Courts in this Circuit have recognized the broad discretion afforded under Rule 26(c) to bifurcate discovery is appropriately exercised in putative class actions where, as here, bifurcation "serves judicial economy and does not unfairly prejudice any party." *Guido v. Travelers Cos. Inc.*, 2023 WL 5658920, at *1 (E.D. Ky. Aug. 31, 2023) (citing *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1152 (6th Cir. 2007)). When considering whether to exercise this broad discretion, courts have taken into account, *inter alia,* "the Court's interest in reaching a just, speedy and efficient resolution of the issues raised by the pleadings" and the "benefits and detriments to each party's interest." *Chenault*, 2020 WL 5016795, at *2. Other courts have found bifurcated discovery is appropriate in TCPA class actions where "some limited, first-stage [discovery] could stave off substantial wasted efforts." *Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, 2018 WL 3474444, at *6 (N.D. Ill. July 19, 2018).

Along these lines, this putative TCPA class action matter is a <u>prime</u> candidate for bifurcated discovery—where the parties would initially focus discovery on narrowly-tailored issues relevant

6

to the merits of Plaintiff's individual TCPA claims against Defendants for a short period (*e.g.*, 90 to 120 days), before conducting broader and more costly class discovery if necessary. Such a schedule would be much more efficient, conserve judicial and party resources, not prejudice anyone, and possibly lead to a swift resolution of this case. As shown below, courts have often bifurcated discovery in putative TCPA class actions in the same manner as Defendants propose.

A.    **Courts Have Widely Held That Bifurcated Discovery is Beneficial In TCPA Class Action Cases, as It is More Efficient And Cost Effective.**

As one district court noted when granting a motion to bifurcate in a similar "prerecorded call" case involving some of the same counsel representing Plaintiff, "[i]n cases asserting both individual liability and potential class action claims under the TCPA, courts have [often] bifurcated discovery 'where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery.'" *Fania v. Kin Ins., Inc.*, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) (quoting *Pavelka,* 2023 WL 3728199, at *2). Such is true in the present case.

In fact, myriad courts have found that bifurcated discovery is appropriate in putative TCPA class actions, recognizing the many efficiencies to be gained and prejudice to be avoided in doing so. In the *Kemen v. Cincinnati Bell* case, for example, the court entered a bifurcated discovery schedule similar to what is proposed in this motion, noting that there were various narrow case-dispositive issues relating to the merits of the plaintiff's individual claim that could be explored efficiently from the outset of the case, including the plaintiff's Article III standing. *See* 2024 WL 3633333 at *2. The court noted such narrow threshold issues typically "require little discovery and could be dispositive of [plaintiff's] individual claim" and, therefore, held that "bifurcating discovery has the potential to promote the 'speedy' and 'efficient' resolution" of the entire case. *Id*. at *3. The court also noted that, "[o]n the other side of the scale, bifurcation will require [plaintiff] to produce only a comparatively modest amount of discovery, much of which (a) is

7

likely already in her possession or easily obtainable and (b) she would need to produce in any event even absent bifurcation." *Id*. The *Kemen* court further held that "a 90-day discovery period will not substantially delay this case" and would "not unduly prejudice" the plaintiff. *Id*.

In *Moore v. Demand Science Grp, LLC*, 2024 WL 175743 (N.D. Ill. Jan. 4, 2024), the court bifurcated discovery in TCPA class action after expressing "concern" about possible prejudice to the defendant and the inefficiency in conducting "wholly unnecessary discovery" (*i.e.,* class discovery), should targeted individual discovery show the named plaintiff had no viable claim, lacked standing, or would be an inappropriate class representative. *Id*. at *1. The court found "it is more efficient to proceed with the limited and targeted discovery as proposed by Defendant given that the overlap between the proposed initial discovery and merits discovery is minimal." *Id*.

In *Ragsdale v. Harmony Leads, Inc.*, a TCPA defendant sought to bifurcate discovery between plaintiff-specific and class-wide phases to initially focus on the plaintiff's individual claims. *See* 2025 WL 1617233, at *2 (D. Colo. May 9, 2025) ("The theory behind bifurcation is that limiting initial discovery to the individual claims of the named plaintiffs could save the parties and the court the time and resources that would be needlessly consumed by class discovery should the narrow issues on the individual claims prove dispositive."). The court found that resolution of such narrow individual issues was "the most expeditious course" and "w[ould] save the resources of the parties and the court in the event that Plaintiffs' individual claims are dismissed." *Id*. at *2. The *Ragsdale* court also rejected the plaintiffs' complaints of prejudice, finding an "aggressive" bifurcated schedule "minimize[ed] the prejudice caused by delaying class discovery." *Id*.

Similarly, in *Sapan v. Fin. of Am. Reverse LLC*, 2025 WL 1932935 (C.D. Cal. July 14, 2025), the court granted a motion to bifurcate in a TCPA class case, finding that: (1) "the overlap between Plaintiff's individual claim and class discovery" was minimal and thus immaterial; (2)

8

bifurcation was not inconsistent with Federal Rule of Civil Procedure 23's emphasis on early class certification because establishing whether Plaintiff is a typical and adequate class representative "as early as possible" could help the case move more expeditiously; (3) "the distinct question of Plaintiff's suitability to represent a class [was] the sort of discrete threshold issue that" supports judicial economy and therefore bifurcation; and (4) the prejudice to [defendant] in conducting costly class discovery weighed in favor of bifurcation." *Id*. at *1-3. The court further noted that the case at bar was not like those cases where courts have "declined bifurcation where the purported threshold questions overlap with class discovery" making bifurcation less efficient. *Id*. In a subsequent ruling in the same case, the *Sapan* court reiterated that whether the named plaintiff was a typical or adequate class representative are appropriate subjects of bifurcated discovery, commenting that "[a] discovery request that targets Plaintiff alone, and not any members of the putative class, is not "class discovery'…." 2026 WL 96903, at *2 (C.D. Cal. Jan. 8, 2026).

In *Cameron v. CHW Group, Inc.*, the court noted that TCPA class actions in general "present a unique opportunity that warrants bifurcated discovery due to th[e] cost savings" to be realized. 2025 WL 2336513, at *3 (D. Utah Aug. 13, 2025). In ordering bifurcation, the court held that individualized issues as to the merits of the named plaintiff's claims—including whether he consented to the calls—were "narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery" through a bifurcated schedule. *Id*. Relying on many of the same decisions cited in this motion for its bifurcation ruling, the *Cameron* court also noted that it was "persuaded that counsel [for the parties] are of a sophisticated enough nature to not disintegrate into childish 'petty discovery fights over what constitutes merits discovery versus class discovery" as that can sometimes arise when bifurcated discovery is ordered in non-TCPA class actions. *Id*. (quoting *Klassen v. SolidQuote LLC*, 2023 WL 5497865, at *3 (D. Colo. Aug. 23, 2023)).

9

Countless other courts have reached the same conclusions. *See, e.g., Leschinsky v. Inter-Continental Hotels Corp.*, 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015) (bifurcating discovery in TCPA class action, finding that the "Defendants' arguments in favor of a bifurcated discovery process" and the efficiencies to be gained in doing so were "well-taken"); *Newell v. Aliera Healthcare, Inc.,* 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (same, holding that "bifurcating discovery into two phases … will promote the efficient resolution of this matter," "'has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery'," and "will cause no significant prejudice to Plaintiff") (quoting *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014)); *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021) (bifurcating discovery in TCPA class action, after determining that whether prohibited automated technology was used during the calls was a narrow issue of liability unique to the plaintiff and distinct from class certification, noting that "[l]imited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery"); *Osidi v. Assurance IQ, LLC,* 2022 WL 623733, at *2 (D. Mass. Mar. 3, 2022) (bifurcating discovery in TCPA class action, holding: "[T]he need for class discovery may be eliminated if [d]efendant is able to demonstrate that the [n]amed [p]laintiff lacks viable individual claims."); *Banks, v. Bio Trust Nutrition, LLC*, 2026 WL 678871, at *3–4 (D. Colo. Jan. 20, 2026) (bifurcating discovery in TCPA class action as to issue of Plaintiff's consent); *Vandersloot v. Charles Baratta LLC,* 2025 WL 2605343, at *4 (E.D.N.Y. Sept. 9, 2025) (same).

In sum, as these courts and many others have found, there are often narrow case-dispositive issues in TCPA cases unique to the named plaintiff that can be efficiently and quickly resolved early in the case through focused bifurcated discovery, and for which burdensome and costly class discovery is not necessary to resolve. *See also Katz v. Liberty Power Corp., LLC*, 2019 WL 957129,

10

at *2 (D. Mass. Feb. 27, 2019) ("[C]lass discovery is not necessary to address certain issues that may be dispositive of [p]laintiffs' individual claims or ability to bring the asserted class claims, including whether the phone numbers at issue are within the TCPA, whether named [p]laintiffs are within the classes they purport to represent, and whether any named [p]laintiffs with a viable claim can demonstrate the Court's jurisdiction to resolve that claim."). All this rings particularly true here.

**B.    Bifurcation Will Drive A Just, Speedy, Inexpensive, And Efficient Resolution of This Entire Case.**

In this case, there are several individual issues unique to Plaintiff the parties could explore from the outset of the case during a short initial discovery phase—including, *inter alia,* the threshold issue of the Defendants' direct or vicarious liability for the subject calls to Plaintiff, whether Plaintiff consented to receive the calls or if his consent was even required, whether the subject healthcare calls are exempt from the TCPA, whether Plaintiff has Article III standing to bring a TCPA claim, and whether he would be a typical or adequate class representative. No class discovery is needed to resolve these key individual issues, which are dispositive of Plaintiff's lone claim and his ability to act as a class representative in this case.[1] And it would be much more efficient and cost effective to address these issues early in the case, rather that waste time on costly class discovery that would all be rendered moot if Plaintiff's claims fail on a summary judgment or a class certification motion.

---

[1] *See, e.g.,* Dkt. 29 at 8-23 (collecting cases dismissing TCPA claims on direct and vicarious liability grounds); *Van Patten v. Vertical Fitness Grp., LLC,* 847 F.3d 1037, 1044 (9th Cir. 2017) ("consent" from the plaintiff "is a complete defense to [any] TCPA claim"); *Hall v. Xanadu Mktg., Inc.,* 682 F. Supp. 3d 1278, 1285-1286 (N.D. Ga. 2023) (dismissing on standing grounds where the plaintiff consented); *Davis v. Healthplex,* 2026 WL 1002120, at *3 (N.D.N.Y. Apr. 14, 2026) (granting summary judgment to defendant where the subject healthcare related calls were exempt from the TCPA's consent requirements); Dkt. 51 at p. 14 (discussing healthcare exemption under the TCPA, collecting cases); *Keating v. Peterson's Nelnet, LLC,* 615 F.App'x 365, 372-375 (6th Cir. 2015) (affirming summary judgment where defendant did not place and was not vicariously liable for the calls); *Shields v. Sonora Quest Lab'ys, LLC,* 2017 WL 3841489, at *9 (D. Ariz. Mar. 29, 2017) (granting summary judgment and denying certification in TCPA case where plaintiff consented); *Laccinole v. Inter. Union of Police Assoc.,* 2022 WL 14812545, at *3-4 (D.R.I. Oct. 26, 2022) (finding that a serial TCPA plaintiff, with multiple phone numbers he acquired for the sole pursue of pursuing TCPA claims, did not have Article III standing to seek relief under the TCPA).

Indeed, if targeted bifurcated discovery on the merits of Plaintiff's individual TCPA claim shows, *inter alia*, that Plaintiff lacks standing or consented to the calls, his consent was not required, or the calls were exempt from the TCPA, it would dispose of this whole case quickly, efficiently, and still at an early stage without the need for additional expense or burden on the parties or Court. This alone justifies bifurcating discovery here. *See* Fed. R. Civ. P. 1 ("[These rules] should be construed, administered, and employed by the court and the parties to ***secure the just, speedy, and inexpensive*** determination of every action and proceeding.") (emphasis added). *See also Harris v. Shore Funding Sols. Inc.,* 2023 WL 3440077, at *5 (E.D.N.Y. Apr. 21, 2023) (finding "good cause" to bifurcate discovery in TCPA class action because "such discovery would not result in duplication of efforts or substantially overlap with class discovery" and would better serve the purposes of Rule 1); *Adam v. CHW Grp., Inc.*, 2021 WL 7285904, at *3 (N.D. Iowa June 29, 2021) (ruling similarly).

More importantly, the evidence need to make these determinations is specific to Plaintiff and will not result in duplicative class discovery. As one court correctly recognized in a TCPA case, "bifurcating discovery into two phases"—*i.e.,* limited discovery into Plaintiff's individual issues, followed by class discovery if his claim manages to survive summary judgment—"will promote the efficient resolution of this matter" and "will cause no significant prejudice to Plaintiff" or duplicative effort here. *Newell,* 2020 WL 13568762, at *3. *See also Moore*, 2024 WL 175743, at *1 (bifurcating discovery in DNC case, noting "the overlap between the proposed initial discovery and merits discovery is minimal"); *Banks,* 2026 WL 678871, at *3–4 ("[T]he court finds that the overlap between the discovery necessary to resolve the questions specific to Plaintiff, including the threshold issue of consent, are sufficiently limited to justify bifurcation"); *Vandersloot,* 2025 WL 2605343, at *4 (ruling similarly and rejecting "overlap" argument); *Kemen*, 2024 WL 3633333, at *3 (same, citing *Chenault,* 2020 WL 5016795, at *3 (ruling in non-TCPA case "[t]hat class and

12

merits-based discovery will … inevitably be intertwined to some extent does not necessitate denying a motion to bifurcate…")); *Banks,* 2026 WL 678871, at *3–4 (finding whether plaintiff consented under the TCPA "c[ould] be explored without immediately compelling the production of nationwide customer lists, complaint files, or multi-year dialing logs involving nonparties").

In turn, broad discovery (especially class discovery) is <u>not</u> relevant or "necessary to address certain issues that may be dispositive of Plaintiff's individual claims or [his] ability to bring the asserted class claims" in this case. *Osidi,* 2022 WL 623733, at *2. And it would certainly be far less efficient to conduct such broad discovery here, when the narrow bifurcated discovery Defendants propose could lead to a quicker end to this entire case. *See, e.g., Banks, Cameron,* and *Harris, supra*; *Newell*, 2020 WL 13568762, at *3 (noting that focusing the parties' initial discovery efforts on the merits of plaintiff's TCPA individual claim "'has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery.'") (quoting *Physicians Healthsource, Inc.,* 2014 WL 413534, at *4); *Akselrod*, 2021 WL 100666, at *2 (finding that focusing the initial phase discovery on the merits of plaintiff's individual TCPA claim more efficient). Nor is there any significant risk the Court will have to resolve "petty" discovery disputes between the parties on the differences between "merits" discovery and "class" discovery; and surely counsel for the parties here can navigate these waters easily. *Cameron,* 2025 WL 2336513, at *3. This Court should reach the same conclusions and enter a bifurcated discovery schedule in this case.

C.    **Additional "Good Cause" Exists For Bifurcating Discovery In This Case.**

Good cause also exists to bifurcate discovery and temporarily defer broader discovery simply because this is a putative nationwide class action. Again, "[i]t is well-recognized that discovery in [TCPA] class actions is expensive and asymmetric, with defendants bearing most of the burdens." *Babare,* 2020 WL 8617424, at *2. *See also Banks,* 2026 WL 678871, at *2 (citing *Babare* with approval in granting bifurcation); *Akselrod,* 2021 WL 100666, at *2 (ruling similarly).

13

These concerns are acute here. Indeed, Plaintiff brings this case as a putative **nationwide** class action (*see* Dkt. 22, ¶ 50), and seeks statutory damages of $500 per call over a four-year class period. As such, the FAC contemplates, and Plaintiff has already issued ridiculously broad discovery seeking,[2] at least 4-years' worth of Firstsource's and MMH's records—records which implicate obvious healthcare and patient privacy concerns given the nature of the subject communications and the parties, and will be tricky for the parties and Court and costly for the Defendants to navigate. This will undoubtedly increase the scope of and complicate discovery in this case and would lead to potentially unnecessary costs and wasted party and judicial resources, especially if individual discovery Defendants propose reveals Plaintiff lacks standing, does not have a viable claim, or would not be an adequate class representative. *See, e.g., Moore*, 2024 WL 175743, at *1. But forcing Defendants to respond to Plaintiff's broad class discovery now before the Court determines whether he even has a viable claim would be inherently and highly prejudicial to Defendants, when all that discovery could all be rendered moot if individual discovery ends the case (and it likely will).

Meanwhile, Plaintiff will suffer no prejudice if the Court bifurcates discovery to focus on his individual claim for a short period. *See, e.g., Banks,* 2026 WL 678871, at *5 (finding that "bifurcation visits no substantial prejudice on Plaintiff where the resolution of the single issue of consent may resolve the case entirely and render trial on any other issue wholly unnecessary. [ ] If Plaintiff consented to the calls at issue, she has neither a viable claim nor a right to serve as a class representative in the first instance. She suffers no compromise to her rights by having that determination made at an earlier phase of the case") (internal citation omitted)); *Newell*, 2020 WL 13568762, at *3 ("While Plaintiff raises concern over delay and the possibility that evidence will be lost or destroyed, these concerns are not overly persuasive. As parties to this lawsuit, both

---

[2] *See* **Exhibits A and B**, attached hereto.

[defendants] are on notice to preserve evidence pertaining to this matter."); *Harris*, 2023 WL 3440077, at *5 (ruling similarly); *Sapan*, 2025 WL 1932935, at *2 (same); *Cameron,* 2025 WL 2336513, at *3 (same). At bottom, any risk of any lost evidence in this case is purely hypothetical and does not weigh against bifurcation; and Plaintiff will suffer no harm from a short "delay" of class discovery to focus first on narrow individual discovery for a short 90- to 120-day period.

Additionally, bifurcating discovery in the manner that Defendants propose here is entirely consistent with the edicts of Rule 23. The 2003 Advisory Committee Notes to Rule 23 indicate why: "Subdivision (c)(1)(A) is changed to require that the determination whether to certify a class be made 'at an early practicable time.' The 'as soon as practicable' exaction neither reflects prevailing practice nor captures the many valid reasons that may justify deferring the initial certification decision." This comment makes plain that Rule 23 encourages courts to address certification ***when appropriate based on the individual needs of each case to drive efficient and effective resolutions***. At the same time, Rule 23's mandate that certification be decided at an "early practicable time" necessarily "must be balanced with Rule 1's requirements," and "limited discovery that may ultimately preclude costly class discovery serves Rule 1's purposes." *Cameron,* 2025 WL 2336513, at *3.[3] In other words, Rule 23 does not trump the core fundamental principles of Rule 1, which mandates the Federal Rules as a whole "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Again, courts have widely found that bifurcated TCPA discovery well promotes these fundamental and longstanding principles. *See Harris*, *Moore*, *Banks*, *Cameron*, *Sapan*, *supra*. So should this Court here.

---

[3] The *Ragsdale* case is again instructive here. There, the court entered a bifurcated discovery schedule in a TCPA class action where, as here, "setting an aggressive schedule on the individual claims will serve to promote Rule 23's goal that class certification be decided at 'an early practicable time' and minimize the prejudice caused by delaying class discovery." 2025 WL 1617233, at *2. *See also Sapan*, *supra* (ruling similarly). That is all Defendants seek—a just, speedy and inexpensive resolution of this case. Plaintiff cannot credibly argue this prejudices him.

\* \* \*

In sum, while bifurcated discovery may not be the norm or be appropriate in *all* class action cases, it is highly appropriate in *this TCPA* class action case. Like in the many well-reasoned decisions cited above, Defendants merely seek to focus discovery first on narrow issues unique to Plaintiff's individual TCPA claim for which no class discovery would be necessary for a short period, before proceeding to broader more costly discovery (if at all). Put simply, bifurcated discovery is a proverbial "win-win" proposition here: it does not prejudice Plaintiff, it will avoid prejudice to Defendants, it does not burden the Court or its resources, and it promotes the core principles of the Federal Rule 1. *See also Sapan,* 2025 WL 1932935, at \*3 (finding efficiency and lack of prejudice to plaintiff weighed heavily in favor bifurcation). And any attempt by Plaintiff to argue "prejudice" to him from a bifurcated discovery schedule under these circumstances is far outweighed by the extreme prejudice Defendants would suffer by conducting potentially wasteful, costly and burdensome class discovery, and thus should ring hollow. See *Newell,* 2020 WL 13568762, at \*3; *Banks,* 2026 WL 678871, at \*5. Therefore, there is "good cause," for the sake of efficiency, for this Court to exercise its broad discretion under Rule 26(c) to bifurcate discovery.

D.    **Defendants Propose A Short Initial Discovery Period On The Merits Of Plaintiff's Individual Claims, Followed By Summary Judgment Briefing.**

Accordingly, should the Court not enter a stay or should discovery proceed in this matter at all, Defendants propose a short "Phase 1" discovery period focused on the merits of Plaintiff's individual TCPA claims against Defendants, followed by summary judgment briefing, to wit:

- Discovery as to the merits of Plaintiff's individual claim to proceed for a period of ninety (90) to one hundred twenty (120) days after entry of the Court's scheduling order (no class discovery would allowed during this period);

- Opening summary judgment motions as to the merits of Plaintiff's individual claim be due no later than (but allowed any time prior to) thirty (30) days thereafter;

- Oppositions to summary judgment due 30 days after service of opening motions; and

16

- Reply briefs in support of summary judgment due 15 days after oppositions.

Defendants further propose that either (i) class discovery resume only after the initial individual discovery period, or (ii) the Court set a further case management conference, to occur at the Court's convenience, after it has ruled on summary judgment motions relating to Plaintiff's individual claims to set (if necessary) a schedule for class discovery and all other case deadlines.

Courts in this Circuit and elsewhere have often entered similar bifurcated schedules in TCPA class actions for efficiency purposes. *See, e.g.*, *Moore,* 2024 WL 175743, at *1, *Ragsdale*, 2025 WL 1617233, at *2; *Akselrod,* 2021 WL 100666, at *2; *Cameron,* 2025 WL 2336513, at *1-3; *Sapan*, 2025 WL 1932935, at *1-3; *Fania*, 2024 WL 2607303, at *4; *Kemen*, 2024 WL 3633333, at *2-3; *Pavelka,* 2023 WL 3728199, at *3; *Katz*, 2019 WL 957129, at *2; *Mantha v. QuoteWizard.com, LLC*, 2020 WL 4369701, at *3 (D. Mass. July 30, 2020). Defendants submit that this Court should follow these well-reasoned authorities and enter a similar bifurcated schedule in this case.[4]

## CONCLUSION

For all of the reasons above, and for such reasons as may be further presented to the Court prior to its ruling thereon, the Court should enter a protective order (1) temporarily staying discovery during the pendency of Defendants' § 1292(b) Motion; and/or (2) bifurcating discovery between individual and class issues based on the proposed bifurcated discovery schedule above (or a substantially similar schedule), along with granting all other relief deemed just and proper.

---

[4] While these courts have often temporarily stayed all discovery until after initial summary judgment briefing on individual claims is completed for the sake of judicial and party economy, and while doing so would be appropriate here, Defendants believe that having an initial bifurcated discovery period focused on Plaintiff's individual claim is still far more efficient and would not be prejudicial to Plaintiff, even if the Court decides discovery should proceed after the initial bifurcated period.

## LR 37.1 CERTIFICATION

The undersigned counsel hereby certifies, as required by Local Rule 37.1, that, prior to filing this motion, counsel made a good faith effort to resolve extrajudicially their disputes regarding a discovery schedule. Those efforts and the parties' respective positions are described in the parties' Joint Rule 26(f) Report (Dkt. 50). In particular, the parties conducted a Rule 26(f) conference on April 9, 2026, where their respective positions regarding a stay and/or bifurcation of discovery were discussed. The parties' further conferred through the exchange of drafts of the Joint Rule 26(f) Report, where they exchanged arguments and authorities for their respective positions. Despite these good faith conferrals, the parties were unable to come to an agreement regarding a stay and/or bifurcation of discovery. Plaintiff opposes the relief sought by this motion.

Dated: April 16, 2026

Respectfully submitted,

By: /s/A. Paul Heeringa

A. Paul Heeringa (admitted *pro hac vice*)
**Manatt, Phelps & Phillips, LLP**
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
Tel: 312.529.6300
Email: pheeringa@manatt.com

Casey L. Hinkle
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Fl.
Louisville, KY 40202
Tel:    (502) 416-1630
Email: chinkle@kaplanjohnsonlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2026, the foregoing was filed via the Court's electronic filing system, which will automatically send notice of such filing to all counsel of record.

/s/ A. Paul Heeringa

*Counsel for Defendants*

19