**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| MARSHALL MCCLAIN, *on behalf of himself and others similarly situated*, | ) ) ) | Civil Action No.: |
| Plaintiff, | ) ) ) | 3:25-cv-00150 |
| v. | ) ) | |
| FIRSTSOURCE SOLUTIONS USA, LLC and MANATEE MEMORIAL HOSPITAL, LIMITED PARTNERSHIP | ) ) ) ) | |
| Defendants. | ) ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR INTERLOCUTORY APPEAL AND TO STAY PENDING APPEAL**

**INTRODUCTION**

Defendants' motion is an effort to convert a routine Rule 12(b)(6) defeat into an immediate appeal. Section 1292(b) is not an error-correction mechanism, and this Court's Order is not the kind of "exceptional" ruling Sixth Circuit law reserves for interlocutory review. There is no novel statutory question, no circuit split, no unsettled regulatory issue, no constitutional dimension, and no pure legal issue whose answer can be given without reading the First Amended Complaint. The law governing direct and vicarious TCPA liability is settled. Direct liability turns on whether the defendant made or initiated the call, including through another. Vicarious liability turns on ordinary common law agency principles. The Court applied those familiar rules to the allegations Plaintiff actually pleaded, including a recorded message that announced, in its own words, "*this is FirstSource calling on behalf of Manatee Memorial Hospital.*" That is a textbook application of settled law to pleaded facts.

1

It also happens to be exactly what the Eastern District of Michigan held just a few months ago in *Dobronski v. CHW Group Inc.*, No. 24-cv-11649, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025), when defense counsel, the very same counsel as here, filed a materially identical interlocutory appeal motion after the court denied a materially identical motion to dismiss. The *Dobronski* court denied that motion, holding that the requested appeal did not present a pure question of law but instead "questions of fact applied to settled law," and squarely rejected the notion that there is a "lack of authority on what is required to establish direct or vicarious liability in a TCPA case." *Id.* at *2.

Defendants' own framing gives them away. They seek certification on the "minimum allegations required" to plead direct and vicarious TCPA liability "and whether those pleading standards were applied to the allegations in Plaintiff's [First Amended Complaint ("FAC")]." That second clause is the entire problem. It is what makes the proposed appeal inherently bound to the facts and circumstances of this case. It would require the Sixth Circuit to read the FAC, and the other evidentiary materials, parse who said what on the calls, evaluate FirstSource's identification on the very calls themselves, and decide whether reasonable inferences flow in Plaintiff's favor. That is not a controlling question of law. It seeks to relitigate a denied Rule 12 motion.

Defendants identify no unsettled rule of TCPA law as it pertains to vicarious liability. They do not ask the Sixth Circuit to decide whether direct TCPA liability exists, whether vicarious TCPA liability exists, whether ordinary agency principles apply, or whether Rule 8 governs. None of that is in dispute. Defendants ask only whether the *factual* allegations *here* are enough under those standards with a straight face and against the backdrop of a recording that literally identifies FirstSource as the caller and Manatee as the entity on whose behalf the call is

2

made. The Court answered the liability question by applying settled doctrine to a concrete

pleading. *Dobronski* rejected the same theory Defendants now assert in the same procedural

posture against the same counsel. The motion should be denied. So should the request to stay.

## BACKGROUND

Plaintiff alleges that he received at least two illegal prerecorded calls in March and April

2024 from a number that resolved to FirstSource's own "FirstSource Eligibility PreQualification

Services Line." The recorded message announced, in unambiguous terms: "*Hello, this is

FirstSource calling on behalf of Manatee Memorial Hospital*" and directed the recipient to

*screen.firstsource.com*, a website bearing FirstSource's copyright and terms purporting to bind

both FirstSource and "your healthcare provider." (Am. Compl. ¶ 24-40.) The FAC pleads that

Manatee "hired FirstSource to make pre-recorded calls," that Plaintiff was never a customer or

patient of either Defendant, and that he gave no consent. *Id.*

Defendants moved to dismiss the FAC. On March 18, 2026, this Court entered a careful

Memorandum and Order. Dkt. 41. The Court granted the motion as to several theories,

dismissing any vicarious liability theory against FirstSource (which Plaintiff did not pursue), any

direct liability theory against Manatee (which Plaintiff did not pursue), the treble damages claim,

and the injunctive relief claim. What survived is narrowly defined and is a direct liability claim

against FirstSource (which the recording identified as the caller, and whose number, website, and

corporate identity Plaintiff alleged the call originated from) and a vicarious liability claim against

Manatee (the entity for whom the recording said FirstSource was calling "on behalf of").

In denying Defendants' motion to dismiss, the Court applied settled doctrine on the law

of TCPA liability. Direct liability under the TCPA, the Court explained, requires that the

defendant "initiate[]" a call using an artificial or prerecorded voice. ECF 41 at 5. Vicarious

liability, the Court further explained, applies under "a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* at 8 (quoting *Harrison v. Humana, Inc.*, No. 3:24-CV00262-GNS, 2024 WL 4828737, at *2 (W.D. Ky. Nov. 19, 2024) (in turn quoting *In re Dish Network*, 28 F.C.C.R. 6574, 6584 (2013))). The Court then asked the only question Rule 12(b)(6) calls for: whether Plaintiff's factual allegations made out a plausible claim under those settled standards. Reading the FAC and accepting all reasonable inferences in Plaintiff's favor, as the Court was required to do, it concluded that Plaintiff had stated a plausible claim of direct liability as against FirstSource and vicarious liability as against Manatee.

The Court did not announce a new TCPA pleading rule or a new rule of TCPA liability. It applied existing rules. It also followed at least three recent decisions from this District applying those same standards to similar allegations, including both *Humana* and *Barry*, another TCPA case involving the same Defendant, FirstSource, on similar facts and theory of liability. Despite not deciding anything now, Defendants now seek to leapfrog into the Sixth Circuit. They ask this Court to certify the Order under § 1292(b) and to stay the case while they pursue a discretionary appeal. But the law and the facts do not support the request, and the same counsel just lost an indistinguishable motion in *Dobronski* on materially the same grounds.

## LEGAL STANDARD

Section 1292(b) is a narrow, discretionary exception to the final judgment rule. The Court may certify an order for interlocutory appeal only where it (1) "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002)). "It is well-established that all three

statutory requirements must be met for the court to certify an appeal under § 1292(b)." *In re Energy Conversion Devices, Inc.*, 638 B.R. 81, 88 (E.D. Mich. 2022). The party seeking certification bears the burden of showing that an immediate appeal is warranted. *See In re Flint Water Cases*, 627 F. Supp. 3d 734, 737 (E.D. Mich. 2022).

Interlocutory review under § 1292(b) is "granted sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d at 350. The Supreme Court has likewise warned that "[r]estricting appellate review to final decisions prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974) (cleaned up). Even *In re Trump*, the case Defendants invoke, cautioned that "an interlocutory appeal from a denial of a motion to dismiss should not be granted cavalierly." 874 F.3d at 952.

As the *Dobronski* court recently summarized, a "pure question of law is an issue the court can resolve 'without having to delve beyond the surface of the record to determine the facts,' as opposed to a case-specific question of 'whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case.'" 2025 WL 3068732, at *2 (quoting *Mamani v. Berzain*, 825 F.3d 1304, 1312 (11th Cir. 2016)). Simply put, interlocutory review is inappropriate where "the question presented turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 341 (4th Cir. 2017) (cleaned up).

In the Rule 12 setting in particular, interlocutory appeals are infrequently granted when the question is a mere matter of properly pleading a claim sought to be brought within a recognized and generally sufficient legal theory. In fact, such reasoning applies with equal force

to denial of summary judgment, which is evaluated on an even more intensive standard, "Where, as here, the controlling issues are questions of fact, or, more precisely, questions as to whether genuine issues of material fact remain to be tried, the federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court." *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991).

## ARGUMENT

### I.    The Court's Order Involves Settled Law Applied to Particular Pleaded Facts.

The threshold defect in Defendants' motion is that they have not identified a controlling question of law. They have identified a controlling question of pleading sufficiency, specifically, whether the FAC's allegations support a plausible inference of direct liability against FirstSource and a plausible inference of vicarious liability against Manatee. That is the very kind of fact-intensive analysis for which § 1292(b) is unsuited.

*Dobronski* is eminently persuasive here. There, the same counsel that represents Defendants here moved, after losing a motion to dismiss in a TCPA case on vicarious liability grounds, to certify the order for interlocutory review under § 1292(b), arguing that the standards for pleading direct and vicarious TCPA liability were controlling questions of law and allegedly underdeveloped in the Sixth Circuit. 2025 WL 3068732, at *1. The court denied the motion. It unequivocally held that the order "does not raise pure questions of law. Instead, the controlling issues are questions of fact applied to settled law." *Id.* at *2. And it expressly rejected, again, against the same counsel, the assertion that this is some unsettled corner of TCPA doctrine when it comes to TCPA liability. It stated, "Contrary to Defendant's assertion, there is no lack of authority on what is required to establish direct or vicarious liability in a TCPA case. Common law principles of agency apply." *Id.* The court explained that "[t]he differences in the holdings in

6

those cases [defendant relies on] was not the requirements to establish direct or vicarious liability of the defendants, but the facts alleged to establish that liability." *Id.*

Both of these points that the Court raised in *Dobronski* apply with even greater force here. First, in this case, unlike *Dobronski*, the recorded message *itself* announced, in plain English, *exactly* the relationships Defendants now claim are too attenuated to allege.

The recording itself shows direct liability. Section 227(b)(1)(A)(iii) makes it unlawful for a person "to make any call" using a prerecorded voice to a covered number absent consent. That statutory text is not in dispute. Defendants do not argue that the meaning of "make" is unclear. They seemingly concede the legal standard. Their disagreement is with the Court's assessment that Plaintiff's factual allegations, a recording in which the voice said "*this is FirstSource calling,*" a callback number that resolves to FirstSource and a website bearing FirstSource's copyright, plausibly supported an inference that FirstSource "made" the calls. That is a Rule 12 application question, not a question of law, and it is not even a close one.

And Defendants identify no apparent issues with the Court's vicarious liability analysis, either. The Federal Communications Commission made clear over a decade ago that the TCPA, as a federal statute, is subject to vicarious liability and is governed by "federal common law principles of agency," including formal agency, apparent authority, and ratification. *In re Dish Network*, 28 F.C.C.R. 6574, 6584 (2013). Every circuit to have addressed the question has accepted that framework. The Court applied it. For that matter, Defendants again appear to concede the framework but quarrel with the result, namely, that a recorded statement announcing that the call is being placed "*on behalf of* Manatee Memorial Hospital," combined with a FirstSource website whose terms purport to bind "your healthcare provider," and an FAC alleging that Manatee "hired FirstSource" to make those calls, is enough at the pleading stage to

permit a plausible inference of agency. That is, again, a Rule 12 application question, and one particularly ill-suited for review at anything other than a jury trial, since agency is a notoriously fact bound question. *In re Greektown Holdings, LLC*, 621 B.R. 797, 828 (Bankr. E.D. Mich. 2020).

Dressing up the question as one of pure law does not change its character. Defendants' own articulation of the proposed appeal makes the point. They want certification of "the minimum allegations required to plausibly plead" direct and vicarious TCPA liability "and whether those pleading standards were applied to the allegations in Plaintiff's FAC." The second half of that sentence concedes that the proposed appeal will ultimately be a factual and pleading exercise, and one that makes precious little sense on the clear record here.

As the *Dobronski* court put it, this is not law *qua* law; this is "questions of fact applied to settled law." 2025 WL 3068732, at *2. That is precisely a mere matter of properly pleading a claim sought to be brought within a recognized and generally sufficient legal theory and is therefore the wrong vehicle for interlocutory review. *Id.* (citing Edward H. Cooper, 16 Fed. Prac. & Proc. § 3931 (3d ed.)). Defendants' reliance on *In re Trump* does not change the analysis. They invoke *Trump* for the proposition that "[t]he sufficiency of a complaint is a question of law." 874 F.3d at 951. But *Trump* was an exceptional case in every meaningful sense. It involved a sitting President, a novel state law theory, a serious First Amendment overlay, and the prospect of presidential discovery, including the President's tax returns, medical records, and a deposition in Kentucky. 874 F.3d at 951-53. The Sixth Circuit held that these factors provided sufficient basis for finding the case "exceptional." *Id.* at 952. And it was at pains to note that its decision was an outlier, noting that interlocutory appeals from ordinary, unexceptional motion to dismiss denials "should not be granted cavalierly." *Id.*

8

This case is not *Trump*. There is no constitutional question (let alone a novel one), no public official as a defendant, and no other facts that make this anything other than an ordinary, run of the mill TCPA action. If anything is exceptional here, it is the moving Defendants outlining the structure and nature of their relationship *on the very recordings of the calls themselves*, which is a rarity in the TCPA space. *See Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *5 (E.D. Pa. Apr. 5, 2019) (holding that sometimes a TCPA plaintiff must play along with a caller's script to ascertain who is calling). There is no "novel issue" within even the most liberal reading of *Trump*. The rules of decision in the 12(b)(6) standard and the law of TCPA liability are old and established. What Defendants object to is the Court's factual reading of *their* particular call recording and *their* particular agency relationship as alleged in the FAC. That is a factual dispute for a jury, distinguishes this case from *Trump* categorically, and places it squarely within the same posture as *Dobronski*.

## II.    There Is No Substantial Ground for Difference of Opinion.

Even if Defendants had identified a controlling question of law (they have not), they would still need to show "substantial ground for difference of opinion" about it. They cannot. Their entire argument on this prong reduces to two propositions: (1) there is little binding Sixth Circuit authority on "the minimum allegations" required to plead TCPA liability theories, and (2) some district courts have dismissed TCPA cases on similar but not identical facts. Neither establishes substantial ground for difference of opinion under Section 1292(b).

A "substantial ground for difference of opinion" requires more than mere disagreement with a ruling. It requires that "reasonable jurists might disagree on an issue's resolution." *In re Trump*, 874 F.3d at 952. Sixth Circuit district courts typically find substantial ground for difference of opinion where: "(1) the question is difficult, novel and either a question on which

9

there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *Cerjanec v. FCA US, LLC*, No. 17-10319, 2018 WL 7152556, at *2 (E.D. Mich. Sept. 4, 2018). None of those conditions exists here.

First, Defendants do not identify any unsettled rule of TCPA law, let alone a difficult one. Direct liability is governed by the statutory text, to "make" a call, the meaning of which Defendants do not contest. Vicarious liability is governed by federal common law agency principles, formalized in *In re Dish Network* and accepted by every circuit to have considered it. The familiar *TwIqbal* standard governs the pleading inquiry. As such, the issue is neither difficult nor one of first impression, and certainly not one with any inter- or intra- circuit split on any of those propositions. The dispute is not about the law. It is about whether a particular complaint on a particular set of facts gets through the Rule 12 doorway.

*Dobronski* disposed of the same argument forcefully and decisively. In responding to the same defense counsel's claim that there was a "lack of authority" on TCPA pleading standards, the court answered this was simply untrue: "Contrary to Defendant's assertion, there is no lack of authority on what is required to establish direct or vicarious liability in a TCPA case." 2025 WL 3068732, at *2. "Common law principles of agency apply. Those principles were applied by this Court here, as they were by the district judges in the cases Defendant cites in its brief." *Id.* The same is true here, only more so, given the on-point recent decisions of this Court, all applying the same rules to similar facts, and one of which to the same Defendant, and particularly on the factual posture here.

10

Defendants cannot transform different Rule 12 outcomes on different complaints into a "difference of opinion" about the governing law. Rather, they simply demonstrate factual differences. Defendants spend the bulk of their motion arguing that a litany of other cases, are at odds with this Court's ruling. In none of those cases, as far as Plaintiff can ascertain, was an interlocutory review granted, and each had its own sets of facts. Each of those decisions applied the *same* governing law that Defendant doesn't even meaningfully contend is disputed to a different complaint. Some of those plaintiffs failed to allege facts tying the caller to the defendant. Some failed to plead control. Some pleaded only conclusory allegations tying the caller to the calls. Different facts produced different outcomes. That is plausibility doing what plausibility is supposed to do. That kind of variation is not a circuit split. It is not a difference of opinion about the governing rule. It is the ordinary, contextual operation of Rule 12 across different cases. The *Dobronski* court dealt with Defendants' string cites of authority with dispatch, noting that the differences in these cases came not from "the requirements to establish direct or vicarious liability of the defendants" but the "facts alleged to establish that liability." 2025 WL 3068732, at *2. The same is true of every case Defendants cite here.

This Court's ruling itself recognized as much. In addressing Defendants' string cite of cases in denying Defendants' motion to dismiss, the Court explained, citing *Barry*, that many of the cases Defendants offered "involve different sets of facts." (ECF 41 at 7 (quoting *Barry*, 2025 WL 1762289, at *3)). The Court then noted, accurately, that in many of Defendants' cited cases the plaintiffs failed to even allege that the defendant placed the call, something Plaintiff plainly did here. Defendants' "many courts disagree" talking point is precisely the kind of Monday morning quarterbacking that the Sixth Circuit and courts in this Circuit have repeatedly held insufficient to establish substantial ground for difference of opinion.

11

The case Defendants lean on hardest, *Delgado*, cannot bear the weight Defendants put on it. As an initial matter, *Delgado* is one district court order that resulted in a *dismissed* interlocutory appeal application. Moreover, *Delgado* expressly rested on the plaintiff's failure to develop the state of TCPA direct and vicarious liability case law. What's more, the plaintiff there also conceded that the "controlling question of law" prong was satisfied, which removed the threshold issue from the case. Plaintiff makes no such concession here.

It further bears observing that the calls in this case were not subtle insofar as they expressly outlined the structure of the parties' relationship that Plaintiff pled. The recordings *expressly* identified FirstSource as the caller and identified Manatee as the principal. The call recordings were corroborated not only by FirstSource's website but also by calling back. This is not the kind of fringe case of agency on which the *Delgado* Court granted interlocutory review. If anything, the strength of the FAC's allegations underscores why this case is a poor vehicle for interlocutory review. The Sixth Circuit would be reviewing a particular complaint that, taken as true, alleges a paradigm direct liability scenario and a paradigm vicarious liability scenario as outlined on the call itself. There is no controlling legal question waiting to be answered there. There is only a factual pleading dispute that the Court already resolved correctly.

More fundamentally, *Delgado*'s premise has been called into question in the same district, on the same kind of motion as here, against the same defense counsel as here, by *Dobronski*. The *Dobronski* court considered the very theory now urged by Defendants, that there is allegedly a "lack of authority" on TCPA direct vicarious liability standards, and rejected it on the merits in a single, cogent sentence. 2025 WL 3068732, at \*2 ("[T]here is no lack of authority on what is required to establish direct or vicarious liability in a TCPA case.") *Dobronski* represents the considered, more recent view of an Eastern District of Michigan judge applying

Sixth Circuit standards to the same kind of motion. It is also the view that comports with the actual state of TCPA law, with settled statutory text, settled case law on agency, and settled Rule 12 standards. *Delgado* supplies no controlling counterweight after *Dobronski*.

### III.    Interlocutory Appeal Would Not Materially Advance the Termination of the Litigation.

Because Defendants cannot satisfy the first two prongs, the Court need not reach the third. But the third prong fails too. "An interlocutory appeal materially advances the litigation when it saves judicial resources and litigant expense." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 878 (E.D. Mich. 2012) (cleaned up). That standard is not satisfied where, as here, an appeal would simply ask the court of appeals to redo a Rule 12 ruling on a particular pleading.

Two points are worth noting. First, the kind of TCPA cases in which interlocutory review has historically been granted are categorically different from this one. They have involved genuinely unsettled statutory or regulatory questions, such as definitions of technical terms, a First Amendment challenge, and threshold jurisdictional issues. Those questions can be answered at a high level without resolving the factual allegations of any particular complaint. The question Defendants want certified cannot be.

Second, Defendants' "material advancement" argument depends on the assumption that the Sixth Circuit might disagree with this Court's Rule 12 ruling on legal grounds. But every unsuccessful Rule 12 movant could say the same thing. If that were enough, § 1292(b) would swallow the final judgment rule. In any event, the surviving claims here are tightly bounded. Plaintiff pleads a direct liability claim against FirstSource and a vicarious liability claim against Manatee. Discovery will be coextensive with what is needed for a TCPA call campaign of this kind, including the call records, the script and approvals for the recording, the contractual relationship between FirstSource and Manatee, and the lists of numbers called. And, at the end of

13

the day, if discovery ultimately reveals that some other concealed third party actually placed the calls at issue, discovery will identify them, and they will unquestionably be subject to direct TCPA liability. None of the discovery work necessary in this case would be avoided by an interlocutory appeal that, even if successful, would only narrow which Defendant remains. That confirms an appeal would not terminate this case. At best, it would streamline it on the margins. That is not what § 1292(b) is for.

## IV.     There Is No Basis to Stay This Case.

Defendants' stay request fails because this motion fails. Notably, Defendants have also requested a stay of this litigation more generally, which will be addressed in due course. But even if the Court were inclined to certify the Order, a stay would still be inappropriate.

Section 1292(b) expressly disclaims any automatic stay. The statute provides that "application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order." 28 U.S.C. § 1292(b). Defendants' own motion concedes the point and then asks the Court to exercise its discretion to stay anyway. The general rule that interlocutory appeals do not stay litigation reflects exactly the reasons that a stay is inappropriate here.

First, the prejudice to Plaintiff is concrete. This is a putative class action under the TCPA, where the class period reaches back four years. Critical evidence, including call records, lists of numbers called, contracts between FirstSource and Manatee, scripts, and approvals, is the kind of evidence that companies, and especially telephone companies, routinely cycle through. Delay creates a real risk that records material to liability and class scope are lost or modified during the pendency of an appeal that, in all likelihood, the Sixth Circuit will not even entertain. The TCPA was passed because Congress was concerned about exactly this kind of nonconsensual

14

prerecorded calling conduct, and Plaintiff and the putative class members are entitled to move toward resolution rather than being held in suspended animation on a red herring issue.

Second, Defendants' only proffered prejudice is the cost and burden of litigation. That is not enough. If it were, every defendant losing a Rule 12 motion could obtain a stay. Litigation is costly in every civil case. That cannot, on its own, justify the extraordinary remedy of pausing the proceedings while a discretionary appeal is pending. The Sixth Circuit must first agree to hear the appeal at all, something that is far from a foregone conclusion, and it must then essentially hold that the District Court got it wrong as to *both* Defendants. Third, judicial economy actually favors moving the case forward. The claims rest on settled law. The Court has already done the hard work of culling theories that did not survive Rule 12. What remains is the ordinary discovery and class certification process for a TCPA case. Stopping that work to await a discretionary appeal of a ruling on a factual issue, brought by counsel who just lost the same motion in another district, would not promote efficiency. It would reward delay for delay's sake.

## CONCLUSION

Defendants ask the Court to certify an Order that does not present a controlling question of law, on a subject where there is no substantial ground for difference of opinion, in service of an appeal that would not terminate the litigation. The same counsel just lost an indistinguishable motion in *Dobronski*. The result here should be the same. Defendants' motion to certify and to stay on that basis should be denied in its entirety.

Dated: April 29, 2026                    PLAINTIFF, on behalf of himself
                                         and others similarly situated,

                                         */s/ Anthony I. Paronich*
                                         Anthony I. Paronich

15

Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the putative class*

16